# EXHIBIT B

1   KATHRYN A. STEBNER (SBN 121088)
    DEENA K. ZACHARIN (SBN 141249)
2   **STEBNER AND ASSOCIATES**
    A PROFESSIONAL LAW CORPORATION
3   870 Market Street, Suite 1212
    San Francisco, CA  94102
4   Tel:   (415) 362-9800
    Fax:   (415) 362-9801
5
    KIRSTEN FISH (SBN 217940)
6   **NEEDHAM KEPNER & FISH LLP**
    1960 The Alameda, Suite 210
7   San Jose, CA 95126
    Tel:   (408) 244-2166
8   Fax:   (408) 244-7815
9   Attorneys for Plaintiff

10

        **ELECTRONICALLY**
        **F I L E D**
        Superior Court of California,
        County of San Francisco

        **05/21/2021**
        Clerk of the Court
        BY: JACKIE LAPREVOTTE
        Deputy Clerk

10         **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11             **COUNTY OF SAN FRANCISCO**

12                                                     **CASE NO.**   CGC-21-592111
    CHAN-HIE KIM, individually and as co-trustee
13  of the Chan-Hie Kim & Sook-Chung Kim Trust,     **COMPLAINT FOR DAMAGES**

14          Plaintiff,                                   1.  **Financial Elder Abuse; and**
                                                         2.  **Unlawful, Unfair and Deceptive**
15  vs.                                                      **Business Practices**

16  WELLS FARGO, N.A.; WELLS FARGO &              **JURY TRIAL DEMANDED**
    COMPANY; BANK OF AMERICA, N.A.;
17  BANK OF AMERICA CORPORATION;
    VIRGEL MABINI; NANCY BECERRA; DOES
18  1-100, inclusive

19          Defendants.

20

21

22          Plaintiff CHAN-HIE KIM, individually and as co-trustee of the Chan-Hie Kim & Sook-Chung

23  Kim Trust ("Plaintiff") based on information and belief and the investigation of counsel except for

24  information based on personal knowledge, hereby alleges as follows against WELLS FARGO,

25  N.A., WELLS FARGO & COMPANY, BANK OF AMERICA, N.A., BANK OF AMERICA

26  CORPORATION, VIRGEL MABINI, NANCY BECERRA, and DOES 1 through 100 (collectively

27  "Defendants"):

                                    -1-

**INTRODUCTION**

1.      This financial elder abuse case arises from a "tech support scam" that drained nearly all of Plaintiff's life savings from his bank accounts with WELLS FARGO, N.A., WELLS FARGO & COMPANY and DOES 1-25 (collectively "WELLS FARGO"), and BANK OF AMERICA, N.A., BANK OF AMERICA CORPORATION and DOES 26-50 (collectively "BOFA"). Both WELLS FARGO's and BOFA's representatives had notice Plaintiff was potentially being scammed, and yet they did nothing to stop the ongoing scam and did not report the ongoing scam to the authorities. They also ignored the many government advisories they have received informing them to detect, deter and respond to the "red flags" of financial elder abuse. Rather, WELLS FARGO's and BOFA's ongoing and substantial assistance allowed this financial abuse scam against Plaintiff to be perpetrated by the tech support scammers, a scam from which both WELLS FARGO and BOFA would profit via their direct collection of fees from Plaintiff. After each time the 85-year-old Plaintiff was told by the scammers to send him money from September 2020 through December 2020, Plaintiff would walk into a WELLS FARGO branch or BOFA branch where said defendants would substantially assist in the scam by processing a total of at least 41 large wire transfers out of Plaintiff's accounts as part of face-to-face transactions with the elderly Plaintiff.  The misappropriated amount totaled over $2,000,000.00.  As a result of these transfers, both WELLS FARGO and BOFA would also directly profit by charging Plaintiff fees for each transfer.  At all relevant times, Plaintiff was clearly an 85-year-old senior who was quite recognizable as an elderly person at WELLS FARGO's and BOFA's banks.

2.      Elderly and disabled people, especially those who are dependent on others for assistance, are at foreseeable risk of financial elder abuse.  Indeed, the Legislature enacted the California Elder Abuse and Dependent Adult Civil Protection Act ("EADAPCA") (Welfare & Institutions Code §§ 15600 *et seq.*) because it recognized that "elders and dependent adults may be subjected to abuse, neglect, or abandonment and that this state has a responsibility to protect these persons." (Welf. & Inst. Code § 15600).

//

**PARTIES**

3.      Plaintiff was at all times herein mentioned a resident of the County of San Bernardino, State of California. At all times mentioned, Plaintiff was and elder within the meaning of Welfare & Institutions Code §15610, *et seq*.  Plaintiff's son, Alexis Kim, is the duly appointed attorney-in-fact for Plaintiff , individually and as co-trustee of the Chan-Hie Kim & Sook-Chung Kim Trust.

4.      At all relevant times herein mentioned, Plaintiff, who is currently 85 years-old and suffers from cognitive decline, is and was a senior citizen who was substantially more vulnerable than other members of the public to the conduct of Defendants because of his age and disability, and Plaintiff actually suffered substantial economic and emotional damage resulting from the conduct of Defendants, as described below.

5.      WELLS FARGO is engaged in, among other things, banking, and conducts significant business in the State of California, including San Francisco County. Plaintiff is informed and believes, and accordingly alleges that WELLS FARGO & COMPANY has its headquarters in San Francisco, California.

6.   .   Defendant VIRGEL MABINI is an individual over the age of 18 years and Plaintiff is informed and believes, and accordingly alleges that VIRGEL MABINI was at all times herein mentioned a resident of California. Plaintiff is informed and believes, and accordingly alleges that at the time of the transactions at issue herein, VIRGEL MABINI was employed by WELLS FARGO as a managing agent. WELLS FARGO and VIRGEL MABINI are collectively referred to herein as "the WELLS FARGO DEFENDANTS."

7.      BOFA is engaged in, among other things, banking, and conducts significant business in the State of California, including San Francisco County. Plaintiff is informed and believes, and accordingly alleges that BOFA has its headquarters in Charlotte, North Carolina.

8.      Defendant NANCY BECERRA is an individual over the age of 18 years and Plaintiff is informed and believes, and accordingly alleges that NANCY BECERRA was at all times herein mentioned a resident of California. Plaintiff is informed and believes, and accordingly alleges that at

1    the time of the transactions at issue herein, NANCY BECERRA was employed by BOFA as a

2    managing agent. BOFA and NANCY BECERRA are collectively referred to herein as "the BOFA

3    DEFENDANTS."

4          9.      Plaintiff is ignorant of the true names and capacities, whether individual, corporate,

5    associate or otherwise and the true involvement of those defendants named and sued herein as

6    DOES 1 through 100, and for that reason has sued said defendants by such fictitious names.

7    Plaintiff will seek leave to amend this complaint to reflect their true names when ascertained.

8    Plaintiff is informed and believes, and accordingly alleges that each of the defendants sued herein as

9    DOES 1 through 100 is responsible in some manner for the occurrences alleged in this action and

10    that these defendants proximately caused the harms suffered by Plaintiff.

11         10.      Plaintiff is further informed and believes, and accordingly alleges that at all relevant

12    times each of the Defendants was the employer, employee, agent, servant, alter ego, principal, or

13    subsidiary of the other Defendants and at all times acted within the course and scope of such

14    employment or agency and with the knowledge and approval of said co-Defendants.  In particular,

15    at all times material hereto, Defendants individually and through their officers, directors, and/or

16    managing agents, (i) had advance knowledge of the unfitness of their employees and employed said

17    employees with a conscious disregard of the rights and safety of others, (ii) authorized the wrongful

18    conduct alleged in this complaint, and/or (iii) were personally guilty of oppression, fraud, malice

19    and/or recklessness.

20         11.      In doing the things alleged herein, DOES 1 through 25, and each of them, acted as

21    the employer, employee, agent, servant, alter ego, principal, or subsidiary, and alter-ego of co-

22    defendants the WELLS FARGO DEFENDANTS. At all times herein mentioned, DOES 1 through

23    25, and each of them, further acted as the partner, joint venturer, representative and/or co-

24    conspirator of one or more of the remaining defendants, and was acting within the course and scope

25    of such agency, partnership, joint venture, employment and/or conspiracy.

26         12.      In doing the things alleged herein, DOES 26 through 50, and each of them, acted as

27    the employer, employee, agent, servant, alter ego, principal, or subsidiary, and alter-ego of co-

1   defendants the BOFA DEFENDANTS. At all times herein mentioned, DOES 26 through 50, and

2   each of them, further acted as the partner, joint venturer, representative and/or co-conspirator of one

3   or more of the remaining defendants, and was acting within the course and scope of such agency,

4   partnership, joint venture, employment and/or conspiracy.

5         13.    In doing the things alleged herein, DOES 51 through 100, and each of them, acted as

6   the agent, servant, employee and alter-ego of co-defendant scammers engaged in a "tech support

7   scam." At all times herein mentioned, DOES 51 through 100, and each of them, further acted as the

8   partner, joint venturer, representative and/or co-conspirator of one or more of the remaining

9   defendants, and was acting within the course and scope of such agency, partnership, joint venture,

10  employment and/or conspiracy.

11                        **JURISDICTION AND VENUE**

12        14.    This Court has jurisdiction under Code of Civil Procedure § 410.10.  Plaintiff's

13  damages exceed the jurisdictional minimum of this Court.

14        15.    Venue is proper in San Francisco County under Code of Civil Procedure § 395.5

15  based upon the fact that Defendant WELLS FARGO & COMPANY's principal place of business is

16  in San Francisco County.

17       **FACTUAL ALLEGATIONS RELEVANT TO ALL CAUSES OF ACTION**

18        16.    At the time of the transactions in question, transactions which took nearly all of

19  Plaintiff's life savings of over $2,000,000.00, Plaintiff was 85 years old. Plaintiff's age is relevant

20  because aging brains such as his are particularly susceptible to deceptive and predatory practices.

21  According to a study funded by the National Institute of Aging, at least 22% of adults over 70 suffer

22  from cognitive decline which impacts financial management skills, results in poor decision-making

23  and leaves them particularly vulnerable to scams and other financial exploitation.

24        17.    Plaintiff's condition and susceptibility to fraudulent tactics were not unusual for an

25  elder. Researchers at the University of Iowa have explored the problems older adults experience in

26  complex decision-making, even though these elders have not been diagnosed with any specific

27  neurological or psychiatric disease and technically have "capacity." This research has found that

1   many older Americans experience dramatic declines in cognitive abilities such as concentration,

2   problem-solving and decision-making. Such was the case with Plaintiff from approximately

3   September 2020 through December 2020, when the BOFA DEFENDANTS and the WELLS

4   FARGO DEFENDANTS knowingly wired collectively over $2,000,000.00 of Plaintiff's money out

5   of his accounts, which nearly drained Plaintiff's retirement funds dry.

6        18.    Plaintiff has been a customer of BOFA for over 30 years. His account at BOFA was

7   titled in his trust entitled the "Chan-Hie Kim & Sook-Chung Kim Trust." Prior to September 2020,

8   Plaintiff never engaged in any "suspicious transactions." In particular, neither co-trustee of the

9   Chan-Hie Kim & Sook-Chung Kim Trust regularly, or at all, engaged in any transactions where they

10   were depositing large amounts to the trust account, and then withdrawing large amounts from the

11   trust account by wire transfer. According to BOFA's own records, deposits into the trust account

12   with BOFA prior to the scam consisted almost entirely of small amounts, and checks drawn on the

13   account for expenses during that period were for approximately the same amount of money. Then,

14   after years of doing these regular, frugal transactions with BOFA, suddenly most of the transactions

15   out of the Chan-Hie Kim & Sook-Chung Kim Trust BOFA account from September 23, 2020 to

16   November 19, 2020 involved wire transfers of enormous amounts of cash totaling over

17   $1,480,000.00.

18        19.    The "tech support scam" against Plaintiff first started in September, 2020, when a

19   large warning message popped up on Plaintiff's computer saying his computer was hacked, not to

20   touch anything, and to call a phone number. When Plaintiff called the number the person who

21   answered said he was with Microsoft. The scammer said that Plaintiff's bank account at BOFA was

22   hacked and connected Plaintiff with another scammer who said he was with "Bank of America

23   Fraud Prevention department." The scammer said that Plaintiff's social security number and

24   birthdate were exposed and his retirement accounts at another institution were at risk. The scammer

25   told Plaintiff to transfer all of his retirement funds to BOFA in order to "rebuild" his retirement

26   accounts with new account numbers in order to protect his funds. Following his instructions,

27   Plaintiff transferred his retirement funds to BOFA in six huge increments, totaling over

$2,000,000.00 being transferred into his BOFA trust account. Immediately following each large deposit from his investment account, Plaintiff entered a BOFA branch and requested huge wire transfers with no questions asked by the BOFA DEFENDANTS. The majority of the wire transfers were made from the Alta Loma branch of BOFA. The wire transfers and other large debits initiated at BOFA totaled $1,481,400.00 over a short time period, as follows:

| DATE | TYPE OF TRANSACTION | AMOUNT |
|---|---|---|
| 09/23/20 | Wire Transfer | -$48,500.00 |
| 09/24/20 | Wire Transfer | -$48,500.00 |
| 09/25/20 | Wire Transfer | -$48,500.00 |
| 09/28/20 | Wire Transfer | -$48,500.00 |
| 09/29/20 | Wire Transfer | -$48,500.00 |
| 10/01/20 | Wire Transfer | -$48,500.00 |
| 10/02/20 | Wire Transfer | -$48,500.00 |
| 10/05/20 | Wire Transfer | -$48,500.00 |
| 10/06/20 | Wire Transfer | -$48,500.00 |
| 10/09/20 | Wire Transfer | -$48,500.00 |
| 10/13/20 | Wire Transfer | -$26,000.00 |
| 10/15/20 | Wire Transfer | -$49,400.00 |
| 10/19/20 | Wire Transfer | -$49,400.00 |
| 10/20/20 | Wire Transfer | -$49,400.00 |
| 10/21/20 | Wire Transfer | -$49,400.00 |
| 10/30/20 | Wire Transfer | -$49,400.00 |
| 11/02/20 | Wire Transfer | -$49,400.00 |
| 11/02/20 | Wire Transfer | -$49,400.00 |
| 11/03/20 | Wire Transfer | -$49,400.00 |

COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL

| DATE | TYPE OF TRANSACTION | AMOUNT |
|---|---|---|
| 11/03/20 | Wire Transfer | -$95,000.00 |
| 11/04/20 | Wire Transfer | -$49,400.00 |
| 11/04/20 | Wire Transfer | -$49,400.00 |
| 11/04/20 | Wire Transfer | -$49,400.00 |
| 11/05/20 | Wire Transfer | -$49,400.00 |
| 11/05/20 | Wire Transfer | -$49,400.00 |
| 11/05/20 | Wire Transfer | -$95,000.00 |
| 11/6/20 | Wire Transfer | -$49,400.00 |
| 11/10/20 | Wire Transfer | -$39,400.00 |

20.     Each time the scammers, DOES 51-100, instructed Plaintiff to wire more cash, this 85-year-old elderly customer walked into his long-time BOFA branch and met in person, face-to-face with a teller, who then would call over a bank manager to approve his wire transfers. On October 20, 2020, Plaintiff also made three suspicious withdrawals of $5,000.00, $5,000.00 and $10,000.00 cash. Even though BOFA should have known that the elderly Plaintiff was potentially being scammed, they did nothing to stop the ongoing scam, and ignored the many government advisories they have received informing them to detect, deter and respond to the "red flags" of financial elder abuse. Therefore, the BOFA DEFENDANTS provided the scammers with substantial assistance by allowing Plaintiff to continue to wire away almost $1,500,000.00 from BOFA until his life savings was nearly depleted with the assistance of BOFA employees. On top of this abject failure to protect their elderly customer, BOFA directly charged Plaintiff fees in the amount of $30.00 to $45.00 for each of the wire transfers to the scammers, DOES 51-100, totaling $1,575.00 in fees directly taken from Plaintiff by BOFA as a part of the scam.

21.     The scammer then instructed Plaintiff to open accounts at WELLS FARGO from which to make additional wire transfers. On September 30, 2020, an "Edeposit" was made in the

1   811 W. Foothill Blvd., Upland, California WELLS FARGO branch in the amount of $1,000.00 to

2   open the new WELLS FARGO account. Two days later, micro-deposits of 24 cents and 32 cents

3   and a withdrawal of the total amount of 56 cents were made from various BOFA accounts to

4   WELLS FARGO and back to BOFA. Plaintiff is informed and believes and accordingly alleges that

5   these types of micro deposits and withdrawals are a well-known red flag for banks of potential

6   fraud. After these micro-deposits and withdrawals were accepted by WELLS FARGO with no

7   warning to Plaintiff of the potential fraud, a $100,000.00 deposit by wire transfer was made on

8   October 5, 2020 from Plaintiff's BOFA account into the new WELLS FARGO account. During the

9   short period of October 6, 2020 to November 3, 2020, Plaintiff transferred a total of $592,131.00

10  into the newly opened WELLS FARGO account. Immediately following each large deposit,

11  Plaintiff entered a WELLS FARGO branch and made huge wire transfers via face-to-face

12  interactions with no questions asked by the WELLS FARGO DEFENDANTS. The majority of the

13  wire transfers were made from the Montclair branch of WELLS FARGO. The wire transfers

14  initiated at WELLS FARGO totaled $591,000.00 over a short time period, as follows:

| **DATE** | **TYPE OF TRANSACTION** | **AMOUNT** |
|----------|-------------------------|------------|
| 10/06/20 | Wire Transfer | -$48,500.00 |
| 10/07/20 | Wire Transfer | -$48,500.00 |
| 10/13/20 | Wire Transfer | -$48,500.00 |
| 10/14/20 | Wire Transfer | -$49,400.00 |
| 10/16/20 | Wire Transfer | -$49,400.00 |
| 10/20/20 | Wire Transfer | -$49,400.00 |
| 10/21/20 | Wire Transfer | -$49,400.00 |
| 10/22/20 | Wire Transfer | -$49,400.00 |
| 10/30/20 | Wire Transfer | -$49,400.00 |
| 11/02/20 | Wire Transfer | -$49,400.00 |

| DATE | TYPE OF TRANSACTION | AMOUNT |
|------|--------------------|--------|
| 11/02/20 | Wire Transfer | -$49,400.00 |
| 11/03/20 | Wire Transfer | -$49,400.00 |

22.     Within less than a month, Plaintiff had deposited $592,131.00 into his WELLS FARGO account and, with the WELLS FARGO DEFENDANTS' substantial assistance, transferred $590,100.00 out of his WELLS FARGO account by wire transfer to the scammers.  WELLS FARGO also directly charged Plaintiff wiring fees for each of the transfers to the scammers, DOES 51-100, totaling $615.00 in in fees directly taken by WELLS FARGO from Plaintiff as part of the scam.

23.     At the end of December 2020, the scammers, DOES 51-100, informed Plaintiff that the "investigation" was complete and his retirement account was rebuilt. When Plaintiff contacted the financial institution in which he had held his retirement account, he was informed the account was depleted. All of Plaintiff's money was gone. When Plaintiff informed WELLS FARGO and BOFA of the scam, neither BOFA or WELLS FARGO credited Plaintiff's accounts the amount of the money wrongfully taken from his accounts, including the fees they directly took as a result of the scam.  At the time of the transfers referenced above, Plaintiff lacked the capacity to make the financial decisions described herein because he did not understand or appreciate, to the extent relevant, the probable consequences or the significant risks involved in the decisions, and he was also substantially unable to resist fraud or undue influence at the time.

24.     During the throes of the financial elder abuse scam being perpetrated against him, Plaintiff is informed and believes, and accordingly alleges, that the BOFA DEFENDANTS and the WELLS FARGO DEFENDANTS never contacted the local police department or anyone else to investigate why Plaintiff continued to make so many suspicious deposits and withdrawals over such a short period of time and to prevent any further withdrawals.

25.     The BOFA DEFENDANTS and the WELLS FARGO DEFENDANTS, and each of them, play a critical role in alerting elderly customers and appropriate authorities to suspected elder

1   financial exploitation. This role has received increased attention at the state level, with examples of

2   "red flags" of financial elder abuse being provided to financial institutions, including but not limited

3   to the exact activities that occurred with Plaintiff's account with WELLS FARGO or the Plaintiff's

4   trust account with BOFA:

5           a.      Erratic or unusual banking transactions.

6           b.      Changes in typical banking patterns.

7           c.      Frequent large withdrawals.

8   Identifying these "red flags" of financial elder abuse help financial institutions recognize behaviors

9   or activities that may indicate that financial elder abuse is occurring, at which point the financial

10  institution has the ability to prevent the financial elder abuse and to protect their elderly customer

11  from such abuse occurring.

12          26.     Each of the subject withdrawals from both Plaintiff's BOFA account and WELLS

13  FARGO account as detailed above constituted an erratic and unusual banking transaction for

14  Plaintiff and an unusual change in his typical banking patterns – including without limitation

15  making large deposits and sending large wire transfers at BOFA, and opening a new account and

16  immediately making large deposits and wire transfers at WELLS FARGO, all during a short time

17  period. Those transfers also constituted "frequent large withdrawals." Yet, despite all these

18  hallmarks of financial elder abuse, the BOFA DEFENDANTS and the WELLS FARGO

19  DEFENDANTS did nothing to stop it – nothing – and instead, were a substantial factor in allowing

20  the scam to occur. Plaintiff is informed and believes, and accordingly alleges, that the BOFA

21  DEFENDANTS and the WELLS FARGO DEFENDANTS did not alert the police, did not report

22  the continued withdrawals to the local police department, or anyone else, and did not escalate the

23  suspected financial abuse to the operations team or any other division of their respective companies.

24  Plaintiff is further informed and believes, and accordingly alleges, that the BOFA DEFENDANTS

25  and the WELLS FARGO DEFENDANTS did not put an alert and/or a hold on Plaintiff's account at

26  any time, nor did BOFA require the other co-trustee's approval of the wire transfers depleting the

27  trust account. Instead, the BOFA DEFENDANTS and the WELLS FARGO DEFENDANTS just

1  continued to proactively wire money out of Plaintiff's account, substantially assisting in the blatant

2  financial elder abuse of their customer until nearly all of his life savings was gone as a result of the

3  scam, as well as directly taking his funds by charging him mounting fees to do so. In fact, all of the

4  wire transfer withdrawals referenced herein exceeded the $10,000.00 threshold requiring the filing

5  of a "Currency Transaction Report," and the transactions should have triggered a "Suspicious

6  Activity Report," which must invoke the scrutiny of the BOFA DEFENDANTS' and the WELLS

7  FARGO DEFENDANTS' management. That scrutiny focuses upon (and thereby informs

8  management of) the identity of the customer initiating the suspicious transfers, the amount of the

9  suspicious transactions and the identity of the recipient. Additionally, each month, most of the cash

10  withdrawals were made on the same day or shortly after large deposits of cash into the BOFA and

11  WELLS FARGO accounts. Yet, despite the fact that each suspicious transaction in the sudden series

12  of uncharacteristic transfers was for a very large amount, and many of the withdrawals were made

13  directly after deposits were made, the BOFA DEFENDANTS' and the WELLS FARGO

14  DEFENDANTS' management did nothing to investigate these hallmark red flags of financial abuse

15  against their elderly customer and did nothing to stop the taking of Plaintiff's life savings from his

16  accounts, thereby substantially assisting in the blatant financial elder abuse of Plaintiff by the

17  "scammers," DOES 51-100.

18        27.    Scams such as the "tech support scam" and others have become so widespread that

19  Plaintiff is informed and believes, and accordingly alleges that the BOFA DEFENDANTS and the

20  WELLS FARGO DEFENDANTS knew of these scams and were on notice to look out for elderly

21  people being swindled by scams prior to the suspicious wire transfers made by Plaintiff at BOFA

22  and WELLS FARGO branches as described herein. In fact, the number one target of these scams is

23  usually elderly men and women. WELLS FARGO explains that "Scam #1: Tech Support" is a scam

24  where "[i]n this scenario, a scammer posing as a technical support representative calls to claim there

25  is an issue with your computer – for example, that your software is outdated or that you need to

26  confirm your identity – and asks for remote access to resolve the issue. Once you provide this

27  access, the scammer may request payment for technical assistance, install malicious software,

1   change settings to leave your computer vulnerable, and/or steal your financial information." On its

2   website, WELLS FARGO also acknowledges that "[s]enior citizens are increasingly the target of

3   financial scams. According to the United States Senate Special Committee on Aging, older adults

4   lose approximately $2.9 billion every year to financial scams.  Many scams go unreported often

5   because the victim is humiliated, fears retaliation from scammers, or does not know how to report

6   the crime."  BOFA also acknowledges this scourge on its website, stating "more than $37 billion is

7   lost each year as a result of the financial exploitation of seniors."

8          28.     WELLS FARGO & COMPANY further tells its customers in its marketing materials

9   that their "commitment" is to "[h]elping you and your loved ones avoid or recover from financial

10  abuse is integral to helping you succeed financially. That's why we're committed to investing time,

11  people and resources to help identify, intercept, and investigate incidents of suspected elder and

12  vulnerable adult financial abuse." However, Plaintiff is informed and believes, and accordingly

13  alleges, that the WELLS FARGO DEFENDANTS did not implement policies and procedures or

14  train employees on any such policies and procedures to "identify, intercept, and investigate" the

15  financial elder abuse it knows exists. Plaintiff is informed and believes, and accordingly alleges that

16  the WELLS FARGO DEFENDANTS and their employees and managing agents who assisted

17  Plaintiff with the withdrawals were not trained in the techniques of identifying and preventing

18  financial elder abuse.  The WELLS FARGO DEFENDANTS and their managing agents failed to

19  observe that these large deposits and withdrawals were completely outside an elderly customer's

20  normal banking patterns and habits. The WELLS FARGO DEFENDANTS and their managing

21  agents also failed to question why Plaintiff was suddenly depositing and withdrawing such large

22  amounts of cash in such a short time period.  The WELLS FARGO DEFENDANTS and their

23  managing agents also failed to delay any of the transactions or to get a trusted third party to confirm

24  the transfers.  The WELLS FARGO DEFENDANTS and their managing agents also failed to bring

25  what should have been their obvious concerns to a supervisor or manager or to report the continued

26  withdrawals to the local police department or anyone else.  The WELLS FARGO DEFENDANTS

27  and their managing agents also failed to put an alert and/or hold on Plaintiff's account despite what

1   should have been their obvious concerns and despite the ability to do so.

2       29.    BOFA tells its customers in its marketing materials that they are "consistently

3   working to keep your accounts and information secure" and that "some of the ways we protect you"

4   includes "protecting against threats with an award-winning cybersecurity team that delivers

5   comprehensive security round-the-clock" and "24/7, real-time monitoring for suspicious account

6   activity" and "alerting you to potential fraud." However, Plaintiff is informed and believes, and

7   accordingly alleges that the BOFA DEFENDANTS did not implement policies and procedures or

8   train employees on any such policies and procedures to detect, deter or respond to the financial elder

9   abuse it knows exists. Plaintiff is informed and believes, and accordingly alleges that the BOFA

10  DEFENDANTS and their employees and managing agents who assisted Plaintiff with the

11  withdrawals were not trained in the techniques of identifying and preventing financial elder abuse.

12  The BOFA DEFENDANTS and their managing agents failed to observe that these withdrawals

13  were completely outside Plaintiff's normal banking patterns and habits, and inconsistent with his

14  history. The BOFA DEFENDANTS and their managing agents also failed to question why Plaintiff

15  was suddenly depositing and withdrawing such large amounts of cash in such a short time period.

16  The BOFA DEFENDANTS and their managing agents also failed to delay any of the transactions or

17  to get a trusted third party, or even Plaintiff's co-trustee, to confirm the transfers.  The BOFA

18  DEFENDANTS and their managing agents also failed to put an alert and/or hold on Plaintiff's

19  account despite what should have been their obvious concerns and despite the ability to do so.

20      30.    A 2015 study by True Link Financial revealed that seniors lose $36.48 billion each

21  year to financial elder abuse. Interagency guidance to financial institutions and professionals has

22  underscored what by then was a well-known problem in the banking community:

23          Recent studies suggest that financial exploitation is the most common form of elder
            abuse and that only a small fraction of incidents are reported. . . . Older adults are
24          attractive targets because they may have significant assets or equity in their homes.
            …Financial institutions can play a key role in preventing and detecting elder
25          financial exploitation. A financial institution's familiarity with older adults it
            encounters may enable it to spot irregular transactions, account activity, or
26          behavior. Prompt reporting of suspected financial exploitation to adult protective
            services, law enforcement, and/or long-term care ombudsmen can trigger
27          appropriate intervention, prevention of financial losses, and other remedies.

31.     It is hard to imagine any financial institution being more familiar with a client, or better positioned during face-to-face transactions with their account holder, to prevent such blatantly irregular transactions, account activity and behavior, than institutions like BOFA and WELLS FARGO and their managing agents were in Plaintiff's case. The BOFA DEFENDANTS and the WELLS FARGO DEFENDANTS and their managing agents actually knew or should have known Plaintiff was caught in the throes of financial elder abuse and that they were not only substantially assisting in the scam, but also directly taking Plaintiff's money via the fees it charged for every transfer Plaintiff made to the scammers. After all, under these circumstances, there was no other plausible explanation for the sudden and numerous deposits and withdrawals to and from Plaintiff's accounts as detailed herein. In fact, when the "scammers" instructed Plaintiff to open an account at California Bank and make wire transfers from that bank, California Bank refused to do so because it had concerns about financial elder abuse. Similarly, when the "scammers" instructed Plaintiff to open an account at U.S. Bank and make wire transfers from that bank, U.S. Bank refused to do more than three wire transfers because it had concerns about financial elder abuse. Although these two banks were alerted to the red flags of financial elder abuse – based on the same information the BOFA DEFENDANTS and the WELLS FARGO DEFENDANTS knew about Plaintiff and had also received from multiple government agencies about financial elder abuse – the BOFA DEFENDANTS and the WELLS FARGO DEFENDANTS simply ignored the red flags and instead, substantially assisted the "scammers" in taking Plaintiff's life savings, directly collecting their own fees from Plaintiff in the process.

32.     Banks plays a critical role in preventing the financial abuse of older persons by reporting suspicious activity. Financial institutions are the "first line of defense" against financial abuse, by identifying the abuse at its outset, before the elder's assets have been dissipated. No institution is in a better position to observe and report suspicious behavior, such as an unusual volume of banking activity, banking activity inconsistent with a customer's usual habits, or typical red flags of fraud and financial elder abuse. As this case highlights, however, the BOFA DEFENDANTS' and the WELLS FARGO DEFENDANTS' failure to properly train its

1  representatives on policies and procedures has resulted in its representatives assisting the most

2  blatant financial elder abuse of Plaintiff, by failing to detect, deter, and respond to the financial elder

3  abuse events.

### FIRST CAUSE OF ACTION

#### (Financial Elder Abuse against all Defendants)

6      33.    Plaintiff refers to, and incorporates herein by reference, all preceding paragraphs into

7  this cause of action as though fully set forth herein.

8      34.    As an "elder" within the meaning of Welfare & Institutions Code § 15610.27,

9  Plaintiff is entitled to the heightened rights and special statutory protections provided by California's

10  Elder and Dependent Adult Civil Protection Act ("EADACPA") set forth in Welfare & Institutions

11  Code § 15600 et seq.

12      35.    Under Welfare & Institutions Code § 15610.30(a), "financial abuse" of an elder or

13  dependent adult occurs when a person or entity does any of the following: (1) Takes, secretes,

14  appropriates, obtains, or retains real or personal property of an elder or dependent adult for a

15  wrongful use or with intent to defraud, or both.  (2) Assists in taking, secreting, appropriating,

16  obtaining, or retaining real or personal property of an elder or dependent adult for a wrongful use or

17  with intent to defraud, or both.  (3) Takes, secretes, appropriates, obtains, or retains, or assists in

18  taking, secreting, appropriating, obtaining, or retaining, real or personal property of an elder or

19  dependent adult by undue influence, as defined in Welfare & Institutions Code § 15610.70.

20      36.    The BOFA DEFENDANTS and the WELLS FARGO DEFENDANTS and their

21  respective managing agents are liable for the financial elder abuse of Plaintiff under Welfare &

22  Institutions Code § 15610.30 because they actually knew, or should have known, that another

23  person or entity was engaging in financial elder abuse of Plaintiff and that their conduct as described

24  in detail herein was likely to be harmful to the elderly Plaintiff. That is, not only should they have

25  known that they were assisting others' financial elder abuse of Plaintiff, but their knowledge of the

26  facts stated herein makes it clear that they must have actually known that when they were assisting

27  Plaintiff in suddenly, uncharacteristically and repeatedly wiring all of his funds out of their

1   respective accounts in a short time period, it was for a wrongful use, that another person was

2   perpetrating a financial elder abuse scam on Plaintiff as a result, and that this conduct was likely to

3   be harmful to Plaintiff.  Plaintiff is informed and believes, and accordingly alleges that the BOFA

4   DEFENDANTS and the WELLS FARGO DEFENDANTS had knowledge of the following facts, in

5   addition to the facts set forth above:

6       a.    Plaintiff was an 85-year-old elder at the time of the transactions at issue;

7       b.    In his over 30 years of doing business with BOFA, at the same branch, Plaintiff had

8           never engaged in repeated wire transfers such as those that suddenly and repeatedly

9           began occurring in large amounts in September 2020 and continued until he ran out

10          of money in December 2020;

11      c.    Plaintiff's WELLS FARGO account was opened with suspicious micro-deposits,

12          then he immediately made large deposits in, and large wire transfers, out of the

13          WELLS FARGO account within days until the account was depleted;

14      d.    These face-to-face wire transfers constituted an erratic and unusual banking

15          transaction for Plaintiff, each constituted a profound and inherently suspicious

16          transaction for Plaintiff and each was patently inconsistent for an older adult;

17      e.    These wire transfers were patently uncharacteristic of Plaintiff's long-time banking

18          practices at BOFA; and

19      f.    The BOFA DEFENDANTS and the WELLS FARGO DEFENDANTS and their

20          respective managing agents were on notice to look out for, elderly people being

21          swindled by increasingly common scams, including "tech support scams" prior to the

22          suspicious wire transfers made by Plaintiff at BOFA and WELLS FARGO branches

23          as described herein.

24      37.    Despite being in possession of and knowing all these specific facts as set forth herein

25  that would give anyone a reasonable basis to believe financial elder abuse was occurring, the BOFA

26  DEFENDANTS and the WELLS FARGO DEFENDANTS and their respective managing agents

27  knowingly financially abused Plaintiff under Welfare & Institutions Code § 15610.30 by assisting in

1    these cash transactions over and over again in direct, face-to-face transactions with Plaintiff from
2    September 2020 through December 2020, totaling over $2,000,000.00, and by directly taking and
3    retaining wire fees from Plaintiff each time in the process. The BOFA DEFENDANTS' and the
4    WELLS FARGO DEFENDANTS' conduct as described in detail here was a substantial factor in
5    causing harm to Plaintiff. But for the ongoing and substantial assistance of the BOFA
6    DEFENDANTS and the WELLS FARGO DEFENDANTS, this financial abuse scam against
7    Plaintiff could not have been effected by the scammers. As set forth in detail herein, the BOFA
8    DEFENDANTS and the WELLS FARGO DEFENDANTS openly shirked their professional
9    responsibilities to their elderly customers, including the clearly elderly Plaintiff. Time and time
10   again during the financial exploitation of Plaintiff, the BOFA DEFENDANTS and the WELLS
11   FARGO DEFENDANTS consciously and repeatedly turned a blind eye to the multiple red flags
12   raised by these uncharacteristic, frequent and large transfers. The BOFA DEFENDANTS and the
13   WELLS FARGO DEFENDANTS consciously failed to follow their own policies and procedures to
14   protect Plaintiff from financial elder abuse, despite knowing of the presence of numerous known red
15   flags for financial elder abuse, instead repeatedly wiring away the life savings of an elderly man
16   clearly in the throes of a financial elder abuse scam.
17          38.     Given the knowledge of all of the foregoing by the BOFA DEFENDANTS and the
18   WELLS FARGO DEFENDANTS and their respective managing agents, the BOFA DEFENDANTS
19   and the WELLS FARGO DEFENDANTS and their respective managing agents committed financial
20   abuse under Welfare & Institutions Code § 15610.30 by assisting in the financial abuse of Plaintiffs
21   by DOES 51-100 and by directly taking and retaining wire fees from Plaintiff each time in the
22   process. Even with their knowledge of the above, the BOFA DEFENDANTS and the WELLS
23   FARGO DEFENDANTS and their respective managing agents simply turned a blind eye and
24   callous heart to the outrageous pillaging of Plaintiff's financial security, ignoring the stunning
25   frequency, amounts and volume of withdrawals and the red flag of repeated wire transfer
26   withdrawals by an elder who had never done anything similar and openly shirking its professional
27   responsibilities to its elderly customers, including Plaintiff. By assisting in taking, secreting,

1    appropriating, obtaining or retaining Plaintiff's property rights for a wrongful use or with intent to

2    defraud, or both, as set forth herein, and by directly taking and retaining wire fees from Plaintiff

3    each time in the process, BOFA DEFENDANTS and the WELLS FARGO DEFENDANTS and

4    their respective managing agents engaged in financial elder abuse within the meaning of Welfare &

5    Institutions Code § 15610.30. The BOFA DEFENDANTS and the WELLS FARGO

6    DEFENDANTS and their respective managing agents knew or should have known that this conduct

7    was likely to be harmful to Plaintiff. The BOFA DEFENDANTS and the WELLS FARGO

8    DEFENDANTS and their respective managing agents, and each of them, knew or should have

9    known that the numerous withdrawals were a result of a financial elder abuse scam, and that their

10   customer, a man who was clearly elderly, was particularly susceptible to undue influence.

11   EADACPA defines undue influence as "excessive persuasion that causes another person to act or

12   refrain from acting by overcoming that person's free will and results in inequity. ..." (Welf. & Inst.

13   Code § 15610.70.)

14           39.     Yet despite knowing all of this information, not once did the BOFA DEFENDANTS

15   or the WELLS FARGO DEFENDANTS warn their customer who had come into their branch for a

16   face-to-face transaction that he was in the throes of a financial elder abuse scam, nor did they ever

17   attempt to lead Plaintiff away from the scam even though they had the ability to do so when he was

18   personally inside their bank branch interacting with them in a face-to-face transaction. The BOFA

19   DEFENDANTS and the WELLS FARGO DEFENDANTS did not do anything to even suggest to

20   Plaintiff that he may be the victim of a financial elder abuse scam, how to avoid such a scam or

21   what to do in case a scam had occurred. And when Plaintiff became aware of the scam and told the

22   BOFA DEFENDANTS and the WELLS FARGO DEFENDANTS about it after all of his money

23   had been transferred, the BOFA DEFENDANTS and the WELLS FARGO DEFENDANTS further

24   abused him directly by failing to credit his account the amount of the money wrongfully obtained

25   from him, and therefore, possess money belonging to him in violation of Welfare & Institutions

26   Code §15610.30. Under Welfare & Institutions Code § 15657.6, a person or entity who takes,

27   secretes, appropriates, obtains, or retains, or assists in taking, secreting, appropriating, obtaining, or

1    retaining the real or personal property of an elder when the elder lacks capacity pursuant to Section

2    812 of the Probate Code, or is of unsound mind, but not entirely without understanding, pursuant to

3    Section 39 of the Civil Code, shall, upon demand by the elder or a representative of the elder, return

4    the property and if that person or entity fails to return the property, the elder shall be entitled to the

5    remedies provided under Welfare & Institutions Code § 15657.5, including attorney fees and costs.

6          40.      DOES 51-100 are liable for the financial elder abuse of Plaintiff under Welfare &

7    Institutions Code § 15610.30 as set forth herein for taking, secreting, appropriating, obtaining,

8    and/or retaining real or personal property of Plaintiff for a wrongful use or with intent to defraud, or

9    both, and for taking, secreting, appropriating, obtaining, and/or retaining real or personal property of

10   Plaintiff by undue influence.  DOES 51-100 exerted undue influence on Plaintiff to entice him to

11   transfer his funds to them. The Elder Abuse Act defines undue influence as "excessive persuasion

12   that causes another person to act or refrain from acting by overcoming that person's free will and

13   results in inequity. ..." (Welf. & Inst. Code § 15610.70.) Once Plaintiff was persuaded to trust

14   them, DOES 51-100 took over $2,000,000.00 from Plaintiff in the wire transfers he made from

15   BOFA and WELLS FARGO, as outlined in detail above. DOES 51-100's taking, secreting,

16   appropriating, obtaining or retaining Plaintiff's property rights for a wrongful use or with intent to

17   defraud, or both, or assisting in such conduct, constitutes financial elder abuse within the meaning

18   of Welfare & Institutions Code § 15610.30. DOES 51-100 engaged in such conduct either directly

19   or assisted others in such conduct within the meaning of Welf. & Inst. Code § 15610.30, and knew

20   or should have known that this conduct was likely to be harmful to Plaintiff.

21         41.      The BOFA DEFENDANTS and the WELLS FARGO DEFENDANTS failed to

22   create and/or follow policies and protocols to protect its elderly customers, including Plaintiff, from

23   financial elder abuse. The BOFA DEFENDANTS and the WELLS FARGO DEFENDANTS

24   completely ignored the blatant signs that Plaintiff was being financially abused, until he had lost

25   nearly all of his life savings.

26         42.      The BOFA DEFENDANTS and the WELLS FARGO DEFENDANTS failed to

27   ensure its employees were properly trained to recognize and prevent financial elder abuse and failed

1   to monitor and supervise its employees to ensure they were complying with the company's policies.

2   The BOFA DEFENDANTS and the WELLS FARGO DEFENDANTS failed to follow the standard

3   of care in the financial industry regarding training and monitoring for financial elder abuse.  The

4   BOFA DEFENDANTS and the WELLS FARGO DEFENDANTS and their respective managing

5   agents knew or should have known that failing to follow the standard of care in the industry to

6   monitor for and protect against financial elder abuse, would subject Plaintiff to the foreseeable risk

7   of undue influence and financial elder abuse.

8          43.     As a direct and proximate result of wrongful conduct of Defendants, and each of

9   them, as alleged above, Plaintiff has suffered economic damages, as well as mental distress,

10  anguish, upset, humiliation, fear and anxiety all to his general damage in a sum to be established

11  according to proof.

12         44.     Due to the conduct, acts and omissions of Defendants, and each of them, as alleged

13  above, in addition to all other remedies provided by law, Plaintiff is entitled to recover reasonable

14  attorney's fees and costs for financial elder abuse pursuant to Welfare & Institutions Code § 15657.5.

15         45.     By the conduct, acts and omissions of Defendants, and each of them, as alleged

16  above, Defendants are guilty of recklessness, fraud, oppression, and/or malice.  The specific facts

17  set forth above show a disregard of the high probability that Plaintiff would be injured.  Defendants'

18  conduct constituted oppression, fraud, and malice in the commission of the financial elder abuse,

19  and Plaintiff is entitled to recover damages for the sake of example and by way of punishing

20  Defendants for financial abuse pursuant to Civil Code § 3294.

21         Wherefore, Plaintiff seeks relief as set forth below.

22                          **SECOND CAUSE OF ACTION**

23                    **(Unlawful, Unfair and Deceptive Business Practices**

24  **[Business & Professions Code § 17200 *et seq*.] against WELLS FARGO and BOFA Only)**

25         46.     Plaintiff refers to, and incorporates herein by reference, all preceding paragraphs into

26  this cause of action as though fully set forth herein.

27         47.     Business & Professions Code § 17200 et seq. prohibits any person from engaging in

1   unfair competition as that term is defined in Business and Professions Code § 17200, which includes

2   any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or

3   misleading advertising and any act prohibited by Chapter 1 (commencing with § 17500) of Part 3 of

4   Division 7 of the Business & Professions Code."

5       48.   Plaintiff is informed and believes, and accordingly alleges, that WELLS FARGO and

6   BOFA financially abused Plaintiff when they assisted the scammers in obtaining nearly all of

7   Plaintiff's life savings totaling over $2,000,000.00 and when they directly took wire fees from

8   Plaintiff each time they did so, by failing to follow policies and procedures to prevent financial elder

9   abuse, when they knew or should have known that the numerous and repeated wire transfer

10  withdrawals from Plaintiff's accounts were likely for a wrongful purpose and the result of financial

11  elder abuse.

12      49.   Plaintiff is informed and believes, and accordingly alleges, that WELLS FARGO and

13  BOFA violated Welfare & Institutions Code § 15610.30 when it assisted in the taking, secreting,

14  appropriating, obtaining or retaining of Plaintiff's funds, totaling over $2,000,000.00, for a wrongful

15  use or with an intent to defraud, or both, and when it took and retained wire transfer fees from

16  Plaintiff for doing so as part of the scam as set forth herein.

17      50.   Plaintiff is informed and believes, and accordingly alleges that the violation of

18  Welfare & Institutions Code § 15610.30 alleged herein constituted an unlawful business practice in

19  violation of Business & Professions Code § 17200 et seq.

20      51.   When Plaintiff informed WELLS FARGO and BOFA and its managing agents of the

21  scam resulting in multiple large wire transfers, both WELLS FARGO and BOFA failed to credit

22  Plaintiff's accounts the amount of the money wrongfully took from his accounts, including the fees

23  charged by, and directly taken by, BOFA and WELLS FARGO for each of the wire transfers, in

24  violation of Welfare & Institutions Code § 15610.30, and therefore possess money belonging to him

25  for which he has a right to restitution under Business and Professions Code § 17200.

26      52.   As a result of WELLS FARGO's and BOFA's unfair competition and unlawful

27  business practices, as alleged herein, Plaintiff has suffered injury in fact and lost money or property.

-22-

53.     Plaintiff requests that this Court enter such orders or judgments as may be necessary to restore to Plaintiff all money which may have been acquired by means of such unlawful, unfair and/or deceptive business practices, as provided in Business & Professions Code § 17203, and for such other relief as set forth below.

Wherefore, Plaintiff seeks relief as set forth below.

**REQUEST FOR JURY TRIAL**

Plaintiff hereby requests a jury trial.

**PRAYER FOR RELIEF**

WHEREAS, Plaintiff prays judgment against Defendants, and each of them, as follows:

1.     For general damages according to law and proof;

2.     For special damages according to law and proof;

3.     For costs of suit;

4.     For attorneys' fees;

5.     For statutory damages;

6.     For restitution pursuant to Business & Professions Codes § 17203 against WELLS FARGO and BOFA only;

7.     For injunctive relief pursuant to Business & Professions Codes § 17203 against WELLS FARGO and BOFA only;

8.     For treble damages pursuant to Civil Code § 3345;

9.     For punitive damages;

10.    For prejudgment interest according to law; and

11.    For such other and further relief as the court may deem proper.

Dated: May 21, 2021                    STEBNER AND ASSOCIATES

By: _____
Kathryn A. Stebner
Deena K. Zacharin
Attorneys for Plaintiff

COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL