1  KATHRYN A. STEBNER (SBN 121088)
   Email: kathryn@stebnerassociates.com
2  DEENA K. ZACHARIN (SBN 141249)
   Email: deena@stebnerassociates.com
3  **STEBNER AND ASSOCIATES**
   870 Market Street, Suite 1212
4  San Francisco, CA  94102
   Tel:   (415) 362-9800
5  Fax:   (415) 362-9801

6  KIRSTEN FISH (SBN 217940)
   Email: kfish@nkf-law.com
7  **NEEDHAM KEPNER & FISH LLP**
   1960 The Alameda, Suite 210
8  San Jose, CA 95126
9  Tel:   (408) 244-2166
   Fax:   (408) 244-7815
10
   Attorneys for Plaintiff
11

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION**

| | |
|---|---|
| CHAN-HIE KIM, individually and as co-trustee of the Chan-Hie Kim & Sook-Chung Kim Trust,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO, N.A.; WELLS FARGO & COMPANY; BANK OF AMERICA, N.A.; BANK OF AMERICA CORPORATION; VIRGEL MABINI; NANCY BECERRA; DOES 1-100, inclusive<br><br>Defendants. | **CASE NO. 3:21-cv-05405-JD**<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ORDER REMANDING REMOVED ACTION TO STATE COURT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:  September 30, 2021<br>Time:  10:00 a.m.<br>Dept.:  Courtroom 11 – 19th Floor; Hon. Judge James Donato<br><br>Complaint Filed:  May 21, 2021<br>Action Removed:  July 14, 2021 |

NOTICE OF MOTION/MOTION FOR ORDER
REMANDING TO STATE COURT

Case No. 3:21-cv-05405-JD

| | |
|---|---|
| 1 | **NOTICE OF MOTION AND MOTION** |
| 2 | TO THE COURT, DEFENDANTS AND THEIR COUNSEL OF RECORD: PLEASE |
| 3 | TAKE NOTICE THAT ON September 30, 2021 at 10:00 a.m., or as soon thereafter as the matter |
| 4 | can be heard in Courtroom 11, 19th Floor, of the United States District Court for the Northern |
| 5 | District, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, California |
| 6 | 94102, plaintiff CHAN-HIE KIM, individually and as co-trustee of the Chan-Hie Kim & Sook- |
| 7 | Chung Kim Trust ("Plaintiff") will, and hereby does, move this Court, for an order remanding this |
| 8 | action, removed by against defendants BANK OF AMERICA, N.A. ("BANA") and BANK OF |
| 9 | AMERICA CORPORATION ("BAC") (collectively "Defendants"), to the Superior Court for San |
| 10 | Francisco County. |
| 11 | Plaintiff's motion to remand is brought in response to the Notice of Removal ("Removal") |
| 12 | filed by Defendants on July 14, 2021. The motion is brought on the grounds that the Court lacks |
| 13 | jurisdiction over this action under 28 U.S.C. § 1331 because, contrary to Defendants' assertions in |
| 14 | their Removal, the Edge Act (12 U.S.C. § 632) does not grant this Court jurisdiction over the instant |
| 15 | suit. Plaintiff's claims are brought solely under California state statutory law (the California Elder |
| 16 | Abuse and Dependent Adult Civil Protection Act and California Business & Professions Code § |
| 17 | 17200 *et seq*. regarding Unlawful, Unfair and Deceptive Business Practices) – no federal claims are |
| 18 | made and no references to "international banking" were alleged because this action does not arise |
| 19 | out of transactions involving international or foreign banking. Nonetheless, Defendants argue that |
| 20 | this Court has jurisdiction over this suit based upon a strained interpretation of the Edge Act, 12 |
| 21 | U.S.C. § 632, an argument that is without merit for the reasons set forth herein. As such, Plaintiff |
| 22 | respectfully submits that the Court remand the suit to the Superior Court of San Francisco County. |
| 23 | Pursuant to Local Rule 7-2(b), this Motion is based upon this Notice of Motion and Motion, |
| 24 | the attached Memorandum of Points and Authorities, the Declaration of Kirsten Fish and exhibits |
| 25 | filed concurrently with these moving papers, the proposed order filed concurrently with these moving |
| 26 | papers, any papers filed in reply, all other papers and records on file in this matter, and such other |
| 27 | argument and evidence as this Court may consider at or before the hearing, if any, of this motion. |

Dated: August 13, 2021     NEEDHAM KEPNER & FISH LLP

By: _____
Kirsten Fish
Attorneys for Plaintiff

**TABLE OF CONTENTS**                                                                                             Page

TABLE OF AUTHORITIES ..................................................................................................v

I. INTRODUCTION..................................................................................................1

II. FACTUAL AND PROCEDURAL BACKGROUND............................................................1

III. LAW AND ARGUMENT ........................................................................................3

    A. Legal Standard..........................................................................................3

    B. Plaintiff's Case Should be Remanded Because The Edge Act Is Narrowly Construed And Strictly Limited To Cases, Unlike The Present Case, Where An Alleged International Banking Transaction Is "Legally Significant" And "Integrally Tied" To The Plaintiff's Claims..........................................................................................4

    C. Principals of Comity Support The Remand Of This Case Back To State Court..................................................................................................11

IV. CONCLUSION ..................................................................................................12

**TABLE OF AUTHORITIES**           Page(s)

**CASE LAW**

*Allstate Ins. Co. v. CitiMortgage, Inc.*
2012 WL 967582 (S.D.N.Y. 2012) ............................................................................................. 5

*Am. Int'l Group, Inc. v. Bank of Am. Corp.*
712 F.3d 775 (2d Cir. 2013) ....................................................................................................... 4

*Bank of New York v. Bank of America*
861 F. Supp. 225 (S.D.N.Y. 1994) .................................................................................. 5, 7, 10

*Burford v. Sun Oil Co.*
319 U.S. 315 (1943) ................................................................................................................. 11

*Caggiano v. Pfizer*
384 F.Supp.2d 689 (S.D.N.Y. 2005) .......................................................................................... 8

*California v. H&R Block, Inc.*
2006 WL 2669045 (N.D. Cal. Sep. 18, 2006) .......................................................................... 12

*California v. Wells Fargo & Co.*
2015 WL 4886391 (C.D. Cal. Aug. 13, 2015) ..................................................................... 8, 10

*Caterpillar Inc. v. Williams*
482 U.S. 386 (1987) ................................................................................................................... 3

*Diaz v. Pan Am. Fed. Sav. & Loan Ass'n.*
635 F.2d 30 (1st Cir. 1980) ........................................................................................................ 5

*Emrich v. Touche Ross & Co.*
846 F.2d 1190 (9th Cir. 1988) ................................................................................................... 4

*Franchise Tax Board of Cal. v. Const. Laborers Vacation Trust for Southern Cal.*
463 U.S. 1 (1983) ....................................................................................................................... 3

*Gaus v. Miles, Inc.*
980 F.2d 564 (9th Cir. 1992) ................................................................................................. 3, 4

*Grable & Son Metal Products, Inc. v. Darue Engineering & Manufacturing*
545 U.S. 308 (2005) ................................................................................................................. 11

*Hunter v. Philip Morris USA*
582 F.3d 1039 (9th Cir. 2009) ................................................................................................... 4

*In re Citibank August 11, 2020 Wire Transfers*
-- F.Supp.3d --, 2021 WL 606167 (S.D.N.Y. Feb. 16, 2021) .................................................... 9

*Kokkohnen v. Guardian Life Ins. Co. of America*
511 U.S. 375 (1994) ................................................................................................................. 4

*Landesbank Baden-Württemberg v. Capital One Financial Corp.*
954 F.Supp.2d 223 (S.D.N.Y. 2013) ........................................................................................ 8

*Lazard Freres & Co. v. First Nat'l Bank of Md.*
1991 WL 221087 (S.D.N.Y. Oct. 15, 1991) ........................................................................... 10

*Luby's Fuddruckers Restaurant, LLC v. Visa Inc.*
342 F.Supp.3d 306 (E.D.N.Y. 2018) ................................................................................. 9, 10

*Luther v. Countrywide Home Loans Servicing LP*
533 F.3d 1031 (9th Cir. 2008) .............................................................................................. 3, 4

*Pinto v. Bank One Corp.*
2003 WL 21297300 (S.D.N.Y. 2003) ................................................................................. 5, 10

*Racepoint Partners, LLC v. JPMorgan Chase Bank*
2006 U.S. Dist. LEXIS 78046 (S.D.N.Y. 2006) ...................................................................... 7

*Rains v. Criterion Systems, Inc.*
80 F.3d 339 (9th Cir. 1996) ...................................................................................................... 4

*Sealink Funding Ltd. v. Bear Stearns & Co. Inc.*
2012 WL 4794450 (S.D.N.Y. Oct. 9, 2012) ............................................................................. 8

*Sollitt v. KeyCorp*
463 F.App'x 471 (6th Cir. 2012) ........................................................................................ 8, 10

*Speedy Stop Food Stores, LLC v. Visa, Inc., C.A.*
2013 U.S. Dist. LEXIS 200283 (S.D. Tex. Dec. 26, 2013) ...................................................... 8

*Telecredit Service Center v. First Ntl. Bank of Florida*
679 F.Supp. 1101 (S.D.Fla. 1988) ........................................................................................ 5, 6

*Tortola Rest. v. Kimberly-Clark Corp.*
987 F.Supp. 1186 (N.D. Cal. 1997) ......................................................................................... 3

*UPS, Inc. v. Flores-Galarza*
385 F.3d 9 (1st Cir. 2004) ........................................................................................................ 4

*Vara v. Inocenti*
No. 18-23058-CIV, 2018 WL 8415251 (S.D. Fla. Nov. 16, 2018) .......................................... 8

*Weiss v. Hager*
2011 WL 6425542 (S.D.N.Y. 2011) ...................................................................................... 10

**STATUTES**

12 U.S.C. § 632 ............................................................................................................. *passim*

28 U.S.C. § 1331 ............................................................................................................. 1, 3, 11

28 U.S.C. § 1441 ................................................................................................................. 1, 3

28 U.S.C. § 1446 ...................................................................................................................... 1

28 U.S.C. § 1447 ................................................................................................................ 3, 12

Cal. Bus. & Prof. Code § 17200 ........................................................................................ 1, 3, 6

Cal. Welf. & Inst. Code § 15600 ........................................................................................... 3, 6

| | |
|---|---|
| 1 | **MEMORANDUM OF POINTS AND AUTHORITIES** |
| 2 | **I.     INTRODUCTION** |

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Plaintiff CHAN-HIE KIM, individually and as co-trustee of the Chan-Hie Kim & Sook-Chung Kim Trust ("Plaintiff")  properly filed this lawsuit in the Superior Court of California against defendants BANK OF AMERICA, N.A., BANK OF AMERICA CORPORATION, WELLS FARGO, N.A., WELLS FARGO & COMPANY, VIRGEL MABINI, NANCY BECERRA and DOES 1-100, inclusive, given that the only claims alleged in the Complaint were those brought under California state statutory law (the California Elder Abuse and Dependent Adult Civil Protection Act and California Business & Professions Code § 17200 *et seq*. regarding Unlawful, Unfair and Deceptive Business Practices) – no federal claims were made and no references to "international" or "foreign" banking were alleged in the Complaint because this action does not arise out of transactions involving international or foreign banking. Nevertheless, on July 14, 2021, defendants BANK OF AMERICA, N.A. ("BANA") and BANK OF AMERICA CORPORATION ("BAC") (collectively "Defendants") filed a Notice of Removal ("Removal") to the federal district court on the wholly improper ground of federal question jurisdiction under 28 U.S.C. §§ 1331, 1441 and 1446, and 12 U.S.C. § 632.

**II.     FACTUAL AND PROCEDURAL BACKGROUND**

This financial elder abuse case arises from a "tech support scam" that drained nearly all of the elderly Plaintiff's life savings. (Declaration of Kirsten Fish ("Fish Decl.), **Exhibit A**, Complaint ¶ 1.) The scam first started in September, 2020, when a large warning message popped up on Plaintiff's computer saying his computer was hacked, not to touch anything, and to call a phone number. (*Id.*, ¶ 19.) When Plaintiff called the number the person who answered said he was with Microsoft. (*Id.*) The scammer said that Plaintiff's bank account at Bank of America was hacked and connected Plaintiff with another scammer who said he was with "Bank of America Fraud Prevention department." (*Id.*) The scammer said that Plaintiff's social security number and birthdate were exposed and his retirement accounts at another institution were at risk. (*Id.*) The scammer told Plaintiff to transfer all of his retirement funds to Bank of America in order to "rebuild" his

retirement accounts with new account numbers in order to protect his funds. Following his instructions, Plaintiff transferred his retirement funds to his account at Bank of America, which was titled in his trust entitled the "Chan-Hie Kim & Sook-Chung Kim Trust," in six huge increments, totaling over $2,000,000.00 being transferred into his Bank of America trust account. (*Id.*) Immediately following each large deposit from his investment account, Plaintiff entered a Bank of America branch and requested huge wire transfers with no questions asked by Defendants. (*Id.*)

Plaintiff, age 85 at the time, had been a customer of Defendants for over 30 years. (*Id.*, ¶ 18.) Prior to September 2020, Plaintiff never engaged in any "suspicious transactions." In particular, neither co-trustee of the Chan-Hie Kim & Sook-Chung Kim Trust regularly, or at all, engaged in any transactions where they were depositing large amounts to the trust account, and then withdrawing large amounts from the trust account by wire transfer. (*Id.*) According to Defendants' own records, deposits into the trust account with Bank of America prior to the scam consisted almost entirely of small amounts, and checks drawn on the account for expenses during that period were for approximately the same amount of money. (*Id.*) Then, after years of doing these regular, frugal transactions with Defendants, suddenly most of the transactions out of the Chan-Hie Kim & Sook-Chung Kim Trust Bank of America account from September 23, 2020 to November 19, 2020 involved wire transfers of enormous amounts of cash totaling over $1,480,000.00. (*Id.*)

Each time the scammers instructed him to wire more cash, the 85-year-old Plaintiff walked into his long-time Bank of America branch and met in person, face-to-face with a teller, who then would call over a bank manager to approve his wire transfers. (*Id.*, ¶ 20.) Even though Defendants knew or should have known that the elderly Plaintiff was potentially being scammed, they did nothing to stop the ongoing scam, and ignored the many government advisories they have received informing them to detect, deter and respond to the "red flags" of financial elder abuse. (*Id.*) Thus, Defendants provided the scammers with substantial assistance by allowing Plaintiff to continue to wire away almost $1,500,000.00 until his life savings was nearly depleted. (*Id.*) On top of this abject failure to protect their elderly customer, Defendants directly charged Plaintiff fees in the amount of $30.00 to $45.00 for each of the wire transfers to the scammers, totaling $1,575.00 in fees. (*Id.*)

Accordingly, Plaintiff's Complaint alleges causes of action against Defendants for financial elder abuse under California's Welfare & Institutions Code § 15600 et seq. and unfair and deceptive business practices under California's Business & Professions Code § 17200 et seq. and was filed on May 21, 2021 in San Francisco Superior Court.

## III. LAW AND ARGUMENT

Defendants argue this Removal was proper because "Plaintiff's claims arise from and involve foreign banking transactions, which are subject to federal jurisdiction pursuant to the Edge Act, 12 U.S.C. § 632," which creates federal subject-matter jurisdiction over "all suits of a civil nature at common law or in equity to which any corporation organized under the laws of the United States shall be a party" and that arise "out of transactions involving international or foreign banking." (Fish Decl., **Exhibit B**, Removal 5:9-14.) For the reasons set forth herein, this argument fails and this case should be remanded to the Superior Court for the County of San Francisco.

### A. Legal Standard for Removal

Removal is only appropriate when the district courts of the United States had original jurisdiction over the action. (28 U.S.C. § 1441; *see also Luther v. Countrywide Home Loans Servicing LP*, 533 F.3d 1031, 1032 (9th Cir. 2008).) Original jurisdiction may be based on a federal question or diversity. (*Caterpillar Inc. v. Williams,* 482 U.S. 386, 392 (1987).) Federal question jurisdiction exists if the case "aris[es] under the Constitution, laws, or treaties of the United States." (28 U.S.C. § 1331.) For an action to be removed on the basis of federal question jurisdiction, the complaint must establish either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on the resolution of substantial questions of federal law. (*Franchise Tax Board of Cal. v. Const. Laborers Vacation Trust for Southern Cal.,* 463 U.S. 1, 10-11 (1983).) If a federal court determines the case was improperly removed and that it does not have original jurisdiction, the court must remand the action to state court. (28 U.S.C. § 1447.)

The party seeking removal bears the burden of showing that removal is proper, and that burden is heavy, as the standards for federal jurisdiction are well established. (*Tortola Rest. v. Kimberly-Clark Corp.*, 987 F.Supp. 1186, 1188 (N.D. Cal. 1997); *Gaus v. Miles, Inc.*, 980 F.2d 564,

566 (9th Cir. 1992); *UPS, Inc. v. Flores-Galarza,* 385 F.3d 9, 15 (1st Cir. 2004); *Kokkohnen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377 (1994) ["[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction"].) Thus, removal jurisdiction is extremely circumscribed and the removal statute is strictly construed <u>against</u> removal. (*See Gaus*, 980 F.2d at 566 ["Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance"].)

In fact, the Ninth Circuit applies a "'strong presumption' against removal jurisdiction." (*Id.*; *see also Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009).) Indeed, federal courts are obligated to consider whether they have jurisdiction even in the absence of a remand motion. (*Rains v. Criterion Systems, Inc.*, 80 F.3d 339, 342 (9th Cir. 1996).) Any doubts or ambiguity as to federal jurisdiction are resolved in favor of remand to state court, and the defendant always has the burden of establishing that removal was proper. (*See Gaus*, 980 F.2d at 566; *Luther,* 533 F.3d at 1032; *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988).)

### B. **Plaintiff's Case Should be Remanded Because The Edge Act Is Narrowly Construed And Strictly Limited To Cases, Unlike The Present Case, Where An Alleged International Banking Transaction Is "Legally Significant" And "Integrally Tied" To The Plaintiff's Claims.**

Defendants' Removal is based entirely on the Edge Act of 1913, 12 U.S.C. § 632. The Edge Act provides for original federal jurisdiction over "all suits of a civil nature at common law or in equity to which any corporation organized under the laws of the United States shall be a party, arising out of transactions involving international or foreign banking … or out of other international or foreign financial operations, either directly or through the agency, ownership, or control of branches of local institutions … in foreign countries." (*Id.*) The Edge Act was enacted in 1919 "for the purpose of supporting U.S. *foreign trade*, in part by authorizing the establishment of *international banking and financial corporations.*" (*Am. Int'l Group, Inc. v. Bank of Am. Corp.*, 712 F.3d 775, 778 (2d Cir. 2013), emphasis added.) In order for a defendant to remove a suit under the Edge Act, it must demonstrate that (1) one of the parties to the suit is a corporation organized under

the laws of the United States, and (2) the suit arises out of transactions involving international or foreign banking or other international or foreign financial operations. (12 U.S.C. § 632.) At issue here is the second element, as Defendants have failed to meet their burden of showing that this case arises out of international or foreign banking or other international or foreign financial operations.

Importantly, courts have held that "removal statutes, <u>and in particular the Edge Act</u>, are construed narrowly," and "courts must carefully examine the nature of the transaction said to ground § 632 jurisdiction." (*Allstate Ins. Co. v. CitiMortgage, Inc.*, 2012 WL 967582 at *2-3 (S.D.N.Y. 2012), emphasis added [holding the Edge Act does not confer jurisdiction merely because there was a federally chartered bank involved, there were banking-related activities, and there were foreign parties but instead, courts must carefully examine the nature of the transaction said to ground § 632 jurisdiction].) Additionally, "out of respect for the limited jurisdiction of the federal courts and the rights of states, we must resolve any doubts against removability." (*Id*.) Thus, "[n]ot all cases involving a federally chartered bank and a foreign party" warrant Edge Act federal jurisdiction. (*Pinto v. Bank One Corp.,* 2003 WL 21297300 at *8-9 (S.D.N.Y. 2003); *see also Diaz v. Pan Am. Fed. Sav. & Loan Ass'n.*, 635 F.2d 30, 32 (1st Cir. 1980) [had Congress so intended "it could have stated its intent more easily" in the statute].) Rather, in order for federal jurisdiction to be premised upon the Edge Act, a plaintiff's claims must be "integrally tied to banking activity" and "the banking aspect of the jurisdictional transaction must be legally significant in the case" as the claims relate to the foreign transactions. (*Bank of New York v. Bank of America,* 861 F. Supp. 225, 232-33 (S.D.N.Y. 1994).) In short, "[t]he focus of the court's inquiry must be whether 'the transaction in question be one "arising out of…international or foreign banking."' (*Telecredit Service Center v. First Ntl. Bank of Florida,* 679 F.Supp. 1101, 1103-04 (S.D.Fla. 1988).)

For example, in *Telecredit*, the plaintiff brought suit in state court, alleging fraud and misrepresentation against the defendant stemming from credit card charges, some of which were international in nature. (*Id.* at 1102-03.) The defendant removed the case to federal court on the basis of the Edge Act and the plaintiff moved for remand. In evaluating whether Edge Act jurisdiction existed, the court considered "the true nature of the transaction at issue." (*Id.* at 1103.) Ultimately,

the court viewed the "nature of the transaction at issue, i.e. the allocation of risk with respect to fraudulent [credit card] chargebacks, as a contractual dispute between the parties" and held that the question to be resolved by the court was simply "which party is going to bear the loss occasioned by the apparent fraud." (*Id.*) Thus, because the liability at issue did not "stem from the supposed foreign aspect of the transaction," but from the alleged fraud of the domestic corporations, there was no Edge Act jurisdiction and the case was remanded to state court. Broadly speaking, *Telecredit* takes the view that, whatever the subject matter of some underlying transaction may be, it is the disputed transaction immediately before the court that matters for jurisdictional purposes. (*Id.*)

In the present case, Plaintiff's Complaint alleges causes of action for (1) Financial Elder Abuse under California's Elder and Dependent Adult Civil Protection Act (Cal. Welf. & Inst. Code § 15600 *et seq.*) and (2) Unlawful, Unfair and Deceptive Business Practices (Cal. Bus. & Prof. Code § 17200 *et seq.*). Defendants' Removal improperly attempts to make this a case about the propriety of foreign currency transactions, instead of Defendants' financial elder abuse of Plaintiff under California's elder abuse and unfair business practices laws. However, contrary to Defendants' claims, it is not foreign transactions with any other countries that are at issue in this case, but rather Defendants' knowing assistance in the blatant financial elder abuse of Plaintiff by unknown others (who are not parties in this case) and Defendants' financial abuse of Plaintiff by repeatedly failing to "detect, deter, and respond to the elder financial abuse events" during face-to-face transactions at domestic bank branches. Those are the disputed transactions immediately before this Court that matter for jurisdictional purposes. The propriety of any business dealings with foreign countries are wholly irrelevant, and any of Defendants' actual practices in foreign exchange transactions are in no way "legally significant" to this case. In other words, any potential connection to international banking is too tenuous to warrant jurisdiction under the Edge Act here, and conspicuously absent from Defendants' Removal is a citation to any case suggesting that the Edge Act can be applied to a financial elder abuse case premised upon state law such as the present one. **That is because the financial elder abuse of Plaintiff by Defendants at their bank in California is the gravamen of this suit, and such acts were purely domestic**.

Because Defendants' liability here does not result from the foreign nature of the transactions, but from the alleged violations of statutory elder and consumer protection laws by the domestic Defendants, there is no Edge Act jurisdiction and the case should be remanded. To wit, the sole purported basis that Defendants offer to show that the transactions giving rise to the instant suit are sufficiently integrally related to foreign or international banking or financial operations is, basically, that the tech support scammers (who are not named parties here) may or may not have been based in foreign countries and Plaintiff's money was ultimately transferred to foreign countries, even though that is not alleged in the Complaint.[1] However, the language of the Edge Act is clear – to be removable the suit in question must, itself, "aris[e] out of transactions involving international or foreign banking…or out of other international or foreign financial operations." (12 U.S.C. § 632; *see also Racepoint Partners, LLC v. JPMorgan Chase Bank*, 2006 U.S. Dist. LEXIS 78046 at \*9 (S.D.N.Y. 2006) ["Section 632 requires that the 'financial operation' *from which the suit arises* be 'international or foreign'"], emphasis added.)

Thus, the fact that Plaintiff's money in the present case happened to be ultimately wired to bank accounts in a foreign country, as opposed to in Florida or New York or anywhere else in the United States, is wholly irrelevant to Plaintiff's claims against Defendants. **The wire transfers at issue in this case could have been sent to Muncie, Indiana or Mumbai, India, and it would not have made *any* difference regarding the allegations in Plaintiff's Complaint against Defendants for violations of California's statutory elder and consumer protection laws.** Which is precisely why the Complaint does not even state the countries where Plaintiff's funds were wired to, as doing so would not change *anything* in terms of Plaintiffs' claims against Defendants, and it will likely never be known where Plaintiff's funds ultimately ended up. And notably, **none of Plaintiff's actual claims against Defendants involve any type of federal questions or any federal banking law**. (*See Bank of New York*, 861 F.Supp. at 232-33 [no Edge Act jurisdiction if claims are not "integrally tied to banking activity" and do not require the court to "consider and apply principals of banking

---

[1] Defendants gratuitously refer to the scammers as "foreign" in an attempt to bolster their Edge Act claim. (Fish Decl., **Exhibit B**, Removal 5:1-8, 6:4-7.) However, there is no evidence to support this claim, as neither Plaintiff nor Defendants know the identity or location of the scammers.

law to resolve them"]; *Caggiano v. Pfizer*, 384 F.Supp.2d 689, 690 (S.D.N.Y. 2005) [no federal question jurisdiction because "a jury could find defendants liable on each and every one of the eight claims without being required to determine whether any federal law has been violated"].) Rather, Plaintiff's claims are only tangentially related to any foreign banking transactions at best, and as such, this case is simply not subject to Edge Act jurisdiction, as it does not principally involve the requisite foreign or international banking or financial operations.

Where, as here, a plaintiff's alleged right to relief arises from the defendant's wrongful act, independent from any international banking transaction, courts have routinely held that there is no § 632 jurisdiction, even where an international banking transaction is relevant or related to the transaction or occurrence at issue. (*See e.g., California v. Wells Fargo & Co.*, 2015 WL 4886391 at *5 (C.D. Cal. Aug. 13, 2015) [remanding a case alleging unfair competition against an Edge Act bank because the allegations do not arise out of the transfer of money abroad; "rather, they arise out of the alleged misrepresentations Wells Fargo employees made to customers"]; *Vara v. Inocenti*, No. 18-23058-CIV, 2018 WL 8415251, at *2 (S.D. Fla. Nov. 16, 2018) [the court found "the narrow interpretation" of § 632 "more compelling" where plaintiff's claims "arise out of a dispute regarding Defendants' conduct toward [plaintiff], not financial transactions"]; *Sollitt v. KeyCorp*, 463 F.App'x 471, 473 (6th Cir. 2012) [refusing to subscribe to the "inherently limitless view" that the Edge Act confers jurisdiction if "any part" of the suit "arises out of transactions involving international or foreign banking"]; *Speedy Stop Food Stores, LLC v. Visa, Inc., C.A.*, 2013 U.S. Dist. LEXIS 200283, *12-13 (S.D. Tex. Dec. 26, 2013) [holding that under the requisite "three-part nexus" between the Edge Act corporation, the banking or financial transaction, and the offshore component, "[t]he involvement of any foreign banks [was] fortuitous and legally insignificant to Speedy Stop's lawsuit" and remanding the case to state court]; *Landesbank Baden-Württemberg v. Capital One Financial Corp.*, 954 F.Supp.2d 223, 226-27 (S.D.N.Y. 2013) [finding the involvement of a foreign transaction fortuitous with respect to the matters placed in issue by the case, thus being insufficient to satisfy the requirements of Edge Act removal]; *Sealink Funding Ltd. v. Bear Stearns & Co. Inc.*, 2012 WL 4794450 at *14-16 (S.D.N.Y. Oct. 9, 2012) [finding a lack of a direct nexus between the

federally chartered bank and the foreign transaction, the defendant's conduct at issue had no international dimension, the involvement of foreign entities was fortuitous, and the foreign transaction involvement was too attenuated to support Edge Act jurisdiction].)

Moreover, the cases cited by Defendants in support of removal are inapposite and not dispositive here. For example, *In re Citibank August 11, 2020 Wire Transfers*, -- F.Supp.3d --, 2021 WL 606167 at *13 (S.D.N.Y. Feb. 16, 2021), the core of the litigation involved the plaintiff bank (Citibank) mistakenly sending a $41.9 million loan payment to a foreign bank account that was executed on Citibank's behalf by agents who were located in a foreign country resulting in common law claims of unjust enrichment, conversion, money had and received, and payment by mistake against the receivers, which is not at all factually similar to the present case. Likewise, *Luby's Fuddruckers Restaurant, LLC v. Visa Inc.*, 342 F.Supp.3d 306, 317 (E.D.N.Y. 2018) is distinguishable and not dispositive, as that case held that because the interchange fee at the core of the litigation was charged by a foreign issuing bank when the customer used a card issued by a foreign bank, the plaintiff's acceptance of foreign-issued credit cards was sufficiently integral to its claims challenging the issuers' rules requiring acceptance of all credit cards in order to confer federal question jurisdiction pursuant to the Edge Act. (*Id*.) Again, that is not at all the situation here, where the ultimate destination of the wire transfers at issue in this case does not make *any* difference to the allegations in Plaintiff's Complaint against Defendants for violations of California's statutory elder and consumer protection laws, and is therefore wholly irrelevant to Plaintiff's statutory claims against Defendants. Plaintiff has also alleged that the wire transfer fees at issue in this case were charged by Defendants, <u>not</u> by any foreign bank as was the case in *Luby's*. (Fish Decl., **Exhibit A**, ¶ 20.) Further, the *Luby's* court agreed with the district court that the plaintiff had targeted "an entire category of transactions" that involved foreign issuing banks. (*Id.* at 318.) Here, however, the "category of transactions" at issue is clearly the 29 instances of financial elder abuse by Defendants in improperly facilitating transfers of almost $1,500,000.00 of Plaintiff's funds out of their California branches in less than two months. Lastly, as the *Luby's* court noted, while some courts in the Southern District of New York interpreted the Edge Act to broadly apply to all cases where any

part arises out of transactions involving international or foreign banking, citing, e.g., *Pinto*, 2003 WL 21297300 at *3, "[o]ther courts require a more direct relationship between the claims and the foreign transaction at issue," citing *California*, 2015 WL 4886391 at *6, *Sollitt,* 463 F.App'x at 473, and *Weiss v. Hager*, 2011 WL 6425542 at *8 (S.D.N.Y. 2011) (finding no jurisdiction because the heart of the matter was defendants defrauding plaintiff, causing him to wire funds to bank accounts in their control, and the fact defendants' accounts were in European banks was "incidental" and not "legally significant," citing *Bank of New York*, 861 F.Supp at 232).[2] (*Luby's*, 342 F.Supp.3d at 314-15.) Given that the facts in the present case are more closely analogous to these cases cited herein that requires a more direct relationship between the claims and the foreign transaction at issue and where no Edge Act jurisdiction has been found, this case should be remanded as well.

For example, in *Weiss*, 2011 WL 6425542, *3, the plaintiff opened accounts in a New York branch of defendant Capitol One and was provided with allegedly fraudulent investment advice regarding a foreign trading program. Based on this fraudulent advice, the plaintiff made a series of financial transactions, including wiring "substantial sums of money" to European bank accounts controlled by Capitol One, and wiring $350,000 to an account in Israel. (*Id*. at *3-4.) Yet the court noted that it "cannot find that it has § 632 jurisdiction merely because there was a federally charted bank involved, there were banking-related activities, and there were foreign parties." (*Id.* at *7, quoting *Lazard Freres & Co. v. First Nat'l Bank of Md*., 1991 WL 221087, *2-3 (S.D.N.Y. Oct. 15, 1991).) Rather, the court stated, it "must carefully examine the nature of the transaction said to ground 632 jurisdiction." (*Id*.) In remanding the case, the court held that the international connection was merely "incidental," holding "the defendants could have convinced plaintiff to send his money anywhere" and "[t]hat plaintiff sent money to European bank accounts is not integral to his claims." (*Id*. at *8-9.) That is **exactly** the situation here, where the scammers could have convinced Plaintiff to send his money anywhere. That Plaintiff sent money to Asian bank accounts is **not** integral to his claims for the reasons above and as such, there is likewise no § 632 jurisdiction here.

---

[2] The *California* court noted that "there is a paucity of case law in the Ninth Circuit regarding Edge Act jurisdiction in general," although it ultimately held the Edge Act did not confer jurisdiction over the suit and the case was remanded. (*California,* 2015 WL 4886391 at *18, *26.)

In conclusion, Edge Act jurisdiction is narrowly construed and strictly limited to cases where the international banking transaction is "legally significant" and "integral" to the plaintiff's claims, which Defendants have not shown to be the case here. As such, Defendants have failed to meet their burden to show that the instant suit is removable under 12 U.S.C. § 632, let alone overcome the strong presumption against removal jurisdiction. Because the Edge Act does not apply, federal question jurisdiction under 28 U.S.C. § 1331 is also not present, and Plaintiff therefore respectfully requests that this Court remand this case to the Superior Court of California for San Francisco.

### C. Principals of Comity Support The Remand Of This Case Back To State Court.

Finally, setting aside all of the foregoing reasons why Defendants' Removal fails as a matter of law, the Court should still refuse, on comity grounds, to take from California State courts a case brought by an elderly plaintiff which seeks the return of monies to a California resident on the basis of California State law. Over seventy years ago, the Supreme Court established the federal courts' discretion to refuse jurisdiction over cases where hearing them would run contrary to the independent interests of a state in enforcing its laws and protecting the interests of its citizens:

> Although a federal equity court does have jurisdiction of a particular proceeding, it may, in its sound discretion, whether its jurisdiction is invoked on the ground of diversity of citizenship or otherwise, "refuse to enforce or protect legal rights, the exercise of which may be prejudicial to the public interest"; for it "is in the public interest that federal courts of equity should exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy." (*Burford v. Sun Oil Co.*, 319 U.S. 315, 317-18 (1943).)

The Supreme Court later reaffirmed this principle:

> [T]he presence of a disputed issue and the ostensible importance of a federal forum are never necessarily dispositive; there must always be an assessment of any disruptive portent in exercising federal jurisdiction. . . .[T]he question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain ***without disturbing any congressionally approved balance of federal and state judicial responsibilities***. (*Grable & Son Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 314 (2005), emphasis added.)

These concerns are particularly relevant where, as here, Plaintiff is an elderly California resident who filed in state court under California's elder abuse protection and unfair business

practices statutes. "Considerations of comity make us reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it." (*California v. H&R Block, Inc.,* 2006 WL 2669045 at *5-6 (N.D. Cal. Sep. 18, 2006).) Here, Plaintiff has brought suit under California State law, in California State courts, to seek monies which Defendants wrongfully took from his accounts in California.

As discussed at length above, Defendants' Removal fails here. Thus, far from being clear that these circumstances demand removal of the case to this Court, there are overwhelming reasons against doing so. Plaintiff accordingly respectfully submits that the Court should reject Defendants' attempt to remove the instant action to this Court and thereby stymie the methods chosen by Plaintiff to vindicate the rights of elderly citizens such as himself, and instead remand the case back to the Superior Court of California for San Francisco State.

## IV. CONCLUSION

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." (28 U.S.C. § 1447(c).) For the reasons set forth herein, Plaintiff respectfully requests that this Court grant Plaintiff's motion for lack of subject matter jurisdiction and remand this action to the California Superior Court in and for the County of San Francisco.

Dated: August 13, 20201                                         NEEDHAM KEPNER & FISH LLP

By: _____
Kirsten Fish
Attorneys for Plaintiff