Douglas A. Thompson (California Bar No. 155619)
douglas.thompson@bclplaw.com
Linda C. Hsu (California Bar No. 239880)
linda.hsu@bclplaw.com
Traci G. Choi (California Bar No. 307245)
traci.choi@bclplaw.com
**BRYAN CAVE LEIGHTON PAISNER LLP**
120 Broadway, Suite 300
Santa Monica, California 90401-2386
Telephone:     (310) 576-2100
Facsimile:     (310) 576-2200

Attorneys for Defendants
BANK OF AMERICA, N.A., BANK OF AMERICA
CORPORATION, and NANCY BECERRA

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| CHAN-HIE KIM, individually and as co-trustee of the Chan-Hie Kim & Sook-Chung Kim Trust,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO, N.A.; WELLS FARGO & COMPANY; BANK OF AMERICA, N.A.; BANK OF AMERICA CORPORATION; VIRGEL MABINI; NANCY BECERRA; DOES 1-100, inclusive<br><br>Defendants. | Case No. 3:21-cv-05405-JD<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANTS TO DISMISS COMPLAINT OF PLAINTIFF; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Filed concurrently with Proposed Order]<br><br>Honorable James Donato<br><br>Date:          September 30, 2021<br>Time:          10:00 a.m.<br>Courtroom:     11 |

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

**TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 30, 2021, at 10:00 a.m. or as soon thereafter as this matter may be heard, in Courtroom 11 of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendants Bank of America, N.A. ("BANA"), Bank of America Corporation ("BAC"), and Nancy Becerra (collectively, "Defendants") will and hereby do move the Court for an Order Dismissing the Complaint ("Complaint") of Plaintiff CHAN-HIE KIM, individually and as co-trustee of the Chan-Hie Kim & Sook-Chung Kim Trust ("Plaintiff").

This Motion is made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and is based on the grounds that the allegations set forth in the Complaint fail to state a cause of action for which relief may be granted.

This Motion is based upon this Notice of Motion and Motion to Dismiss, the attached Memorandum of Points and Authorities, and all other matters that the Court may consider, including the oral argument of counsel.

Dated: August 16, 2021

Douglas A. Thompson
Linda C. Hsu
Traci G. Choi
**BRYAN CAVE LEIGHTON PAISNER LLP**

By: _/s/ Traci G. Choi_
Traci G. Choi
Attorneys for Defendants
BANK OF AMERICA, N.A., BANK OF AMERICA
CORPORATION, and NANCY BECERRA

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................1

I.    INTRODUCTION ..........................................................................................................1

II.   FACTUAL BACKGROUND.........................................................................................1

III.  LEGAL STANDARD ...................................................................................................4

IV.  THE COURT SHOULD DISMISS BAC AND NANCY BECERRA ..............................5

V.   PLAINTIFF'S CLAIM FOR "FINANCIAL ELDER ABUSE" FAILS. .........................6

      A.    Plaintiff's Conclusory Allegations Are Insufficient to Support a Claim
    for Financial Elder Abuse. ...........................................................................6

      B.    To the Extent Plaintiff Bases His Elder Abuse Claim on a Failure to
    Report, There Is No Private Right of Action. ................................................11

VI.  PLAINTIFF FAILS TO STATE A CLAIM UNDER THE UCL. ...............................12

VII.  THE COURT SHOULD NOT GRANT LEAVE TO AMEND........................................15

VIII. CONCLUSION...........................................................................................................15

**Cases**

*A.B. Concrete Coating Inc. v. Wells Fargo Bank,*
    491 F.Supp.3d 727 (E.D. Cal. 2020) ........................................................10

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).................................................................................4

*Balistreri v. Pacifica Police Dep't,*
    901 F.2d 696 (9th Cir. 1988) ...................................................................4

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007).................................................................................4

*Bernardo v. Planned Parenthood Fed. of Am.,*
    115 Cal. App. 4th 322 (2004) .................................................................12

*Berryman v. Merit Prop. Mgmt., Inc.,*
    152 Cal. App. 4th 1544 (2007) ...............................................................13

*People ex rel. Bill Lockyer v. Fremont Life Ins. Co.,*
    104 Cal. App. 4th 508 (2002) .................................................................12

*Casey v. U.S. Bank Nat. Assn,*
    127 Cal. App. 4th 1138 (2005) ...............................................................10

*Cervantes v. Countrywide Home Loans, Inc.,*
    656 F.3d 1034 (9th Cir. 2011) ................................................................15

*Chavers v. GMAC Mort., LLC,*
    2012 WL 2343202 (C.D. Cal. June 20, 2012)....................................4, 10

*Chie v. Citigroup, Inc.,*
    2021 WL 633868 (N.D. Cal. Feb. 18, 2021) .......................................5, 10

*Cook v. CC-Palo Alto, Inc.,*
    -- F.Supp.3d --, 2021 WL 1561644 (N.D. Cal. Apr. 21, 2021) ...............11

*Das v. Bank of America, N.A.,*
    186 Cal. App. 4th 727 (2010) ..........................................................*passim*

*Delaney v. Baker,*
    20 Cal.4th 23 (1999).................................................................................5

*Du Pont v. Prudential Ins. Co.,*
    2019 WL 4417494 (C.D. Cal. May 29, 2019).........................................11

*Employers Ins. of Wausau v. Granite State Ins. Co.,*
    330 F.3d 1214 (9th Cir. 2003) ................................................................10

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

*Feitelberg v. Credit Suisse First Boston, LLC,*
   134 Cal. App. 4th 997 (2005) ........................................................................... 14

*Gilbert v. MoneyMutual, LLC,*
   2018 WL 8186605 (N.D. Cal. Oct. 30, 2018) ................................................... 11

*Grant v. FMC Corp.,*
   1994 WL 564533 (N.D. Cal. Oct. 4, 1994) ......................................................... 5

*Khoury v. Maly's of Cal., Inc.,*
   14 Cal. App. 4th 612 (1993) ............................................................................. 13

*Korea Supply Co. v. Lockheed Martin Corp.,*
   29 Cal.4th 1134 (2003) ..................................................................................... 14

*Krantz v. BT Visual Images, LLC,*
   89 Cal. App. 4th 164 (2001) ............................................................................. 13

*Lazar v. Hertz Corp.,*
   69 Cal. App. 4th 1494 (1999) ........................................................................... 13

*Lintz v. Bank of Am., N.A.,*
   2013 WL 5423873 (N.D. Cal. Sept. 27, 2013) ................................................. 10

*Mackintosh v. JPMorgan Chase Bank,*
   2018 WL 3913791 (N.D. Cal. July 13, 2018) ................................................... 11

*Navarro v. Block,*
   250 F.3d 729 (9th Cir. 2001) .............................................................................. 4

*Peterson v. Cellco P'ship,*
   164 Cal. App. 4th 1583 (2008) ......................................................................... 13

*Rubio v. Capital One Bank,*
   613 F.3d 1195 (9th Cir. 2010) ........................................................................... 14

*Schnall v. Hertz Corp,*
   78 Cal. App. 4th 1144 (2000) ........................................................................... 14

*Scripps Clinic v. Super. Ct.,*
   108 Cal. App. 4th 917 (2003) ........................................................................... 13

*Shamgochian v. Bank of America, N.A.,*
   2013 WL 1098256 (Cal. Ct. App. Mar. 18, 2013) ........................................... 10

*South Bay Chevrolet v. General Motors Acceptance Corp.,*
   72 Cal. App. 4th 861 (1999) ............................................................................. 14

*Spiegler v. Home Depot U.S.A., Inc.,*
   552 F. Supp. 2d 1036 (C.D. Cal. 2008) ........................................................... 14

*Starr v. Baca,*
   652 F.3d 1202 (9th Cir. 2011) ............................................................................ 4

*Tedesco v. Wells Fargo Bank, N.A.*,
   2020 WL 6111012 (Cal. Ct. App. Oct. 16, 2020) ...................................................10

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ...................................................................................4

*Zhang v. Superior Court*,
   57 Cal.4th 364 (2013) ...............................................................................................14

**Statutes**

Bus. & Prof. Code § 17204 ...............................................................................................12

Cal. Welf. & Inst. Code § 15610.30 ...............................................................6, 7, 8, 10, 11

Cal. Welf. & Inst. Code § 15610.70 ...................................................................................6

Cal. Welf. & Inst. Code § 15630.1 ...................................................................................12

**Rules**

Fed. Rule Civ. Proc. 12 ......................................................................................................4

Fed. Rule Civ. Proc. 9.....................................................................................................4, 10

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, CA 90401-2386

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiff Chan-Hie Kim ("Plaintiff") alleges he is an elderly man, who in late 2020, fell victim to a computer "tech support scam."  From September to November 2020, he initiated wire transfers at Bank of America, N.A. ("BANA") and Wells Fargo Bank, N.A. ("Wells Fargo") branches, totaling over $2 Million.  In December 2020, he alleges he discovered he had been scammed, and that his money was gone.

Five months later, Plaintiff claims his banking institutions are now liable for the money he lost to the scammers, as well as for wire transaction fees charged in connection with the wire orders he submitted, because they "should have known" he was being scammed and should have rejected his wire orders. Plaintiff now sues BANA and Wells Fargo, as well as their parent companies and one employee from each institution.  He alleges two causes of action for financial elder abuse and California's Unfair Competition Law.

As an initial matter, Plaintiff alleges no specific facts which demonstrate any wrongdoing by Bank of America Corporation ("BAC") or Nancy Becerra.  Despite Plaintiff's attempt to lump BAC together with BANA, they are separate, distinct entities, and BAC is a holding company. Plaintiff alleges no facts upon which BAC can be liable to him.  Nor does Plaintiff allege any facts that show Ms. Becerra knew of any purported scam, aided any such scam, or had a legal obligation to prevent the transactions Plaintiff specifically requested.

Moreover, Plaintiff's claims fail as a matter of law.  In order to state a claim for financial elder abuse based on "assistance" of a third party, Plaintiff must allege Defendants actually knew of the wrongful act, and made a conscious decision to aid the bad actors.  Plaintiff fails to do so. The only allegations in the Complaint are ultimate conclusions that Defendants "knew or should have known" because the banking activity was allegedly unusual.  That is insufficient as a matter of law.

The Court should grant the motion without leave to amend.

## II.    FACTUAL BACKGROUND

Plaintiff alleges he is 85 years old, and "suffers from cognitive decline[.]"  (Compl. ¶ 4.)

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, CA 90401-2386

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, CA 90401-2386

He is a resident of the County of San Bernardino.[1] (Compl. ¶ 3.)

Plaintiff collectively refers to BANA, BAC, and Does 26-50 as "BOFA," and together with Nancy Becerra, "the BOFA DEFENDANTS." (Compl. ¶¶ 1, 8.)

Plaintiff alleges he has been a customer of "BOFA" for over 30 years, where he, as trustee of the Chan-Hie Kim & Sook-Chung Kim Trust held an account. (Compl. ¶ 18.) He claims that "[p]rior to September 2020, Plaintiff never engaged in any 'suspicious transactions.'" (Compl. ¶ 18.)

After years of allegedly "frugal transactions with BOFA," Plaintiff fell victim to a "tech support scam." (Compl. ¶¶ 18-19.) Plaintiff alleges he received a pop-up warning message on his computer stating "his computer was hacked, not to touch anything, and to call a phone number." (Compl. ¶ 19.) He alleges when he called the number, the person he spoke with claimed "he was with Microsoft." (*Id.*) The scammer stated Plaintiff's "BOFA" bank account was "hacked" and connected him with another scammer who said "he was with 'Bank of America Fraud Prevention department.'" (*Id.*) The scammer told Plaintiff his social security number and birthday were exposed and his retirement accounts at "another institution" were at risk. (*Id.*) The scammer then directed Plaintiff "to transfer all of his retirement funds to BOFA in order to 'rebuild' his retirement accounts with new account numbers in order to protect his funds." (*Id.*) Plaintiff alleges he followed the scammer's instructions, and transferred his retirement funds of over $2,000,000 to "BOFA." (*Id.*) Plaintiff alleges that "[i]mmediately following each large deposit from his investment account, [he] entered a BOFA branch and *requested* huge wire transfers with no questions asked by the BOFA DEFENDANTS." (*Id.*, emphasis added.) He alleges most of the 29 wires he requested were made from the "Alta Loma branch of BOFA" between September 23, 2020, and November 10, 2020, and totaled $1,481,400. (*Id.*)

---

[1] Defendants reserve the right to bring a motion to transfer venue to the Central District of California, and do not concede this Court (or San Francisco Superior Court) is the appropriate venue for this lawsuit. Plaintiff resides in San Bernardino County, which is located in the Central District of California, and allegedly initiated the wire transfers in the Alta Loma branch of BANA, which is also located in San Bernardino County, in the Central District of California. (*See* Compl. ¶¶ 3, 19.)

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

Plaintiff alleges he "walked into his long-time BOFA branch and met in person, face-to-face with a teller, who then would call over a bank manager to approve his wire transfers." (Compl. ¶ 20.) He alleges on October 20, 2020, he made "three suspicious withdrawals of $5,000.00, $5,000.00 and $10,000.00 cash." (*Id.*) Plaintiff does not allege any other impropriety with respect to the withdrawals he requested "face-to-face," other than that they were allegedly "suspicious."

Based on these facts, Plaintiff claims "[e]ven though BOFA *should have known* that the elderly Plaintiff was potentially being scammed, *they did nothing to stop the ongoing scam*." (*Id.*, emphasis added.) Plaintiff alleges "BOFA DEFENDANTS provided the scammers with *substantial assistance* by allowing Plaintiff to continue to wire away almost $1,500,000.00 from BOFA until his life savings was nearly depleted *with the assistance of BOFA employees*." (*Id.*, emphasis added.) Plaintiff further complains "BOFA directly charged Plaintiff fees in the amount of $30.00 to $45.00 for each of the wire transfers to the scammers, DOES 51-100, totaling $1,575.00 in fees[.]" (*Id.*) Notably, Plaintiff does not allege "BOFA" charged wire transfer fees not authorized by the parties' agreement or not properly disclosed.

Plaintiff alleges similar events with respect to the "WELLS FARGO DEFENDANTS," instructing wire transactions to the scammers totaling $590,100.00. (Compl. ¶ 21.)

Plaintiff alleges at the end of December 2020, the scammers informed him their "investigation" was complete and his retirement account was rebuilt. (Compl. ¶ 23.) Plaintiff alleges he contacted an unidentified "financial institution" in which he had held his retirement account, and was informed the account was depleted. (*Id.*) He complains that when he informed "BOFA" and "WELLS FARGO" that he had been scammed, neither BOFA nor WELLS FARGO credited the moneys he transferred to the scammers or the wire fees charged to his accounts. (*Id.*)

Plaintiff complains "the BOFA DEFENDANTS and the WELLS FARGO DEFENDANTS never contacted the local police department or anyone else to investigate" Plaintiff's transfers. (Compl ¶¶ 24-25.) Plaintiff also alleges he is "informed and believes" that BOFA DEFENDANTS "were not trained in the techniques of identifying and preventing financial elder abuse"; "failed to delay any of the transactions or to get a trusted third party, or even Plaintiff's

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, CA 90401-2386

1  co-trustee, to confirm the transfers"; and "failed to put an alert and/or hold on Plaintiff's account

2  despite what should have been their obvious concerns and despite the ability to do so." (Compl. ¶

3  29.)

4      Based on the above facts, Plaintiff alleges two causes of action – a first cause of action for

5  Financial Elder Abuse, and a second cause of action for Unlawful, Unfair and Deceptive Business

6  Practices.

7  **III.    LEGAL STANDARD**

8      A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal

9  sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "While a complaint

10 attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a

11 plaintiff's obligation to provide the 'grounds' of his 'entitle[ment]' to relief requires more than

12 labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

13 *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).  Although

14 the Court takes all material allegations as true and construes them in the light most favorable to the

15 plaintiff, the Court need not accept legal conclusions, including "threadbare recitals of the

16 elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678

17 (citing *Twombly*, 550 U.S. at 555).

18     "Dismissal can be based on the lack of a cognizable legal theory or the absence of

19 sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901

20 F.2d 696, 699 (9th Cir. 1988). The plaintiff must proffer "enough facts to state a claim to relief

21 that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The allegations made in

22 a complaint must be "sufficient allegations of underlying facts to give fair notice and to enable the

23 opposing party to defend itself effectively" and "must plausibly suggest an entitlement to relief"

24 such that "it is not unfair to require the opposing party to be subjected to the expense of discovery

25 and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

26     A claim for financial elder abuse is grounded in fraud, and accordingly, it must be plead

27 with particularity pursuant to Rule 9(b).  *Chavers v. GMAC Mort., LLC*, 2012 WL 2343202, at *7

28 (C.D. Cal. June 20, 2012) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-05 (9th Cir.

1 2003) and *Delaney v. Baker*, 20 Cal.4th 23 (1999)); *Chie v. Citigroup, Inc.*, 2021 WL 633868, at
2 *7 (N.D. Cal. Feb. 18, 2021).

3 **IV.**    **THE COURT SHOULD DISMISS BAC AND NANCY BECERRA**

4      As an initial matter, the Court should dismiss BAC and Nancy Becerra. The Complaint is
5 completely devoid of any allegations of wrongdoing as to BAC and Ms. Becerra. The allegations
6 fall woefully short of the well-pleaded requirement, let alone the heightened pleading requirement
7 for a financial elder abuse claim.

8      In the Complaint, Plaintiff makes no effort to differentiate between BANA and BAC, and
9 intentionally refers to both entities as "BOFA" to create the illusion that the Complaint contains
10 allegations of wrongdoing specifically by BAC. But BAC's only relationship to the allegations in
11 the Complaint is that it is an indirect parent company of BANA. BAC has no operations. It has
12 no "managing agents" who interact with banking services customers like Plaintiff, as alleged in
13 the Complaint. It has no "branches." It maintains no bank accounts and has no customers.
14 Plaintiff's claims are solely against BANA, the operational entity. BAC is merely a holding
15 company. *See Grant v. FMC Corp.*, 1994 WL 564533, at *1 (N.D. Cal. Oct. 4, 1994). Plaintiff's
16 claims against BAC should be dismissed.

17      Similarly, Plaintiff fails to state any facts to support his claim for Financial Elder Abuse
18 against Nancy Becerra. In fact, the only allegation specific to Ms. Becerra in the entire Complaint
19 is the allegation that she was "employed by BOFA as a managing agent." (Compl. ¶ 8.) That Ms.
20 Becerra was an employee of BANA, or that she was its managing agent, does not give rise to a
21 claim against her, in her individual capacity. In fact, there are no facts alleged in the Complaint
22 which establish Ms. Becerra knew about the alleged scam, knew that Plaintiff initiated
23 transactions as a result of the alleged scam, or that Ms. Becerra observed a scammer preying on
24 Plaintiff or was provided information by Plaintiff that a scammer was preying on him. The
25 complaint also fails to allege that Ms. Becerra specifically approved each alleged transaction. Nor
26 does Plaintiff allege Ms. Becerra took any action that was outside the scope of her employment
27 with BANA.

28      BAC and Ms. Becerra should be dismissed from the Complaint.

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, CA 90401-2386

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

# V.     PLAINTIFF'S CLAIM FOR "FINANCIAL ELDER ABUSE" FAILS.

California Welfare and Institutions Code section 15610.30 ("Section 15610.30") states, in relevant part:

> (a) "Financial abuse" of an elder or dependent adult occurs when a person or entity does any of the following:
>
> > (1) Takes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both.
> >
> > (2) Assists in taking, secreting, appropriating, obtaining, or retaining real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both.
> >
> > (3) Takes, secretes, appropriates, obtains, or retains, or assists in taking, secreting, appropriating, obtaining, or retaining, real or personal property of an elder or dependent adult by undue influence, as defined in Section 15610.70.
>
> (b) A person or entity shall be deemed to have taken, secreted, appropriated, obtained, or retained property for a wrongful use if, among other things, the person or entity takes, secretes, appropriates, obtains, or retains the property and the person or entity knew or should have known that this conduct is likely to be harmful to the elder or dependent adult.

Assuming Plaintiff's allegations are true, the scammers (Does 51-100) committed financial elder abuse against Plaintiff within the meaning of Section 15610.30. The scammers, not Defendants, fraudulently induced Plaintiff to transfer money to them, and improperly took more than $2 Million from him. But Plaintiff's allegations fail to state a claim against Defendants as a matter of law.

## A.     Plaintiff's Conclusory Allegations Are Insufficient to Support a Claim for Financial Elder Abuse.

Plaintiff alleges Defendants are liable "because they actually knew, or should have known, that *another person or entity* was engaging in financial elder abuse of Plaintiff and that their conduct as described in detail herein was likely to be harmful to the elderly Plaintiff." (Compl. ¶ 36, emphasis added.) They further allege Defendants "not only should . . . have known that they were *assisting others' financial elder abuse* of Plaintiff, but their knowledge of the facts stated herein makes it clear that they must have actually known that when they were *assisting* Plaintiff in suddenly, uncharacteristically and repeatedly wiring all of his funds out of their respective

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, CA 90401-2386

1  accounts in a short time period, it was for a wrongful use, that *another person was perpetrating a*

2  *financial elder abuse scam on Plaintiff as a result*, and that this conduct was likely to be harmful

3  to Plaintiff." (*Id.*) Plaintiff thus alleges Defendants are liable under Section 15610.30 because

4  they "[a]ssist[ed] in taking, secreting, appropriating, obtaining, or retaining real or personal

5  property of an elder or dependent adult for a wrongful use or with intent to defraud, or both."

6        Plaintiff's claim fails under *Das v. Bank of America, N.A.*, 186 Cal. App. 4th 727, 744

7  (2010), the facts of which are strikingly similar to those alleged by Plaintiff. In *Das*, the daughter

8  of an account holder asserted a claim for financial elder abuse against the bank for losses her

9  father endured after falling prey to a series of illegal lottery scams. *Id.* at 732. The alleged

10  perpetrators of these scams lured the elder account holder with promises of lottery winnings, and

11  instructed him to pay taxes by wire in order to claim the prizes. *Id.* at 733. The account holder

12  repeatedly instructed the bank to wire money from his accounts to recipients in other countries.

13  *Id.* The transferred sums exceeded $300,000, which the account holder never recovered. *Id.*

14  Although the transfers were "suspicious" in nature and the bank's employees "wonder[ed]" about

15  the account holder's "mental state," the bank neither reported any suspected financial abuse nor

16  sought to prevent the account holder's financial losses. *Id.* at 742.

17        The court held that the allegations failed to state a claim against a bank for financial elder

18  abuse, finding the allegations failed to establish that the bank assisted in financial abuse by third

19  parties because there was no allegation that the bank knew about the schemes that victimized the

20  father:

21          [W]e conclude that the allegations fail to establish that respondent assisted
22          in financial abuse by third parties. . . . As the elder abuse statutes do not
        define the term "assists," and no court has addressed the meaning of the
23          term, we confront a question of statutory interpretation.

24          In our view, **the provision cannot be understood to impose strict**
        **liability for assistance in an act of financial abuse.** Generally,
25          California has adopted the common law rule for subjecting a defendant to
        liability for aiding and abetting a tort. Liability may be imposed on one
26          who aids and abets the commission of an intentional tort if the person (a)
        knows the other's conduct constitutes a breach of duty and gives
27          substantial assistance or encouragement to the other to so act or (b) gives
        substantial assistance to the other in accomplishing a tortious result and
28          the person's own conduct, separately considered, constitutes a breach of
        duty to the third person. **Under that rule, a bank may be liable as an**

**aider and abettor of a tort if the bank, in providing ordinary services, "actually knew those transactions were assisting the customer in committing a specific tort."** [Citation.] The adoption of this rule predates the elder abuse statutes. [Citation.]

As the Legislature is presumed to be aware of existing judicial decisions when it enacts or amends statutes, the term "assists," as found in former section 15610.30, subdivision (a)(2), is properly interpreted in light of the rule. [Citation.] **Under that rule, a bank may be liable as an aider and abettor of a tort if the bank, in providing ordinary services, "actually knew those transactions were assisting the customer in committing a specific tort.**" [Citation.] We thus conclude that when, as here, a bank provides ordinary services that effectuate financial abuse by a third party, the bank may be found to have "assisted" the financial abuse **only if it knew of the third party's wrongful conduct.**

Because appellant has not alleged that respondent knew about the schemes that victimized her father, she has failed to allege that respondent assisted in financial abuse under section 15610.30. As explained in *Casey*, "on demurrer, a court must carefully scrutinize whether the plaintiff has alleged the bank had actual knowledge of the underlying wrong it purportedly aided and abetted." [Citation.] In sum, the demurrers to her complaints were properly sustained.

*Das*, 186 Cal. App. 4th at 744-45. Here, as in *Das*, processing of Plaintiff's wire transfers constituted ordinary services provided by a bank to its customer. To state a claim for "assisting financial elder abuse" based on the provision of these services, Plaintiff must allege facts demonstrating Defendants had "actual knowledge" of and intended to assist in the "tech support scam." Plaintiff fails to do so.

Each of Plaintiff's assertions about Defendants' "actual knowledge" is nothing more than a legal conclusion that Defendants "should have" ferreted out the scam based on Plaintiff's age and the "unusual banking activity." For example, Plaintiff claims Defendants "should have known" about the scam because "there was no other plausible explanation for the sudden and numerous deposits and withdrawals to and from Plaintiff's accounts[.]"[3] (Compl. ¶ 31.) Plaintiff further

---

[2] While *Das* refers to the "former" section 15610.30(a)(2), the only difference between the current version of subsection (a)(2) and the version applicable in *Das* is a change in proposition. The revision of subsection (a)(2) merely corrected a grammatical error in the provision, changing from "*to* a wrongful use" to "*for* a wrongful use."

[3] There are numerous explanations as to why an account holder would engage in overseas wire transfers or withdraw money from his or her own account – to send to family, for medical emergencies, for estate planning purposes, or for investments, to name a few. Information not

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

MEMORANDUM OF POINTS AND AUTHORITIES

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1  alleges that Defendants "consciously and repeatedly turned a blind eye to the multiple red flags

2  raised by these uncharacteristic, frequent and large transfers" despite knowing "elderly people

3  being swindled by increasingly common scams[.]" (Compl. ¶¶ 36-37.)  Indeed, the Complaint is

4  rife with references to statistics and studies relating to the impact of financial elder abuse.  (See,

5  Compl. ¶¶ 16, 17, 30.)  But none of these allegations demonstrates BANA, BAC, or Ms. Becerra

6  had any knowledge of the specific "tech support scam" to which Plaintiff fell victim.  Plaintiff

7  does not allege, and cannot allege, that he told any person at BANA at the time he initiated the

8  several wire transfers. Plaintiff does not, and cannot allege, Defendants received any of the money

9  Plaintiff wired to overseas accounts at the direction of the scammers.  Plaintiff does not allege

10 Defendants knew any of the scammers or had any prior dealings with the scammers, or knew what

11 the scammers intended to do with Plaintiff's money.  Plaintiff does not allege the scammers

12 accompanied Plaintiff into the BANA branch to initiate the wires, or that circumstances other than

13 "suspicious" or "uncharacteristic" transactions should have alerted BANA to the scam.  In fact,

14 while Plaintiff alleges one of the scammers claimed to be with the "Bank of America Fraud

15 Prevention department," he does not allege he told the tellers he had spoken with the "Bank of

16 America Fraud Prevention department" the numerous times he visited the BANA branches to

17 request the wire transfers, or told them that the wire transfers were pursuant to the directions he

18 received from the "Bank of America Fraud Prevention Department."

19    Plaintiff further complains that "BOFA" allowed him to make withdrawals on October 20,

20 2020 totaling $20,000.00 (Compl. ¶ 20).  But Plaintiff fails to allege that any other party –

21 including Defendants – wrongfully took that money from Plaintiff.  There are no allegations in the

22 Complaint that evidence that the $20,000 was given to and used by anyone other than Plaintiff.

23    Plaintiff's Complaint contains only conclusory allegations suggesting, at best, that

24 Defendants could or should have figured out Plaintiff was the victim of a scam.  Such allegations

25 are wholly insufficient to satisfy Plaintiff's pleading requirement, let alone with the requisite

26 _____

27 alleged in the Complaint will reveal in due course the reasons Plaintiff provided for his wire
   transfers.

28

MEMORANDUM OF POINTS AND AUTHORITIES

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, CA 90401-2386

1  particularity required for a financial elder abuse claim. *See Chavers v. GMAC Mortg., LLC*, 2012

2  WL 2343202, at *7 (C.D. Cal. June 20, 2012) (a financial elder abuse claim "must be pleaded with

3  particularity" and dismissing a defendant for failure to "directly assert that [defendant] was

4  complicit in or aware of any alleged fraud"); *see also Casey*, 127 Cal. App. 4th at 1149, 1153

5  (demurrer properly sustained where complaint "provide[d] ample details of the banks' improper

6  conduct … [but] fail[ed] to establish that the banks had actual knowledge of the primary violation"

7  which they purportedly aided and abetted); *Lintz v. Bank of Am., N.A.*, 2013 WL 5423873 at *29

8  (N.D. Cal. Sept. 27, 2013) ("Although Plaintiff alleges that ORM 'knew or should have known'

9  that Lynne was committing financial elder abuse of Robert, this contention is merely an

10  unsupported legal conclusion unentitled to an assumption of truth."); *Chie v. Citigroup, Inc.*, 2021

11  WL 633868, at *7 (N.D. Cal. Feb. 18, 2021) (dismissing a claim for elder abuse as insufficient

12  under Rule 9(b)'s heightened pleading standards where "complaint alleges nothing about whether

13  Citi took money for a 'wrongful use' or anything about Citi's intent"). Nor does BANA have a

14  "duty to supervise [Plaintiff's] account activity or [] inquire the purpose for which [Plaintiff's]

15  funds are being used." *A.B. Concrete Coating Inc. v. Wells Fargo Bank*, 491 F.Supp.3d 727, 736

16  (E.D. Cal. 2020).

17      Defendants anticipate Plaintiff will argue *Das* is inapplicable, since it was based on an

18  earlier version of Section 15610.30, which required "bad faith" on the part of the defendant. *See*

19  *Das*, 186 Cal. App. 4th at 735. But there are no published[4] California opinions in which the court

20  _____

21      [4]    In at least two unpublished opinions since the amendment of the statute, California Courts
of Appeal have found the lack of any actual knowledge by the financial institutions conclusively

22  defeated a financial elder abuse claim, relying on *Das*. *See Tedesco v. Wells Fargo Bank, N.A.*,
2020 WL 6111012, at *5-6 (Cal. Ct. App. Oct. 16, 2020) ("the claim for financial elder abuse is

23  dependent on the bank defendants' actual knowledge of the allegedly fraudulent documents . . . .
nothing in the FAC suggests the bank defendants discharged their contractual duties in an

24  unreasonable manner or knew of the specific primary wrong they are accused of substantially
assisting."); *Shamgochian v. Bank of America, N.A.*, 2013 WL 1098256, at *6-7 (Cal. Ct. App.

25  Mar. 18, 2013) ("The complaint in our case is on all fours with [*Das*]. Plaintiff essentially alleged

26  that the Banks had a duty to inquire into or monitor plaintiff's wire transfers and prevent her from
being defrauded. As explained in *Das*, no such duty existed."); *see also Employers Ins. of Wausau*

27  *v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003) (the Court "may consider
unpublished state decisions.").

28

MEMORANDUM OF POINTS AND AUTHORITIES

found *Das* is inapplicable to claims for financial elder abuse based on a claim that a financial institution "assisted" the bad actor by failing to stop the transactions initiated by the plaintiff. In fact, a number of district court opinions rely on *Das* for the position that the financial institution must have known about the wrongful conduct to be liable for its "assistance." *Cook v. CC-Palo Alto, Inc.*, -- F.Supp.3d --, 2021 WL 1561644, at *8 (N.D. Cal. Apr. 21, 2021) (finding under *Das*, "assists" as used in Section 15610.30(a)(2) means "aiding and abetting" which requires "a defendant to reach a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act"); *see also Du Pont v. Prudential Ins. Co.*, 2019 WL 4417494, at *16 (C.D. Cal. May 29, 2019); *Gilbert v. MoneyMutual, LLC*, 2018 WL 8186605, at *9 (N.D. Cal. Oct. 30, 2018); *Mackintosh v. JPMorgan Chase Bank*, 2018 WL 3913791, at *3 (N.D. Cal. July 13, 2018).

Finally, Plaintiff's allegation that "BOFA directly charged Plaintiff fees" totaling $1,575.00 for the wire transfers does not constitute a claim for elder abuse. That BANA charged wire fees consistent with its disclosed terms and pursuant to wire transactions Plaintiff *admits* he requested, conclusively defeats any claim that Defendants "[took], secrete[d], appropriate[d], obtain[ed], or retain[ed] real or personal property of [Plaintiff] for a wrongful use or with intent to defraud, or both." *See Das*, 186 Cal. App. 4th at 744.

Because Plaintiff does not and cannot satisfy the "actual knowledge" requirement of his claim for assisting financial elder abuse, Plaintiff's claim should be dismissed. To the extent Plaintiff alleges his claim of elder abuse based on the wire fees charged by BANA, his claims still fail – Plaintiff does not and cannot allege BANA was not authorized to charge such fees.

**B.      To the Extent Plaintiff Bases His Elder Abuse Claim on a Failure to Report, There Is No Private Right of Action.**

Plaintiff alleges throughout the Complaint that the BOFA DEFENDANTS failed to "alert the police," and "did not report the continued withdrawals to the local police department, or anyone else." (Compl. ¶ 26.) Even if Plaintiff could satisfy the "actual knowledge" requirement of his claim, which he cannot, to the extent Plaintiff bases his first cause of action on any failure to report the "suspicious activity," his claims must fail.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

Welfare and Institutions Code section 15630.1(f) declares banks and other financial institutions to be "mandated reporter[s] of suspected financial abuse of an elder." Cal. Welf. & Inst. Code § 15630.1(a). **But there is no private right of action for violation of this section.**

> The civil penalty provided for in [Section 15630.1(f)] shall be recovered only in a civil action brought against the financial institution by the Attorney General, district attorney, or county counsel. No action shall be brought under this section by any person other than the Attorney General, district attorney, or county counsel. …
>
> Nothing in [Section 15630.1] shall be construed to limit, expand, or otherwise modify any civil liability or remedy that may exist under this or any other law.

Cal. Welf. & Inst. Code § 15630.1(g)(1)-(2). This provision, on its face, bars civil actions under Section 15630.1 by private individuals such as Plaintiff. Plaintiff may not base his claim for "assisting financial elder abuse" on Defendants' alleged failure to report the scam. *See also Das*, 186 Cal. App. 4th at 740 (holding plaintiff's "allegations regarding [bank]'s failure to comply with the statutory reporting duty state no claim against respondent").

Nor can Plaintiff use the reporting duty created by Section 15630.1 to support any other claim. The statute "expressly negates any inference of legislative intent to enlarge the legal bases for a private civil action predicated on a bank's failure to report suspected financial abuse." *Das*, 186 Cal. App. 4th at 737 (Section 15630.1(g)(2) "manifests the Legislature's intent to forbid the borrowing of the reporting duty for use as a duty of care or standard of care within a negligence claim").

To the extent Plaintiff's Complaint is predicated on Defendants' alleged failure to report "suspected financial abuse," it should be dismissed.

## VI. PLAINTIFF FAILS TO STATE A CLAIM UNDER THE UCL.

To state a valid claim under the UCL, Plaintiff must allege that BANA engaged in an "unlawful, unfair or fraudulent business act or practice." Bus. & Prof. Code § 17204; *Bernardo v. Planned Parenthood Fed. of Am.,* 115 Cal. App. 4th 322, 351 (2004). "Written in the disjunctive, this language 'establishes three varieties of unfair competition." *People ex rel. Bill Lockyer v. Fremont Life Ins. Co.*, 104 Cal. App. 4th 508, 515 (2002). Plaintiffs must also "state with

reasonable particularity the facts supporting the statutory elements of the violation." *Khoury v.*

*Maly's of Cal., Inc.,* 14 Cal. App. 4th 612, 619 (1993). "A private plaintiff ... must demonstrate

injury in fact and a loss of money or property caused by unfair competition." *Peterson v. Cellco*

*P'ship*, 164 Cal. App. 4th 1583, 1590 (2008).

Plaintiff fails to allege sufficient facts to support his UCL claim.

**No unlawful conduct.** A violation of the unlawful prong requires an underlying violation

of the law. *See Krantz v. BT Visual Images, LLC,* 89 Cal. App. 4th 164, 178 (2001). A "violation

of another law is a predicate for stating a cause of action under the UCL's unlawful prong."

*Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007). "In effect, the UCL

borrows violations of other laws . . . and makes those unlawful practices actionable under the

UCL." *Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494, 1505 (1999) (citations omitted).

The only violation of law Plaintiff alleges is Financial Elder Abuse. For the reasons

stated above, Plaintiff has not, and cannot allege a viable claim for Financial Elder Abuse.

Accordingly, Plaintiff fails to establish unlawful conduct.

**No unfair conduct.** "Unfair" conduct under the UCL has been commonly defined as

conduct that "offends an established public policy or . . . is immoral, unethical, oppressive,

unscrupulous, or substantially injurious to consumers." *Scripps Clinic v. Super. Ct.,* 108 Cal.

App. 4th 917, 939 (2003). A claim for violation of the UCL, if based on public policy, must be

"tethered" to a specific constitutional, statutory, or regulatory provision to find an objective basis

for determining whether the alleged conduct is unfair. *See id.* at 940 (citation omitted).

Plaintiff fails to allege any facts that would support a finding that BANA's conduct was

"immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Scripps*,

108 Cal. App. 4th at 939. Even if all of Plaintiff's allegations are taken as true, Plaintiff's

allegations boil down to a claim that BANA failed to know he was being scammed. Plaintiff

alleges no facts which demonstrate that BANA's acceptance of his wire transfer requests were

"immoral, unethical, oppressive, unscrupulous or substantially injurious," other than the mere fact

that Plaintiff is elderly and the transactions were allegedly "uncharacteristic." That alone is not

sufficient to demonstrate unfair conduct.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, CA 90401-2386

Further, it is not unfair or deceptive to follow the disclosed and agreed to terms of the parties' written contract.  See, e.g., *Spiegler v. Home Depot U.S.A., Inc.*, 552 F. Supp. 2d 1036, 1045-47 (C.D. Cal. 2008) (finding no unfair or deceptive business practices where the defendants complied with the express terms of the parties' contracts).  Plaintiff does not allege BANA charged any wire transfer fees outside of what was allowed under his agreement with BANA or as disclosed by BANA.  Rather, his sole complaint is that BANA charged the fees even though Plaintiff was scammed.  Plaintiff has not alleged any "unfair" conduct by BANA, especially in the absence of any allegation that Plaintiff told any BANA employees that he was being scammed when he initiated the wire transactions.

**No fraudulent practices.**  To constitute a fraudulent practice under the UCL, a plaintiff must demonstrate that reasonable consumers were likely to be deceived by the conduct in question.  *Rubio v. Capital One Bank,* 613 F.3d 1195, 1203 (9th Cir. 2010); *see also Schnall v. Hertz Corp*, 78 Cal. App. 4th 1144, 1167 (2000); *South Bay Chevrolet v. General Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 878 (1999).

Plaintiff alleges no facts showing members of the public are likely to be deceived by *BANA*'s conduct – BANA did not deceive Plaintiff.  BANA simply provided banking services that Plaintiff expressly requested. Plaintiff cannot meet the third prong of the UCL because he has not alleged any conduct of BANA that could reasonably deceive members of the public.  S*ee Rubio,* 613 F.3d at 1203.  Plaintiff fails to allege a claim for a UCL violation.

**No possible relief prescribed by UCL.**  Lastly, Plaintiff cannot allege he is entitled to any relief prescribed by the UCL. The UCL permits only two remedies—injunctive relief and restitution. *Zhang v. Superior Court*, 57 Cal. 4th 364, 371 (2013). "The object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003)."  The 'notion of restoring something to a victim of unfair competition includes two separate components. The offending party must have obtained something to which it was not entitled and the victim must have given up something which he or she was entitled to keep.'" *Feitelberg v. Credit Suisse First Boston, LLC*, 134 Cal. App. 4th 997, 1012 (2005).

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1    Plaintiff does not seek injunctive relief, nor is there anything to enjoin.  Plaintiff does not

2  allege continuing violations.  Nor can Plaintiff allege Defendants obtained something to which it

3  is not entitled – Plaintiff admits he submitted the wire transfer orders.  BANA was entitled to

4  charge the wire transfer fees for accepting the orders.  Further, Plaintiff does not allege

5  Defendants retained any of the moneys he transferred to the scammers.  Defendants do not have

6  any property of Plaintiff which they are not entitled to keep.  The UCL claim thus fails.

7  **VII.    THE COURT SHOULD NOT GRANT LEAVE TO AMEND**

8    The Court may deny leave to amend where the "proposed amendments would fail to cure

9  the pleading deficiencies and amendment would be futile." *Cervantes v. Countrywide Home*

10 *Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011).

11   Plaintiff's allegations demonstrate he cannot state a claim for Financial Elder Abuse as a

12 matter of law.  The mere fact that BANA failed to "catch" the scammers does not allow Plaintiff

13 to recover against BANA what was wrongfully taken from him by overseas scammers.

14   The circumstances of the scam are truly unfortunate.  But Plaintiff cannot sue his own

15 banking institutions for accepting his wire transfer orders and following his instructions, simply

16 because it is easier to sue and recover against them as opposed to the actual scammers.  The law

17 does not permit Plaintiff to hold BANA liable.  The Court should dismiss the Complaint without

18 leave to amend.

19 **VIII.    CONCLUSION**

20   For the foregoing reasons, Defendants respectfully request that the Court dismiss the

21 Complaint with prejudice.

22 Dated:  August 16, 2021

Douglas A. Thompson
Linda C. Hsu
23 Traci G. Choi
**BRYAN CAVE LEIGHTON PAISNER LLP**

24

25 By:      */s/ Traci G. Choi*
Traci G. Choi
26 Attorneys for Defendants
BANK OF AMERICA, N.A., BANK OF AMERICA
27 CORPORATION, and NANCY BECERRA

28

MEMORANDUM OF POINTS AND AUTHORITIES