KATHRYN A. STEBNER (SBN 121088)
Email: kathryn@stebnerassociates.com
DEENA K. ZACHARIN (SBN 141249)
Email: deena@stebnerassociates.com
**STEBNER AND ASSOCIATES**
870 Market Street, Suite 1285
San Francisco, CA 94102
Tel:    (415) 362-9800
Fax:    (415) 362-9801

KIRSTEN FISH (SBN 217940)
Email: kfish@nkf-law.com
**NEEDHAM KEPNER & FISH LLP**
1960 The Alameda, Suite 210
San Jose, CA 95126
Tel:    (408) 244-2166
Fax:    (408) 244-7815

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| CHAN-HIE KIM, individually and as co-trustee of the Chan-Hie Kim & Sook-Chung Kim Trust,<br><br>        Plaintiff,<br><br>vs.<br><br>WELLS FARGO, N.A.; WELLS FARGO & COMPANY; BANK OF AMERICA, N.A.; BANK OF AMERICA CORPORATION; VIRGEL MABINI; NANCY BECERRA; DOES 1-100, inclusive<br><br>        Defendants. | **CASE NO. 3:21-cv-05405-JD**<br><br>**PLAINTIFF'S OPPOSITION TO MOTION OF DEFENDANTS BANK OF AMERICA, N.A., BANK OF AMERICA CORPORATION, AND NANCY BECERRA TO DISMISS PURSUANT TO 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**<br><br>**Date:   September 30, 2021**<br>**Time:  10:00 a.m.**<br>**Dept.:  Courtroom 11 – 19th Floor; Hon. Judge James Donato**<br><br>**Complaint Filed:  May 21, 2021**<br><br>**Action Removed:  July 14, 2021**<br><br>**Hearing on Plaintiff's Remand Motion: September 30, 2021** |

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................ iii

I.      INTRODUCTION .................................................................................................... 1

II.     FACTUAL ALLEGATIONS IN PLAINTIFF'S COMPLAINT .......................... 2

III.    LAW AND ARGUMENT ....................................................................................... 3

      A.  The facts alleged in Plaintiff's Complaint support plausible legal
          claims against Defendants such that this Motion to Dismiss should
          be denied in its entirety. ........................................................................... 3

      B.  Plaintiff's allegations are sufficient to support a claim for Financial
          Elder Abuse against Defendants ............................................................... 5

      C.  Plaintiff's allegations are sufficient to support a claim for violations
          of the UCL against Defendants ............................................................... 14

IV.     CONCLUSION ..................................................................................................... 15

**CASE LAW**

*A.B. Concrete Coating Inc. v. Wells Fargo Bank*
491 F.Supp.3d 727 (E.D. Cal. 2020) .............................................................. 10

*Aicco, Inc. v. Ins. Co. of N. Am.*
90 Cal.App.4th 579 (2001) ............................................................................ 14

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ................................................................................... 3, 4

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544 (2007) ............................................................................... 3, 4, 5

*Bonfigli v. Strachan*
192 Cal.App.4th 1315 (2011) .......................................................................... 8

*Bounds v. Superior Court*
229 Cal.App.4th 468 (2014) ........................................................................... 8

*Cahill v. LibertyMut. Ins. Co.*
80 F.3d 336 (9th Cir. 1996) ............................................................................ 4

*Casey v. U.S. Bank Nat. Ass'n*
127 Cal.App.4th 1138 (2006) ........................................................................ 10

*Chavers v. GMAC Mort., LLC*
2012 U.S. Dist. LEXIS 85505 (C.D. Cal. June 20, 2012) .......................... 3, 4, 7, 11

*Chie v. Citigroup, Inc.*
2021 WL 633868 (N.D. Cal. Feb. 18, 2021) ................................................. 11

*Cork v. CC-Palo, Inc.*
2021 WL 1561644 (N.D. Cal. Apr. 21, 2021) ............................................... 11

*Das v. Bank of America N.A.*
186 Cal.App.4th 727 (2010) .................................................................... *passim*

*Delaney v. Baker*
20 Cal.4th 23 (1999) ..................................................................................... 4

*Doe v. United States*
419 F.3d 1058 (9th Cir. 2005) ........................................................................ 4

*Donfray v. Wells Fargo*
No. CGC-20-58393 (San Francisco Cty. Sup. Ct. Jul. 1, 2020) ...................... 9

*Du Pont v. Prudential Ins. Co.*
2019 WL 4417494 (C.D. Cal. May 29, 2019) ............................................... 11

*Gilbert v. MoneyMutual, LLC*
2018 WL 3913791 (N.D. Cal. Oct. 30, 2018) ................................................................ 10

*Hartmann v. California Dep't of Corr. & Rehab.*
707 F.3d 1114 (9th Cir. 2013) .......................................................................................... 4

*Lintz v. Bank of Am., N.A.*
2013 WL 5423873 (N.D. Cal. Sept. 27, 2013) ............................................................... 11

*Mackintosh v. JPMorgan Chase Bank*
2018 WL 3913791 (N.D. Cal. July 13, 2018) ................................................................ 10

*Mahan v. Charles W. Chan Ins. Co.*
14 Cal.App.5th 841 (2017) ......................................................................................... 8, 10

*Rand v. Am. Nat'l Ins. Co.*
2009 U.S. Dist. LEXIS 64781 (N.D. Cal. July 27, 2009) ............................................. 14

*Rosales v. Citibank, Federal Sav. Bank*
133 F.Supp.2d 1177 (2001) ...................................................................................... 14, 15

*Scheuer v. Rhodes*
416 U.S. 232 (1974) ......................................................................................................... 5

*Shamgochian v. Bank of America, N.A.*
2013 WL 1098256 (Cal. Ct. App. Mar. 18, 2013) ........................................................ 10

*Smith v. Bank of America*
No. CGC-16-552080 (San Francisco Cty. Sup. Ct. Oct. 4, 2016) ................................... 9

*Tedesco v. Wells Fargo Bank, N.A.*
2020 WL 6111012 (Cal. Ct. App. Oct. 16, 2020) ......................................................... 11

*U.S. v. Corinthian Colleges*
655 F.3d 984 (9th Cir. 2011) ........................................................................................... 1

**STATUTES**

12 U.S.C. § 632 ................................................................................................................ 1

28 U.S.C. § 1331 .............................................................................................................. 1

28 U.S.C. § 1441 .............................................................................................................. 1

28 U.S.C. § 1446 .............................................................................................................. 1

Cal. Bus. & Prof. Code § 17200 ........................................................................... 3, 14, 15

Cal. Bus. & Prof. Code § 17203 ............................................................................... 14, 15

Cal. Civ. Code § 39 ........................................................................................................ 13

Cal. Prob. Code § 812 ............................................................................................ 13

Cal. Welf. & Inst. Code § 15610.30 ................................................................ *passim*

Cal. Welf. & Inst. Code § 15630.1 .......................................................................... 13

Cal. Welf. & Inst. Code § 15657 .............................................................................. 4

Cal. Welf. & Inst. Code § 15657.5 ........................................................... 4, 13, 14, 15

Cal. Welf. & Inst. Code § 15657.6 ............................................................. 13, 14, 15

Fed. Rule Civ. Proc. 8 .............................................................................................. 3

Fed. Rule Civ. Proc. 9 .......................................................................................... 3, 4

Fed. Rule Civ. Proc. 12 ................................................................................. 1, 4, 15

## I.   INTRODUCTION

Plaintiff CHAN-HIE KIM, individually and as co-trustee of the Chan-Hie Kim & Sook-Chung Kim Trust ("Plaintiff") hereby submits this opposition in response to the Motion to Dismiss Pursuant to 12(b)(6) of the Federal Rules of Civil Procedure filed by defendants BANK OF AMERICA, N.A. ("BANA"), BANK OF AMERICA CORPORATION ("BAC") and Nancy Becerra (collectively "Defendants") on August 16, 2021.

At the outset, it should be noted that Plaintiff timely filed a Motion to Remand on August 13, 2021, with a hearing date of September 30, 2021. As set forth in said motion, this Court has no subject matter jurisdiction over this case because there is no federal question jurisdiction under 28 U.S.C. §§ 1331, 1441 or 1446, or 12 U.S.C. § 632. Despite this fact, Plaintiff files this opposition out of an abundance of caution given that Plaintiff's Motion to Remand is scheduled to be heard on September 30, 2021, the same day as Defendants' Motion to Dismiss.

It should also be noted that while Defendants argue BAC should be dismissed as an initial matter because it is "a holding company" and "indirect parent company of BANA" that "has no operations" (Defs.' MTD, 1:14-17; 5:8-16), Defendants have not provided any of this alleged information by way of documents that could be judicially noticed. Moreover, whether BAC is a holding company on its own is insufficient to dismiss it from this action because Defendants have not provided any documents to establish that bank holding companies categorically do not engage in banking activities of the kind at issue here, and BAC provides no admissible evidence to show that it does not do so. Thus, there is nothing in the Complaint or in Defendants' motion to indisputably establish that the employees/managing agents who financially abused Plaintiff here were not BAC employees. (*See U.S. v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011) [on motion to dismiss, the court "may not, on the basis of evidence outside of the Complaint, take judicial notice of facts favorable to Defendants that could reasonably be disputed"].) However, if Defendants were to provide the information alleged in their motion in a sworn declaration to Plaintiff's counsel, Plaintiff would be willing to dismiss BAC once the Court has ruled on Plaintiff's Motion to Remand.

## II.  FACTUAL ALLEGATIONS IN PLAINTIFF'S COMPLAINT

This financial elder abuse case arises from a "tech support scam" that drained nearly all of the elderly Plaintiff's life savings. (Complaint ¶ 1.) The scam first started in September, 2020, when a large warning message popped up on Plaintiff's computer saying his computer was hacked, not to touch anything, and to call a phone number. (*Id.*, ¶ 19.) When Plaintiff called the number the person who answered said he was with Microsoft. (*Id.*) The scammer said that Plaintiff's bank account at Bank of America was hacked and connected Plaintiff with another scammer who said he was with "Bank of America Fraud Prevention department." (*Id.*) The scammer said Plaintiff's social security number and birthdate were exposed and his retirement accounts at another institution were at risk. (*Id.*) The scammer told Plaintiff to transfer all of his retirement funds to Bank of America in order to "rebuild" his retirement accounts with new account numbers in order to protect his funds. Following his instructions, Plaintiff transferred his retirement funds to his account at Bank of America, which was titled in his trust entitled the "Chan-Hie Kim & Sook-Chung Kim Trust," in six huge increments, totaling over $2,000,000.00 being transferred into his Bank of America trust account. (*Id.*) Immediately following each large deposit from his investment account, Plaintiff entered a Bank of America branch and requested huge wire transfers with no questions asked by Defendants. (*Id.*)

Plaintiff, age 85 at the time, had been a customer of Defendants for over 30 years. (*Id.*, ¶ 18.) Prior to September 2020, Plaintiff never engaged in any "suspicious transactions." In particular, neither co-trustee of the Chan-Hie Kim & Sook-Chung Kim Trust regularly, or at all, engaged in any transactions where they were depositing large amounts to the trust account, and then withdrawing large amounts from the trust account by wire transfer. (*Id.*) According to Defendants' own records, deposits into the trust account with Bank of America prior to the scam consisted almost entirely of small amounts, and checks drawn on the account for expenses during that period were for approximately the same amount of money. (*Id.*) Then, after years of doing these regular, frugal transactions with Defendants, suddenly most of the transactions out of the Chan-Hie Kim & Sook-Chung Kim Trust Bank of America account from September 23, 2020 to November 19, 2020 involved wire transfers of enormous amounts of cash totaling over $1,480,000.00. (*Id.*)

Each time the scammers instructed him to wire more cash, the 85-year-old Plaintiff walked into his long-time Bank of America branch and met in person, face-to-face with a teller, who then would call over a bank manager to approve his wire transfers. (*Id.*, ¶ 20.) Even though Defendants knew or should have known that the elderly Plaintiff was potentially being scammed, they did nothing to stop the ongoing scam, and ignored the many government advisories they have received informing them to detect, deter and respond to the "red flags" of financial elder abuse. (*Id.*) Thus, Defendants provided the scammers with substantial assistance by allowing Plaintiff to continue to wire away almost $1,500,000.00 until his life savings was nearly depleted. (*Id.*) On top of this abject failure to protect their elderly customer by knowingly assisting in the financial elder abuse of Plaintiff, Defendants directly charged Plaintiff fees for each of the fraudulent wire transfers to the scammers, totaling $1,575.00 in fees. (*Id.*) Thus, Plaintiff alleges causes of action against Defendants for financial elder abuse under California's Welfare & Institutions Code § 15600 *et seq.* and unlawful business practices under California's Business & Professions Code § 17200 *et seq.*

## III.     LAW AND ARGUMENT

### A.     The facts alleged in Plaintiff's Complaint support plausible legal claims against Defendants such that this Motion to Dismiss should be denied in its entirety.

Federal Rule of Civil Procedure 8(a) requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." (*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).) Although the factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face," particular detail is not necessary. (*Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).)

Notably, Defendants incorrectly state that a financial elder abuse case "must be plead with particularity pursuant to Rule 9(b)," relying primarily on *Chavers v. GMAC Mort., LLC*, 2012 U.S. Dist. LEXIS 85505 (C.D. Cal. June 20, 2012). (Defs.' MTD, 4:26-5:7.) However, *Chavers* dealt with a 2006 mortgage loan and was therefore decided under the prior version of Welfare & Institutions Code § 15610.30, which was "substantively changed" via amendment in 2008. (*Id.* at *2, *23.) As

noted in *Chavers*, and as discussed in detail herein, "[t]he relevant change [to § 15610.30] involved the 'knew or should have known' language, which was absent from the earlier version." (*Id.* at *23.) "Accordingly, <u>before</u> the [2008] revision one needed to sufficiently plead bad faith or fraudulent intent" for financial elder abuse, whereas afterwards, one needed to only plead that the defendant "knew or should have known" that this conduct is likely to be harmful to the elder. (*Id.*, emphasis added; *see also* Welf. & Inst. Code § 15610.30(b).) Thus, the *Chavers* court held that because "a plaintiff must plead using the language of the statute that was applicable at the time of the alleged violation," the plaintiff in that case was required to plead "bad faith or fraudulent intent" under the former version of § 15610.30. (*Id.* at *23.) That is not the case here, and as such, this Complaint does not need to be plead with particularly pursuant to Rule 9(b) as Defendants claim.[1]

Moreover, on a motion to dismiss pursuant to Rule 12(b)(6), the court must read and construe the complaint in the light most favorable to the non-moving party. (*Cahill v. LibertyMut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).) "When there are well pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." (*Ashcroft*, 556 U.S. at 679.) "Facial plausibility" requires a plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (*Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1121-22 (9th Cir. 2013).) Thus, in determining "facial plausibility," the Court must "accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." (*Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005).) This is true even if the Court does not believe the complaint's factual allegations. (*See Twombly*, 550 U.S. at 556 [Rule 12(b)(6) does not countenance "dismissals based on a judge's disbelief of a complaint's factual allegations"].) No matter how improbable the facts

---

[1] Defendants' reliance on *Delaney v. Baker*, 20 Cal.4th 23 (1999), is also misplaced here, as that case dealt with physical elder abuse, where a plaintiff must prove the defendant is liable for the abuse by "clear and convincing evidence" and that the defendant has been guilty of recklessness, oppression, fraud, or malice in the commission of the physical abuse in order to recover attorney fees and costs. (Welf. & Inst. Code § 15657.) The same is not true in financial elder abuse cases, where the burden of proof is simply a "preponderance of the evidence," and no showing of recklessness, oppression, fraud or malice is required to recover attorney fees and costs. (Welf. & Inst. Code § 15657.5(a).)

alleged in the plaintiff's complaint are, they must be accepted as true for purposes of the motion. (*Id.* at 556.) Importantly, in reviewing the sufficiency of a complaint on a motion to dismiss, the court's task "is necessarily a limited one," as "**[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims**." (*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), emphasis added, abrogated on other grounds.) "Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." (*Id.*) A plaintiff need only set forth allegations sufficient to "raise a right to relief above the speculative level," and plead "enough facts to raise a reasonable expectation that discovery will reveal evidence." (*Twombly*, 550 U.S. at 545, 556.) The central task for courts considering motions to dismiss is to assess whether the complaint "nudge[s] [plaintiff's] claims across the line from the conceivable to plausible." (*Id.* at 570.) As discussed below, Plaintiff's complaint here alleges facts sufficient to show Defendants may be held liable for financial elder abuse and violation of California's unfair competition laws. As such, Defendants' motion should be denied in its entirety.

> ### B. <u>Plaintiff's allegations are sufficient to support a claim for Financial Elder Abuse against Defendants.</u>

California's Welfare & Institutions Code § 15610.30 provides in relevant part as follows:

(a) "Financial abuse" of an elder or dependent adult occurs when a person or entity does any of the following:

(1) <u>Takes</u>, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult **for a *wrongful use*** or with intent to defraud, or both.

(2) <u>Assists in taking</u>, secreting, appropriating, obtaining, or retaining real or personal property of an elder or dependent adult **for a *wrongful use*** or with intent to defraud, or both.
…
(b) A person or entity shall be deemed to have taken, secreted, appropriated, obtained, or retained property for a ***wrongful use* if, among other things, the person or entity takes, secretes, appropriates, obtains, or retains the property and the person or entity *knew or should have known* that this conduct is likely to be harmful to the elder** or dependent adult. (*Id.*, emphasis added.)

Whether alleging a direct taking under § 15610.30 (a)(1) or assisting in taking under (a)(2), it must be shown the defendant did so "for a wrongful use," defined in § 15610.30(b) as when the defendant "knew or should have known" that the conduct is likely to be harmful to the elder. (*Id.*)

The crux of the motion to dismiss in the present case is Defendants' mistaken assertion that "actual knowledge" is an essential element of an "assisting" claim under Welfare & Institutions Code § 15610.30(a)(2), relying primarily on *Das v. Bank of America N.A.*, 186 Cal.App.4th 727 (2010) as its authority. (Defs.' MTD, 7:6-8:17.) However, for the reasons set forth herein, the limited holding in *Das* is inapplicable here, as *Das* was decided under an earlier version of § 15610.30 that has since been materially amended effective January 1, 2009, long before the events at issue here.

In *Das,* a daughter sued Bank of America under the elder abuse statute, alleging the bank failed to report financial abuse of her father that was accomplished through real estate transactions, lottery scams, and other misconduct regarding her father. (*Id.* at 732.) The conduct complained of occurred before her father died in August of 2008. (*Id.* at 733.) The *Das* court noted that the earlier version of § 15610.30(b) that was effective during the events alleged in the plaintiff's complaint, i.e. before August 2008, provided "A person or entity shall be deemed to have taken, secreted, appropriated, or retained property for a wrongful use if, among other things, the person or entity takes, secretes, appropriates, or retains possession of property in <u>bad faith</u>." (*Id.* at 735, emphasis added.) While § 15610.30(b) was later amended effective January 1, 2009, the *Das* court rejected the plaintiff's argument that her complaint was governed by the amended version of the statute, holding:

> At the outset, we note that appellant suggests her contentions are governed by section 15610.30, subdivision (b), in its current form. She is mistaken. In 2008, the Legislature amended subdivision (b) of the statute to provide: "A person or entity shall be deemed to have taken, secreted, appropriated, obtained, or retained property for a wrongful use if, among other things, the person or entity takes, secretes, appropriates, obtains, or retains the property *and the person or entity knew **or should have known** that this conduct is likely to be harmful to the elder....*" (*Id.* at 736, italics in original, bolding added.)

The *Das* court held that the 2008 amendment to § 15610.30, changing the standard for financial elder abuse, constituted "a material change in the statutory definition of financial abuse," one that presented "an essentially new statute." (*Id.*) The obvious change was that prior to the 2008 amendment, financial elder abuse required "bad faith" on the part of the defendant. After the 2008 amendment, financial elder abuse could be maintained against a bank under § 15610.30(a)(1) or § 15610.30(a)(2) if the financial institution acted for a "wrongful use," which was now defined as

when a defendant "knew or should have known" the conduct was "likely to be harmful to the elder." (*Id., see also Chavers*, 2012 U.S. Dist. LEXIS 85505 at *23 [holding that "[t]he relevant change [to § 15610.30] involved the 'knew or should have known' language, which was absent from the earlier version" such that "before the [2008] revision one needed to sufficiently plead bad faith or fraudulent intent," whereas afterwards, one needed to only plead that the defendant "knew or should have known" that this conduct is likely to be harmful to the elder].)

Because the plaintiff in *Das* was alleging wrongful conduct by Bank of America that occurred prior to January 1, 2009, the *Das* court declined to apply the 2008 amendment to § 15610.30 to the plaintiff's allegations, as the amended statute did not become effective until January 1, 2009 and the court found that the amendment was not retroactive. (*Id.* at 736-37.) Thus, applying the pre-amended version of Welfare & Institutions Code § 15610.30, the court concluded that, as effective in 2006-2008, § 15610.30(a)(2) could not be understood to "impose strict liability for assistance in an act of financial abuse," such that when a bank provides ordinary services that effectuate financial abuse by a third party, the bank may be found to have "assisted" the financial abuse "only if it knew of the third party's wrongful conduct." (*Id.* at 745.)

In the present case, unlike in *Das*, Defendants' conduct occurred well after the 2008 amendment to Welfare & Institutions § 15610.30 took effect. Thus, the current version of the "entirely new statute" applies, which can be understood to impose liability for assistance in an act of financial abuse when a bank effectuates the abuse by a third party and knew "or should have known" of the "harmful" effect. To wit, the legislative history behind SB 1140, which amended the language of § 15610.30 effective January 1, 2009, both clarified that assisting another in taking, secreting, appropriating, obtaining, or retaining by undue influence is also "financial abuse" and changed the definition of "for a wrongful use" from a "bad faith" standard to a "reasonable person" standard, specifically stating in pertinent part as follows:

> SUMMARY: **Expands the protections of the Elder Abuse and Dependent Adult Civil Protection Act**. … This bill replaces the current definition of "taking for a wrongful use" with a new standard. Current law provides that a person is deemed to have taken or appropriated property of an elder or dependent adult for

a wrongful use if the person took or appropriated the property in bad faith. A person is deemed to have taken the property in bad faith if the person knew or should have known that the elder had a right to transfer or make the property available at the time of the taking.

Instead, the bill provides that a person or entity is deemed to have taken or appropriated an elder's property for wrongful use if, among other things, the person **knew or should have known** that taking or appropriating the property is likely to be harmful to the elder or dependent adult. **This definition shifts the proof required from the defendant's knowledge or presumed knowledge of the elder's or dependent adult's right to the property taken, to the defendant's knowledge or presumed knowledge of the *effect* of the taking on the elder or dependent adult, to which a *reasonable person* standard is applied.** ***This shift of focus should encourage more advocates to assist elders and dependent adults in recovering their property***. (Declaration of Kirsten Fish ["Fish Decl."], ¶ 2, **Ex. 1**, emphasis added.)

Applying the ordinary use of the term "assist,"[2] "but for" the assistance of an elder's financial institution, such as Defendants here, financial abuse scams against the elderly could not be effected. That is why, in order to better protect elders, the Legislature had previously amended § 15610.30 in 2000 to "include not only the persons committing the prohibited acts **but also *anyone who assists* in committing the prohibited acts**," and noted that "[t]he changes to the definition **are intended to make it *easier* to prosecute financial abuse of the elderly and dependent adults**." (AB 2107, as Amended August 7, 2000, emphasis added; Fish Decl., ¶ 3, **Ex. 2**.) The remedial nature of this particular statute is clear from the Elder Abuse Act's "Legislative Findings and Intent" language, i.e., "[t]he Legislature recognizes that elders and dependent adults may be subjected to abuse, neglect, or abandonment and that this state has a responsibility to protect these persons," and the case law interpreting it. (*See, e.g., Bonfigli v. Strachan*, 192 Cal.App.4th 1302, 1315 (2011) [holding the Elder Abuse Act was enacted to provide for the "private, civil enforcement of laws against elder abuse and neglect"].) As courts have held, it is axiomatic that, as a remedial statute, the Elder Abuse Act be liberally construed on behalf of the class of persons it is designed to protect, i.e., elders and dependent adults. (*See Mahan v. Charles W. Chan Ins. Co.*, 14 Cal.App.5th 841, 860-61 (2017).)

---

[2] *See Bounds v. Superior Court*, 229 Cal.App.4th 468, 480–81 (2014) ("[i]n interpreting the words in a statute, we must give them 'the meaning they bear in ordinary use'").

Moreover, Plaintiff's counsel previously obtained a ruling in a similar financial elder abuse case specifically holding that a cause of action against a bank under § 15610.30(a)(2) does **not** require that the "assistor" have actual knowledge of the underlying abuse and that the holding in *Das* was **not** dispositive on this issue *or even persuasive*, as it was reached under the former version of the statute that was later amended in 2008. (Fish Decl., ¶ 4, **Ex. 4**.) In that case, *Donfray v. Wells Fargo*, No. CGC-20-58393 (San Francisco Cty. Sup. Ct. Jul. 1, 2020), in which the defendant bank was represented by the same firm as in the *Das* case, an elderly man was the victim of a "Publishers Clearinghouse Sweepstakes scam" where the perpetrators told him he needed to pay taxes and fees before receiving his prize money, and the plaintiff, as a longtime customer of Wells Fargo, suddenly began withdrawing large sums of cash from his account to do so. (*Id.,* ¶ 4, **Ex. 3**.) Within months, he withdrew over $300,000 in cash from Wells Fargo. He sued the bank under § 15610.30 and in response, the bank filed a demurrer arguing that under *Das*, his claim for assisting financial elder abuse failed because he could not establish the bank had "actual knowledge" of the scam, citing many of the same cases Defendants cite here. (*Id.*) In other words, the defendant bank in *Donfray* made *the exact same arguments* in its demurrer that Defendants are making now in this motion to dismiss, i.e., that actual knowledge by the bank is an essential element of an 'assisting' claim" under § 15610.30(a)(2). However, the *Donfray* court disagreed, ruling in relevant part as follows:

> **[T]he court rejects Defendant's argument that Plaintiff cannot state a cause of action under the Elder Abuse Act absent a showing that it knew of the third party scammer's wrongful conduct**. … While the statutory language of [ ] §15610.30 lacks clarity and there is no case law on point, **the better reading and the one that is more protective of the rights of elders is that a cause of action for assisting financial elder abuse in violation of § 15610.30(a)(2) does *not* require that the "assister" have actual knowledge of the underlying financial abuse. Defendant's reliance on *Das* is unpersuasive**. (Fish Decl., ¶ 4, **Ex. 4**, emphasis added.)

This same exact ruling has also been obtained in other financial elder abuse cases against banks where the specific question of whether § 15610.30(a)(2) requires the assistor to "know" or "know or should have known" was substantively briefed and argued, **including a case where Bank of America was the defendant**. (*See, e.g., Smith v. Bank of America,* No. CGC-16-552080 (San Francisco Cty. Sup. Ct. Oct. 4, 2016), Fish Decl., ¶ 5, **Exs. 5, 6** [finding Bank of America's reliance

on *Das* "unpersuasive" and holding "the better reading and the one that is more protective of the rights of elders is that a cause of action for assisting financial elder abuse in violation of § 15610.30(a)(2) does *not* require that the "assister" have actual knowledge of the underlying financial abuse"].) And the same should be true here, i.e., the better reading of the current version of Welfare & Institutions Code § 15610.30 – and the one that is more protective of the rights of elders, which was clearly the Legislature's intent – is that a cause of action for assisting financial elder abuse under § 15610.30(a)(2) does **not** require that the "assister" have actual knowledge that another person is engaging in financial elder abuse. As the court stated in *Mahan*, 14 Cal.App.5th at 860-61, to the extent there is **any** reasonable room for debate on a specific application of the Elder Abuse Act, those questions **must** be resolved in favor of the elder plaintiff, because it is axiomatic that a remedial statute such as the Elder Abuse Act be "liberally construed on behalf of the class of persons it is designed to protect."

Yet despite the stated Legislative intent to protect the right of elders and even with direct rulings against them that reject their continued reliance on *Das*, Defendants wrongly assert here that § 15610.30(a)(2) requires "actual knowledge" when assisting another in wrongfully taking property of an elder, when the statute uses no such terms. Moreover, none of the cases Defendants rely upon to support their argument in this respect are applicable here, as they either: **(1)** were decided under totally different rules than the specific remedial statutory scheme of the Elder Abuse Act, which again was specifically enacted to protect the elderly from financial abuse just like in the present case (*see Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal.App.4th 1138, 1153 (2005) [not involving **any** claims brought under Welf. & Inst. Code § 15610.30]; *A.B. Concrete Coating Inc. v. Wells Fargo Bank,* 491 F.Supp.3d 727, 736 (E.D. Cal. 2020) [same]; *Shamgochian v. Bank of America, N.A.,* 2013 WL 1098256, at *6-7 (Cal. Ct. App. Mar. 18, 2013) (unpublished) [same]; *Gilbert v. MoneyMutual, LLC*, 2018 WL 3913791, at *9 (N.D. Cal. Oct. 30, 2018) (NOT FOR CITATION) [same]; or **(2)** had nothing to do with a claim brought under Welfare & Institutions § 15610.30(a)(2) for assisting in financial elder abuse (*see Mackintosh v. JPMorgan Chase Bank*, 2018 WL 3913791, at *3 (N.D. Cal. July 13, 2018) [dealing with a claim of "aiding and abetting *fraud*," <u>not</u> an elder abuse claim

under § 15610.30(a)(2)]); or **(3)** were decided applying the pre-amended version of § 15610.30 that is not applicable here, just as in *Das* (*see Chavers*, 2012 WL 2343202, at *7 [dealing with a 2006 mortgage and holding plaintiff was required to plead "bad faith or fraudulent intent" under the former version of § 15610.30]; *Lintz v. Bank of Am., N.A.*, 2013 WL 5423873, at *29 (N.D. Cal. Sept. 27, 2013) [dealing with events that took place in "late 2007 to February 2008" such that the former version of § 15610.30 applied]); or **(4)** did not involve any substantive arguments by the parties as to whether § 15610.30 requires knowingly assisting another in wrongfully taking property (*see Du Pont v. Prudential Ins. Co.*, 2019 WL 4417494, at *16 (C.D. Cal. May 29, 2019); *Tedesco v. Wells Fargo Bank, N.A.,* 2020 WL 6111012, at *5-6 (Cal. Ct. App. Oct. 16, 2020) (unpublished); *Cork v. CC-Palo, Inc.*, 2021 WL 1561644, at *8 (N.D. Cal. Apr. 21, 2021) [although the court ultimately held "[w]hen construed in the light most favorable to Plaintiffs, these allegations plausibly allege CC-DG and CRMLP <u>assisted</u> CC-PA in the alleged deprivation of property for a wrongful purpose and <u>knew or should have known</u> that their conduct was likely to be harmful to Plaintiffs"]); and/or **(5)** are factually distinguishable from the present case (*see Chie v. Citigroup, Inc.,* 2021 WL 633868, at *7 (N.D. Cal. Feb. 18, 2021) [where plaintiffs did not even "meaningfully oppose Citi's argument that the complaint alleges nothing about whether Citi took money for a "wrongful use", which is not the case here]). Thus, *<u>none</u>* of the cases Defendants rely on are binding on this Court.

However, even assuming for the sake of argument that § 15610.30(a)(2) required allegations that Defendants had actual knowledge of the scheme that victimized Plaintiff, such allegations <u>are</u> present in Plaintiff's Complaint. For example, the Complaint alleged Defendants knew of scams such as the "tech support scam" and were on notice to look out for elderly people being swindled by scams prior to the suspicious wire transfers made by Plaintiff. (Complaint ¶ 27.) Plaintiff also alleged that Defendants knew that Plaintiff was caught in the throes of financial elder abuse and that they were not only substantially assisting in the scam, but also profiting from it by directly taking Plaintiff's money via the fees it charged for every fraudulent transfer made to the scammers. (*Id.*, ¶ 31.) After all, "under these circumstances, there was no other plausible explanation for the sudden and numerous deposits and withdrawals to and from Plaintiff's accounts." (*Id.*) In fact, when the

"scammers" instructed Plaintiff to open an account at California Bank and make wire transfers from that bank, California Bank refused to do so because it had concerns about financial elder abuse. (*Id.*) Similarly, when the "scammers" instructed Plaintiff to open an account at U.S. Bank and make wire transfers from that bank, U.S. Bank refused to do more than three wire transfers because it had concerns about financial elder abuse. (*Id.*) Although these two banks were alerted to the red flags of financial elder abuse – based on the same information the Defendants knew about Plaintiff and had also received from multiple government agencies about financial elder abuse – Defendants simply ignored the red flags and instead, substantially assisted the "scammers" in taking Plaintiff's life savings, directly collecting their own fees from Plaintiff in the process. (*Id.*) Thus, the Complaint alleges Defendants are liable for the financial elder abuse under § 15610.30 because they "***actually knew***, or should have known, that another person or entity was engaging in financial elder abuse of Plaintiff and that their conduct as described in detail herein was likely to be harmful to the elderly Plaintiff." (*Id.*, ¶ 36, emphasis added.) "That is, not only should they have known that they were assisting others' financial elder abuse of Plaintiff, but **their *knowledge* of the facts stated herein makes it clear that they must have *actually known* that when they were assisting Plaintiff in suddenly, uncharacteristically and repeatedly wiring all of his funds out of their respective accounts in a short time period, it was for a *wrongful use*, that another person was perpetrating a financial elder abuse scam on Plaintiff as a result, and that this conduct was likely to be harmful to Plaintiff**." (*Id.*, emphasis added.) Despite being in possession of and knowing all these specific facts as set forth herein that would give anyone a reasonable basis to believe financial elder abuse was occurring, Defendants (including managing agent Nancy Becerra)[3]

---

[3] While Defendants claim that there are no facts alleged in the Complaint as to Nancy Becerra ("Becerra"), the Complaint alleges "at the time of the transactions at issue," Becerra was "employed by BOFA as a managing agent." (Complaint, ¶ 8.) Thus, every subsequent allegation in the Complaint referring to the acts and omissions of a "manager" or "managing agent" of "BOFA" would necessarily include Becerra. (*See*, *e.g.,* Complaint, ¶ 20 [alleging each time Plaintiff was told to wire more money, "this 85-year-old elderly customer walked into his long-time BOFA branch and met in person, face-to-face with a teller, who then would call over a bank manager to approve his wire transfers"] and ¶¶ 29, 31, 36, 37, 38, 42, and 51 [referring to BOFA's managing agents].)

"***knowingly*** financially abused Plaintiff under Welfare & Institutions Code § 15610.30 by assisting in these cash transactions over and over again in direct, face-to-face transactions with Plaintiff from September 2020 through December 2020…and by directly taking and retaining wire fees from Plaintiff each time in the process." [4] (*Id.*, ¶ 37, emphasis added.)

Therefore, even assuming arguendo that Defendants are correct in their extremely narrow interpretation of § 15610.30(a)(2) that is not supported by any binding or on point case law and that flies in the face of the stated Legislative intent behind the Elder Abuse Act to "make it easier to prosecute financial abuse of the elderly" (Fish Decl., ¶ 3, **Ex. 2**), Plaintiff has in fact properly alleged financial elder abuse against Defendants under this statute as set forth above which, at the pleading stage, must be accepted as true. Moreover, Plaintiff has also alleged that Defendants <u>directly</u> engaged in financial elder abuse under § 15610.30(a)(1), which Defendants do not dispute uses a "know or should have known standard," specifically alleging that "[o]n top of this abject failure to protect their elderly customer, [Defendants] directly charged Plaintiff fees in the amount of $30.00 to $45.00 for each of the wire transfers to the scammers…totaling $1,575.00 in fees directly taken from Plaintiff by [Defendants] as a part of the scam." (Complaint, ¶ 20.) Thus, Plaintiff alleged Defendants "committed financial abuse under [Welf. & Inst.] Code § 15610.30 by assisting in the financial abuse of Plaintiffs by DOES 51-100 **and by *directly* taking and retaining wire fees from Plaintiff each time in the process**. (Complaint, ¶ 38, emphasis added.) Plaintiff also alleged that when he informed Defendants of the scam, they "**further abused him *directly*** by failing to credit his account the amount of the money wrongfully obtained from him," and therefore, "possess money belonging to him" in violation of §§ 15610.30, 15657.5 and 15657.6.[5] (*Id.*, ¶ 39, emphasis added.)

---

[4] Plaintiff's first cause of action for Financial Elder Abuse is not based on Defendants' failure to comply with Welfare & Institutions Code § 15630.1, making this part of Defendants' motion moot.

[5] Welfare & Institutions Code § 15657.6 states "A person or entity that takes…or assists in taking…the real or personal property of an elder…when the elder…lacks capacity pursuant to Section 812 of the Probate Code, or is of unsound mind, but not entirely without understanding, pursuant to Section 39 of the Civil Code, shall, upon demand by the elder…return the property and if that person or entity fails to return the property, the elder…shall be entitled to the remedies provided by Section 15657.5, including attorney's fees and costs."

Taken in their entirety, the above-referenced allegations in Plaintiff's Complaint sufficiently show that Defendants may be liable for not only assisting in the elder financial abuse of Plaintiff, but also for directly abusing him in violation of Welfare & Institutions Code §§ 15610.30, 15657.5, and 15657.6. Because Plaintiff's Complaint properly states a plausible claim against Defendants for financial elder abuse as set forth above, their motion to dismiss this cause of action should be denied.

**C.** **Plaintiff's allegations are sufficient to support a claim for violations of the UCL against Defendants.**

Defendants also argue they cannot be held liable for violations of the unfair competition laws set forth in Business & Professions Code § 17200 *et seq*. because "Plaintiff has not, and cannot allege a viable claim for Financial Elder Abuse" such that "Plaintiff fails to establish unlawful conduct." (Defs.' MTD, 13:12-14.) However, as set forth above, Plaintiff has properly alleged a cause of action against Defendants under Welfare & Institutions Code §§ 15610.30, 15657.5 and 15657.6 for financial elder abuse, which may serve as a predicate violation for his UCL claim. (*See Rand v. Am. Nat'l Ins. Co.*, 2009 U.S. Dist. LEXIS 64781, *12 (N.D. Cal. July 27, 2009) [holding a cause of action under Welf. & Inst. Code § 15657.5 "may also serve as a predicate violation for plaintiff's UCL claim"].) "Virtually any law—federal, state or local—can serve as a predicate for a section 17200 claim." (*Aicco, Inc. v. Ins. Co. of N. Am.*, 90 Cal.App.4th 579, 587 (2001).)

Defendants also argue Plaintiff's UCL claim is barred because "Plaintiff cannot allege he is entitled to any relief prescribed by the UCL." (Defs.' MTD, 14:20-28.) However, even assuming that the prayer of Plaintiff's Complaint was a proper subject for a motion to dismiss, where a measurable amount has been taken from a person in the course of an unfair business practice, that loss can be restored to the victim. That is, if Defendants were required to credit Plaintiff's account the amount of the transfers and fees that were wrongfully processed pursuant to Welfare & Institutions Code §§ 15610.30, 15657.5 and 15657.6 and Defendants failed to do so, then Defendants possess money belonging to Plaintiff in violation of the law, and hence, by means of "unfair competition" under the UCL. For example, in *Rosales v. Citibank*, 133 F.Supp.2d 1177, 1181-82 (2001), the court broadly interpreted Business & Professions Code § 17203's "acquired" language to include the wrongful

retention of funds. There, the plaintiff deposited money with Citibank. (*Id.* at 1179.) Sometime later, an unknown and authorized person made ATM withdrawals from the plaintiff's account. (*Id.*) Citibank refused to reimburse the plaintiff, who then brought a UCL claim for restitution of the money Citibank had lost. (*Id.*) Citibank moved to strike the claim, arguing the plaintiff was not legally entitled to restitution because Citibank had not acquired something it was not authorized to keep, claiming "Plaintiff has not alleged that Defendant has improperly obtained or received any funds from him." (*Id.* at 1180-81.) However, the court rejected Citibank's argument because the money in the account belonged to the plaintiff and Citibank had allowed it to be lost. (*Id.* at 1181.) "The fact that Citibank no longer has those funds that it allowed to be removed from [plaintiff]'s account does not change the analysis." (*Id.*) Thus, the court held Citibank "arguably 'acquired money by means of unfair competition'" that could be restored under § 17203, even though the bank had initially obtained the plaintiff's money lawfully. (*Id.* at 1181-82.) This is precisely what is alleged here in Plaintiff's second cause of action against Defendants for violation of the UCL:

> When Plaintiff informed [Defendants] of the scam resulting in multiple large wire transfers, **[Defendants] failed to credit Plaintiff's accounts** the amount of the money wrongfully took from his accounts, including the fees charged by, and directly taken by, [Defendants] for each of the wire transfers, in violation of [§ 15610.30], **and therefore possess money belonging to him for which he has a right to restitution under [§ 17200]**. (Complaint, ¶ 51, emphasis added.)

Thus, an order requiring Defendants to restore to Plaintiff an amount of money equal to the amounts he lost in violation of Welfare & Institutions Code §§ 15610.30 and 15657.6 is well within the type of restitutionary remedies available under § 17203. (*Rosales*, 133 F.Supp.2d at 1181-82.) As such, Defendants' motion to dismiss Plaintiff's cause of action under the UCL should be denied.

## IV.    CONCLUSION

Assuming arguendo Defendants have first shown that there is federal question jurisdiction in this matter such that this Court has jurisdiction to hear their Rule 12(b)(6) motion, which Plaintiff disputes, Plaintiff respectfully requests this Court deny Defendants' motion in its entirety for the reasons set forth herein. Alternatively, Plaintiff respectfully requests this Court grant Plaintiff leave to amend his Complaint to cure any alleged pleading insufficiencies.

Dated:  August 30, 2021

NEEDHAM KEPNER & FISH LLP

By: _____

Kirsten Fish
Attorneys for Plaintiff