1  KATHRYN A. STEBNER (SBN 121088)
   Email: kathryn@stebnerassociates.com
2  DEENA K. ZACHARIN (SBN 141249)
   Email: deena@stebnerassociates.com
3  **STEBNER AND ASSOCIATES**
   870 Market Street, Suite 1285
4  San Francisco, CA  94102
   Tel:    (415) 362-9800
5  Fax:    (415) 362-9801

6  KIRSTEN FISH (SBN 217940)
   Email: kfish@nkf-law.com
7  **NEEDHAM KEPNER & FISH LLP**
   1960 The Alameda, Suite 210
8  San Jose, CA 95126
   Tel:    (408) 244-2166
9  Fax:    (408) 244-7815

10
   Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION**

| | |
|---|---|
| CHAN-HIE KIM, individually and as co-trustee of the Chan-Hie Kim & Sook-Chung Kim Trust,<br><br>    Plaintiff,<br><br>vs.<br><br>WELLS FARGO, N.A.; WELLS FARGO & COMPANY; BANK OF AMERICA, N.A.; BANK OF AMERICA CORPORATION; VIRGEL MABINI; NANCY BECERRA; DOES 1-100, inclusive<br><br>    Defendants. | **CASE NO. 3:21-cv-05405-JD**<br><br>**PLAINTIFF'S REPLY TO OPPOSITION TO MOTION TO REMAND FILED BY WELLS FARGO, N.A., WELLS FARGO & COMPANY, AND VIRGEL MABINI**<br><br>**Date:** September 30, 2021<br>**Time:** 10:00 a.m.<br>**Dept.:** Courtroom 11 – 19th Floor; Hon. Judge James Donato<br><br>**Complaint Filed:** May 21, 2021<br>**Action Removed:** July 14, 2021 |

## I. INTRODUCTION

Plaintiff CHAN-HIE KIM, individually and as co-trustee of the Chan-Hie Kim & Sook-Chung Kim Trust ("Plaintiff"), hereby submits this reply to the opposition to Plaintiff's Motion to Remand filed by WELLS FARGO BANK, N.A., WELLS FARGO & COMPANY and VIRGEL MABINI (collectively the "Wells Fargo Defendants").

As set forth herein, nothing in the Wells Fargo Defendants' opposition negates the fact that Edge Act jurisdiction is narrowly construed and strictly limited to cases where the international banking transaction is "legally significant" and "integral" to the plaintiff's claims, which none of the defendants have shown to be the case here. As such, the Wells Fargo Defendants have failed to meet their burden to show that the instant suit is removable under 12 U.S.C. § 632, the sole ground asserted by the Bank of America defendants for removal, let alone overcome the strong presumption *against* removal jurisdiction. Because the Edge Act does not apply here, federal question jurisdiction is not present and Plaintiff therefore respectfully requests that this Court remand this case to the Superior Court of California in and for the County of San Francisco where it belongs.

## II. THE EDGE ACT DOES NOT CONFER SUBJECT MATTER JURISDICTION OVER MATTERS SUCH AS THIS ONE WHERE THE INTERNATIONAL BANKING TRANSACTION IS NOT LEGALLY SIGNIFICANT OR INTEGRALLY TIED TO THE PLAINTIFF'S STATE LAW CLAIMS IN ANY WAY.

As set forth in Plaintiff's Motion to Remand, none of Plaintiff's claims against the Wells Fargo Defendants in this matter have anything to do with where Plaintiff's money was wired, i.e., whether Plaintiff's life savings was wired to people in the United States or outside the United States makes absolutely no difference to Plaintiff's state law claims against the Wells Fargo Defendants. Plaintiff is also in no way claiming that the act of the wire transfers itself was done incorrectly, e.g., that the Wells Fargo Defendants mistakenly wired the wrong amount or wired money to the wrong recipient. What Plaintiff is alleging here is that these wire transfers, again regardless of where the money ultimately went, should not have happened in the first place under California's Elder Abuse Act, Welfare & Institutions Code § 15600, *et seq*., and California's Unfair Competition Laws

("UCL"), Business & Professions Code § 17200, *et seq*. As such, no part of Plaintiff's case against the Wells Fargo Defendants arises out of "international" or "foreign banking" sufficient to confer federal question jurisdiction under the Edge Act.

The Wells Fargo Defendants nevertheless try to fit a square peg into a round hole by comparing this case to factually inapposite cases where the core of the case involved legally significant issues of international banking such that courts have found jurisdiction under the Edge Act. (*See, e.g., Bank of America Corp. v. Lemgruber*, 385 F.Supp.2d 200 (S.D.N.Y. 2005) [arising out of U.S. banks' purchase of the stock of a Brazilian bank and several of its affiliates, including a Bahamian bank, from defendants who allegedly took part in a scheme to defraud plaintiffs by embezzling millions of dollars from the Bahamian bank]; *Warter v. Boston Secs.*, S.A., No. 03-81026-CIV-RYSKAMP/VITUNAC, 2004 U.S. Dist. LEXIS 5682 (S.D. Fla. Mar. 22, 2004) [a case brought against an Argentina securities firm and its former securities broker, two banks, and several individuals arising out of the sale of securities to foreign entities]; *Ritchie Capital Mgmt., L.L.C. v. JPMorgan Chase & Co.*, 532 B.R. 461 (S.D.N.Y. 2014) [where plaintiffs alleged that, as part of a Ponzi scheme, the defendant bank entered into blocked account agreements with European companies who established several accounts in England for subsidiaries in the Netherlands]; *In re Lloyd's Am. Trust Fund Litig.*, 928 F.Supp. 333 (S.D.N.Y. 1996) [where at issue was the responsibilities of a New York bank "administering a fund under an international agreement as part of a worldwide system to finance and settle the funds involved in underwriting insurance" by Lloyd's of London, a British insurance market, that affected 15,000 members from over 50 nations (only five percent of which were U.S. citizens) and related to worldwide risks]; *City of Stockton v. Bank of America, N.A.*, 2008 WL 5063877 (N.D. Cal. Nov. 21, 2008) [where the plaintiff "allege[d] that the harm it suffered was caused by [] foreign banks, acting in concert with domestic banks and other entities"]; *City of Stockton v. Bank of America, N.A.*, 2008 WL 4911183 (N.D. Cal. Nov. 13, 2008) [where the plaintiff sued defendants, including five foreign banks, alleging that they conspired to fix the bidding process by which public entities acquired guaranteed investment contracts].)

In contrast, the foreign component of Plaintiff's transactions here is not legally significant to Plaintiff's claims against the Wells Fargo Defendants under California's Elder Abuse Act, Welfare & Institutions Code § 15600, *et seq.*, or California's UCL, Business & Professions Code § 17200, *et seq.*, in any way. While the Ninth Circuit has recognized that the Edge Act often amounts to a "broad grant of jurisdiction," *City & Cnty. of San Francisco v. Assessment Appeals Bd.*, 122 F.3d 1274, 1276 (9th Cir. 1997), "broad" does not mean absolute. (*See, e.g., California v. Wells Fargo & Co.*, 2015 WL 4886391, at *7 (C.D. Cal. Aug. 13, 2015) [recognizing that uniformly resolving questions in favor of Edge Act jurisdiction "would lead to absurd results" ].) The Wells Fargo Defendants' proposed interpretation and application of the Edge Act here would lead to such an absurd and arbitrary result, which is not what Congress intended. (*Id.*; s*ee also, e.g., Sollitt v. KeyCorp*, 463 F.App'x 471, 473 (6th Cir. 2012) [refusing to subscribe to the "inherently limitless view" that the Edge Act confers jurisdiction if "any part" of the suit "arises out of transactions involving international or foreign banking"]; *Weiss v. Hager*, 2011 WL 6425542, at *8 (S.D.N.Y. 2011) [finding no jurisdiction because the heart of the matter was defendants defrauding plaintiff and causing him to wire funds, and the fact the accounts were in European banks was "incidental" and not "legally significant"].)

Notably, while the Wells Fargo Defendants do not address it in their opposition, the *Weiss* case is directly on point here. In *Weiss*, the plaintiff opened accounts in a New York branch of defendant Capital One and was provided with allegedly fraudulent investment advice regarding a foreign trading program by a Capital One employee. (*Weiss*, 2011 WL 6425542, at *1-4.) Based on the fraudulent advice, the plaintiff made a series of transactions, including wiring "substantial sums of money to various European bank accounts, which were controlled by defendants," and wiring $350,000 to an account in Israel. (*Id.* at *3-4.) Plaintiff sued defendants for fraud, conspiracy to commit fraud, conversion, negligent misrepresentation, breach of fiduciary duty, breach of contract, negligent supervision, negligent failure to train, negligence per se, and violations of New York General Business Law § 349 (which is similar to California's UCL statute, Business & Professions Code § 17200 *et seq.*). (*Id.* at *1.) Capital One removed the case and argued the Court had

jurisdiction over the case under the Edge Act, claiming that "[p]laintiff's case directly arises out of international banking operations, and alternatively, even if this Court finds that plaintiff's claims are only indirectly connected to international banking operations, the court still has jurisdiction because the Edge Act broadly applies to claims that involve, <u>in any way</u>, international banking transactions or financial operations." (*Id*. at *6-7, emphasis in original.) Yet the court noted it "cannot find that it has § 632 jurisdiction merely because there was a federally charted bank involved, there were banking-related activities, and there were foreign parties." (*Id.* at *7.) Rather, the court stated, it "must carefully examine the nature of the transaction said to ground 632 jurisdiction." (*Id.*) The *Weiss* court also distinguished the facts of that case from cases such as *In re Lloyd's*, which involved a bank's operation of bank trust accounts "for the benefit of and on instructions from individuals and entities all over the world." (*Id.* at *10-11.) In finding no federal question jurisdiction under the Edge Act, the *Weiss* court ruled as follows:

> The Court holds that **the international banking transactions alleged in plaintiff's complaint are not legally significant, and thus plaintiff's claims do not arise out of international banking transactions as required by the Edge Act**. On the contrary, plaintiff's claims arise out of various alleged frauds perpetrated against him in the United States. Plaintiff claims he was defrauded by Hager at a Capital One branch in New York and through various phone conversations with Hager and the other defendants. **Plaintiff's claims rest solely on state law and relate to international banking only insofar as the defendants fraudulently convinced plaintiff to wire money to various European bank accounts which were controlled by defendants**. *This connection is incidental, or as plaintiff argues, fortuitous; the defendants could have convinced plaintiff to send his money anywhere*. *That plaintiff sent money to European bank accounts is not integral to his claims*. The basis of plaintiff's claims is that he gave defendants money because of defendants' allegedly false promises. Capital One is sued because of its alleged negligence in, <u>among other things</u>, failing to supervise its employee or agent and for failing to protect the confidentiality of plaintiff's personal and account information. **This case involves no banking law issues, and none of the European banks that received plaintiff's money are sued in the complaint**. (*Id.* at *8-9, emphasis added.)

That is exactly the same situation here, i.e., where <u>the scammers could have convinced Plaintiff to send his money *anywhere* and it would not have made *any* difference to Plaintiff's claims against the Wells Fargo Defendants</u>. That is because whether Plaintiff sent the money to

*foreign* bank accounts is not legally significant to his Complaint, which only brings claims against the Wells Fargo Defendants under California's Elder Abuse Act and UCL, and none of the banks that received Plaintiff's money are named defendants here. Thus, the fact that Plaintiff's money in the present case happened to be ultimately wired to bank accounts in a foreign country, as opposed to in Florida or New York or anywhere else in the United States, is wholly irrelevant to Plaintiff's claims against the Wells Fargo Defendants. Which is precisely why Plaintiff's Complaint does not even state the countries where Plaintiff's funds were wired to by the Wells Fargo Defendants, as doing so would not change *anything* in terms of Plaintiffs' claims against the Wells Fargo Defendants, and it will likely never be known where Plaintiff's funds ultimately ended up or where the scammers were located when they were scamming Plaintiff. And as noted in Plaintiff's Motion to Remand, none of Plaintiff's actual claims against the Wells Fargo Defendants (or the Bank of America defendants, for that matter) involve any type of federal questions or any banking laws. (*See Bank of New York v. Bank of America*, 861 F. Supp. 225, 232-33 (S.D.N.Y. 1994) [no Edge Act jurisdiction if the plaintiff's claims do not require the court to "consider and apply principles of banking law to resolve them"]; *Caggiano v. Pfizer*, 384 F.Supp.2d 689, 690 (S.D.N.Y. 2005) [no federal question jurisdiction found because "a jury could find defendants liable on each and every one of the eight claims without being required to determine whether any federal law has been violated"].)

Rather, Plaintiff's claims against the Wells Fargo Defendants here are only remotely, tangentially and fortuitously related to any "international banking" at best, and as such, this case is simply not subject to Edge Act jurisdiction, as it does not principally involve the requisite foreign or international banking or financial operations. (*See e.g., Vara v. Inocenti*, No. 18-23058-CIV, 2018 WL 8415251, at *2 (S.D. Fla. Nov. 16, 2018) [the court found "the narrow interpretation" of 12 U.S.C. § 632 "more compelling" where plaintiff's claims "arise out of a dispute regarding Defendants' conduct toward [plaintiff]"]; *Speedy Stop Food Stores, LLC v. Visa, Inc.*, 2013 U.S. Dist. LEXIS 200283, at *12-13 (S.D. Tex. Dec. 26, 2013) [holding that under the "three-part nexus" between the Edge Act corporation, the banking or financial transaction, and the offshore component,

PLAINTIFF'S REPLY TO OPPOSITION TO MOTION TO REMAND BY WELS FARGO DEFENDANTS  -5-  Case No. 3:21-cv-05405-JD

"[t]he involvement of any foreign banks [was] fortuitous and legally insignificant to Speedy Stop's lawsuit" and remanding the case];[1] *Landesbank Baden-Württemberg v. Capital One Financial Corp.*, 954 F.Supp.2d 223, 226-27 (S.D.N.Y. 2013) [finding the involvement of a foreign transaction fortuitous with respect to the matters placed in issue by the case, thus insufficient to satisfy the requirements of Edge Act removal]; *Sealink Funding Ltd. v. Bear Stearns & Co. Inc.*, 2012 WL 4794450, at *14-16 (S.D.N.Y. Oct. 9, 2012) [finding the defendant's conduct had no international dimension, that the involvement of foreign entities was fortuitous, and that the foreign transaction involvement was too attenuated to support Edge Act jurisdiction].) Therefore, just as in *Weiss* and the cases referenced above, there is no federal question jurisdiction under the Edge Act here.

In conclusion, Edge Act jurisdiction is narrowly construed and strictly limited to cases where the international banking transaction is "legally significant" and "integral" to the plaintiff's claims, which none of the defendants have shown to be the case here. Given the presumption that removal statutes are to be strictly construed (*Telecredit*, 679 F.Supp. at 1103) and that generally "courts have interpreted § 632 narrowly" (*Bank of New York*, 861 F.Supp. at 232), there is not an adequate basis to conclude that the Edge Act applies here for the reasons set forth herein and in Plaintiff's Motion to Remand. Because the Wells Fargo Defendants have failed to meet their burden to show that the instant suit is removable under 12 U.S.C. § 632, let alone overcome the strong presumption against removal jurisdiction (*Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009)), Plaintiff respectfully requests that this Court remand this case to the Superior Court of California in and for the County of San Francisco where it belongs.

---

[1] The *Speedy Stop* court also noted that cases such as *Pinto v. Bank One Corp.,* 2003 WL 21297300 (S.D.N.Y. 2003), which the Wells Fargo Defendants rely on in their opposition, "espoused a liberal reading of the Edge Act that, in this Court's analysis, does not survive the [*Am. Int'l. Group, Inc. v. Bank of America Corp.*, 712 F.3d 775 (2d Cir. 2013)] holding," although noting that "[e]ven in *Pinto*, however, Edge Act removal was considered to require that the offshore banking or financial transaction – regardless of how incidental – be 'legally significant' to the issues in the case." (*Speedy Stop*, 2013 U.S. Dist. LEXIS 200283, at *13-14, emphasis added.)

## III. PRINCIPLES OF COMITY SUPPORT THE REMAND OF THIS CASE BACK TO STATE COURT.

As set forth in *Grable & Son Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 313-14 (2005):

> Federal-question jurisdiction is usually invoked by plaintiffs pleading a cause of action created by federal law, but this Court has also long recognized that such jurisdiction will lie over some state-law claims that implicate significant federal issues [citations omitted]. Such federal jurisdiction demands not only a contested federal issue, but a substantial one. And the jurisdiction must be consistent with congressional judgment about the sound division of labor between state and federal courts governing § 1331's application. These considerations have kept the Court from adopting a single test for jurisdiction over federal issues embedded in state-law claims between non-diverse parties. <u>Instead, the question is whether the State-law claim necessarily stated a Federal issue, actually disputed and substantial, which a Federal forum may entertain without disturbing a congressionally approved balance of Federal and State judicial responsibilities</u>. (*Id.*, emphasis added.)

Here, Plaintiff's claims do not present a substantial dispute or controversy regarding the validity, construction or effect of any federal law or banking law in any way. Rather, Plaintiff relies exclusively upon state claims and laws, as he is entitled to do, which provide an ample and proper basis for resolution. "It is not sufficient to show that a state law claim simply touches upon or implicates a federal issue, but rather determination of the federal issue must be *necessary* to resolve the claim." (*California v. H&R Block, Inc*., 2006 U.S. Dist. LEXIS 69472, at *4 (N.D. Cal. Sep. 18, 2006), emphasis in original). Yet the Wells Fargo Defendants would have this Court believe the existence of a completely fortuitous and legally insignificant fact that was not alleged in Plaintiff's Complaint, i.e., the location where Plaintiff's money was wired, allows removal notwithstanding Plaintiff's exclusive reliance upon state law as detailed above. This assertion is inconsistent with the principle of limited jurisdiction, the premise that a plaintiff is the master of his case, and with comity, placing this Court in the position of being forced to regularly interpret state laws – notwithstanding the availability of state Courts. These concerns are particularly relevant where, as here, Plaintiff is an elderly California resident who filed in state court under California's elder abuse protection and unfair business practices statutes.

As discussed at length above, the removal of this action fails here. Thus, far from being clear that these circumstances demand removal of the case to this Court, there are overwhelming reasons against doing so. Plaintiff accordingly respectfully submits that the Court should reject the attempt to remove the instant action to this Court and thereby stymie the methods chosen by Plaintiff to vindicate the rights of elderly citizens such as himself, and instead remand the case back to the Superior Court of California in and for the County of San Francisco.

## IV. CONCLUSION

For the reasons set forth herein, Plaintiff respectfully requests that this Court grant Plaintiff's motion for lack of subject matter jurisdiction and remand this action to the Superior Court of California in and for the County of San Francisco.

Dated: September 3, 2021  NEEDHAM KEPNER & FISH LLP

By: _____
Kirsten Fish
Attorneys for Plaintiff