Douglas A. Thompson (California Bar No. 155619)
douglas.thompson@bclplaw.com
Linda C. Hsu (California Bar No. 239880)
linda.hsu@bclplaw.com
Traci G. Choi (California Bar No. 307245)
traci.choi@bclplaw.com
**BRYAN CAVE LEIGHTON PAISNER LLP**
120 Broadway, Suite 300
Santa Monica, California  90401-2386
Telephone:     (310) 576-2100
Facsimile:      (310) 576-2200

Attorneys for Defendants
BANK OF AMERICA, N.A., BANK OF AMERICA
CORPORATION, and NANCY BECERRA

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| CHAN-HIE KIM, individually and as co-trustee of the Chan-Hie Kim & Sook-Chung Kim Trust,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO, N.A.; WELLS FARGO & COMPANY; BANK OF AMERICA, N.A.; BANK OF AMERICA CORPORATION; VIRGEL MABINI; NANCY BECERRA; DOES 1-100, inclusive<br><br>Defendants. | Case No. 3:21-cv-05405-JD<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS TO DISMISS COMPLAINT OF PLAINTIFF**<br><br>Honorable James Donato<br><br>Date:          September 30, 2021<br>Time:          10:00 a.m.<br>Courtroom:   11 |

Defendants Bank of America, N.A. ("BANA"), Bank of America Corporation ("BAC"), and Nancy Becerra (collectively, "Defendants") submit this Reply in support of their Motion for an Order Dismissing the Complaint ("Complaint") of Plaintiff Chan-Hie Kim, individually and as co-trustee of the Chan-Hie Kim & Sook-Chung Kim Trust ("Plaintiff") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

## TABLE OF CONTENTS

Page

I.      INTRODUCTION .................................................................................................1

II.     PLAINTIFF FAILS TO PLEAD HIS CLAIMS WITH PARTICULARITY ....................2

III.    PLAINTIFF'S CLAIM FOR FINANCIAL ELDER ABUSE FAILS. ............................4

        A.      Plaintiff Fails to Allege Defendants "Assisted" the Wrongful Taking..................5

        B.      Plaintiff Fails to Allege Defendants "Took" Plaintiff's Money for a
                Wrongful Use or With Intent to Defraud...............................................9

IV.     PLAINTIFF FAILS TO STATE A CLAIM UNDER THE UCL. ..................................10

V.      THE COURT SHOULD NOT GRANT LEAVE TO AMEND.......................................11

VI.     CONCLUSION.................................................................................................11

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

REPLY MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS
3:21-CV-05405-JD

**Page(s)**

**Cases**

*Cervantes v. Countrywide Home Loans, Inc.*,
   656 F.3d 1034 (9th Cir. 2011) ...................................................................................10

*Chavers v. GMAC Mortg. LLC*,
   2012 WL 2343202 (June 20, 2012) .............................................................................2

*Chie v. Citigroup, Inc.*,
   2021 WL 633868 (N.D. Cal. Feb. 18, 2021) ...............................................................2

*Cork v. CC-Palo Alto, Inc.*,
   -- F.Supp.3d --, 2021 WL 1561644 (N.D. Cal. Apr. 21, 2021) ...............................6, 7

*Cunningham v. Quick Whiz Funding, Inc.*,
   2019 WL 8013755 (C.D. Cal. Dec. 12, 2019) .............................................................2

*Das v. Bank of America, N.A.*,
   186 Cal.App.4th 727 (2010) .....................................................................................5, 6

*Diaz v. Intuit, Inc.*,
   2018 WL 2215790 (N.D. Cal. May 15, 2018) .............................................................6

*Garrison v. Ringgold*,
   2019 WL 2089509 (S.D. Cal. May 13, 2019) .............................................................2

*Heredia v. Sunrise Senior Living LLC*,
   2019 WL 5149854 (C.D. Cal. Mar. 4, 2019) ..............................................................2

*Moran v. Bromma*,
   675 Fed.Appx. 641 (9th Cir. 2017) .............................................................................2

*Rosales v. Citibank*,
   133 F.Supp.2d 1177 (N.D. Cal. 2001) ......................................................................10

*Williams v. National Western Life Insurance Company*,
   65 Cal.App.5th 436, 279 Cal.Rptr.3d 620 (2021) .......................................................7

**Statutes**

Welf. & Inst. Code § 15610.30......................................................................2, 6, 8, 9

Welf. & Inst. Code § 15600...........................................................................................1

Welf. & Inst. Code § 15657.6.......................................................................................9

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

**Rules**

Fed R. Civ. Proc. 9(b) ................................................................................................................2, 4

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

The California Legislature enacted the financial elder abuse statutes to protect the elderly from financial abuse and provide recourse against people who participated in wrongfully taking elders' property. *See* Welf. & Inst. Code § 15600.  Assuming the allegations regarding the alleged scam in the Complaint are true, Plaintiff likely can, and should, recover against the alleged scammers named as the unidentified DOE defendants under the elder financial abuse statutes. They actively manipulated Plaintiff into sending his funds overseas to third parties also participating in the scam. That does not include defendants BANA, BAC or Nancy Becerra.

Contrary to Plaintiff's contentions, the financial elder abuse statutes do not grant Plaintiff a right of action against any person or entity who provided legitimate services at Plaintiff's direction without specific knowledge of any scam, which in fact Plaintiff will have to admit in due course that he concealed from Defendants.  Plaintiff forces an overly expansive reading of the statute, and in essence seeks to impose strict liability on all persons and entities who followed Plaintiff's instructions and as a result, played any role in effectuating the actual transfer of money to the scammers, whether those persons or entities knew of the scam or not.  That is not the law nor the intent of the statute.  To allege Defendants "assisted" in allowing the scammers to take Plaintiff's money, Plaintiff must allege Defendants knew of the scam and made the conscious decision to help the scammers.  Rather, the only person BANA attempted to help was Plaintiff in carrying out the wire transfers he requested pursuant to his instructions.  To the extent Plaintiff has facts demonstrating any of the Defendants knew of the alleged scam or that Plaintiff was truthful with Defendants about the true reason for the requested wire transfers, Plaintiff must plead them with particularity.  Defendants contend he cannot.  Defendant BAC, for example, had no direct customer interaction with Plaintiff and provided no banking services to him.  Accordingly, at the very least, BAC should be dismissed.

Nor can Plaintiff state a claim for financial elder abuse in BANA's charging of disclosed wire fees and Plaintiff's contractual agreement to pay such banking service fees.  Plaintiff's

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1  opposition concedes by silence that the wire fees were charged in accordance with the parties'

2  contract, and that Plaintiff agreed to pay them at the time he requested the wires.  That the wire

3  transactions Plaintiff requested later turned to be for fraudulent purposes does not somehow

4  establish the fees were also improperly collected.  There is no dispute that BANA effectuated the

5  wire transfers pursuant to Plaintiff's instructions, on terms to which Plaintiff agreed in writing at

6  the time.  Plaintiff cannot allege any facts to support his claim that BANA obtained or retained the

7  wire fees for a wrongful use or with intent to defraud.

8      For the reasons stated herein and in the Motion to Dismiss, Defendants respectfully request

9  the Court grant the motion without leave to amend.

10  **II.      PLAINTIFF FAILS TO PLEAD HIS CLAIMS WITH PARTICULARITY**

11      As an initial matter, Plaintiff claims the heightened pleading standard does not apply to the

12  financial elder abuse claim due to the 2008 amendment of Section 15610.30.  But Plaintiff cites to

13  no authority which supports his position.  To the contrary, recent federal decisions have

14  consistently applied the heightened pleading standard under Rule 9(b) for financial elder abuse

15  claims which are grounded in fraud.  *See Chie v. Citigroup, Inc.*, 2021 WL 633868, at *7 (N.D.

16  Cal. Feb. 18, 2021); *Cunningham v. Quick Whiz Funding, Inc.*, 2019 WL 8013755, at *5 (C.D.

17  Cal. Dec. 12, 2019); *Garrison v. Ringgold*, 2019 WL 2089509, at *9 (S.D. Cal. May 13, 2019);

18  *Heredia v. Sunrise Senior Living LLC*, 2019 WL 5149854, at *4 (C.D. Cal. Mar. 4, 2019); *see also*

19  *Moran v. Bromma*, 675 Fed.Appx. 641, 646 (9th Cir. 2017).  Plaintiff's claim for financial elder

20  abuse is a fraud-based claim.  Plaintiff's claims arise from the scammers' fraudulent inducement

21  of Plaintiff to transfer money to them, and the alleged misconduct of BANA in carrying out

22  Plaintiff's wire instructions and effectuating the actual transfer of money.  Plaintiff's claims must

23  be pled with sufficient particularity.

24      Plaintiff further mischaracterizes the pleading standard set forth in *Chavers v. GMAC*

25  *Mortg. LLC*, 2012 WL 2343202, at *7 (June 20, 2012), which expressly stated that the claim

26  "must be pleaded with particularity" under both the pre-2008 and post-2008 amendment of the

27  statute.  In *Chavers,* the court found the plaintiff pled the financial elder abuse claim "with

28

REPLY MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS
3:21-CV-05405-JD

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1  particularity under either version of the statute[,]" where the alleged misconduct occurred both

2  before and after the amendment. *Id.* *Chavers* in no way suggested the particularity pleading

3  standard only applied to allegations of conduct which predated the amendment.

4  **BAC and Nancy Becerra.** Plaintiff fails to allege his financial elder abuse claim with

5  sufficient particularity, especially as to BAC and Nancy Becerra. With respect to BAC, Plaintiff

6  contends Defendants have not provided any information by way of documents which could be

7  judicially noticed that BAC is a holding company, and further, that "Defendants have not provided

8  any documents to establish that bank holding companies categorically do not engage in banking

9  activities of the kind at issue here[.]"[1] (Opp. 1:14-21.) But the burden is not on Defendants to

10

11  [1]  Plaintiff's claim that "if Defendants were to provide the information alleged in their

12  motion in a sworn declaration to Plaintiff's counsel, Plaintiff would be willing to dismiss BAC
**once the Court has ruled on Plaintiff's Motion to Remand**" (Opp. 1:25-27 (emphasis added))

13  demonstrates the gamesmanship that is at play here. The Declaration of Tom Jordan (ECF No.
29) demonstrates the applicable Deposit Agreement and Disclosures governing the banking

14  services provided is between Plaintiff and BANA. Statements for Plaintiff's account were issued
by BANA. The Funds Transfer Agreements to which Plaintiff agreed when submitting each wire

15  transfer request was also between Plaintiff and BANA. The Declaration of Tom Jordan is thus the
very "sworn declaration" Plaintiff contends he needs to dismiss the improperly named defendant,

16  yet he states he will only to dismiss BAC *after* the Court rules on Plaintiff's Motion to Remand.

17  Plaintiff's refusal to dismiss the holding companies and "managing agents" against whom he
alleges no specific allegations of wrongdoing until after the Court rules on his Motion to Remand

18  only demonstrates Plaintiff's transparent attempt to avoid federal court jurisdiction. Regardless,
should the Court seek and request such judicially noticeable material, Defendant BAC can and

19  will augment the record here with a Request for Judicial Notice, which includes BAC's publicly
available website and other regulatory filings that demonstrate BAC is a holding company. For

20  the Court's and Plaintiff's ease of reference, here for example, is the Federal Reserve/ FFIEC

21  National Information Center website link:
https://www.ffiec.gov/npw/Institution/Profile/1073757?dt=20141231.

22

23  Plaintiff's attempt to forum shop is made all the more apparent in his opposition. Plaintiff
contends his "counsel previously obtained a ruling in a similar financial elder abuse case …" and

24  discusses at length two demurrer rulings issued by the San Francisco Superior Court, in cases
which have no relationship to Plaintiff or his claims other than that the same defendants were

25  involved. (Opp. 9:1-5.) The only reasonable inference is that Plaintiff has filed this action in San
Francisco Superior Court, 400 miles away from San Bernardino County where he resides and in

26  which allegedly improper "face-to-face" wire transfer requests took place, in hopes of obtaining a
similar ruling in San Francisco, a venue with no connection to Plaintiff's claim. The California

27  superior court rulings are neither binding nor persuasive authority, and should be disregarded.

28

demonstrate BAC is merely a holding company, but rather on Plaintiff to plead sufficient facts as to each defendant to state a plausible claim for financial elder abuse. Plaintiff's categorical allegations which lump together all "BOFA DEFENDANTS" – BANA (Plaintiff's actual banking institution), along with BAC and Nancy Becerra – without any effort to distinguish or differentiate conduct attributable to BAC or Nancy Becerra, demonstrates Plaintiff's allegations fall woefully short of the heightened pleading standard under Rule 9(b).

Plaintiff's allegation that Becerra was "employed by BOFA as a managing agent" does not allege with sufficient particularity what Plaintiff alleges Becerra actually did to assist the scammers in taking, secreting, appropriating, obtaining or retaining Plaintiff's money. Plaintiff's generalized allegations relating to "a bank manager" and "BOFA's managing agents" are insufficient as a matter of law to state a claim as to Ms. Becerra. The Court should grant the motion as to BAC and Nancy Becerra.

## III.   PLAINTIFF'S CLAIM FOR FINANCIAL ELDER ABUSE FAILS.

Plaintiff concedes he has not, and cannot, allege any actual knowledge by BANA of the scam to which Plaintiff fell victim. Plaintiff does not and cannot allege that he told any BANA employee that he had been instructed by scammers to make the wires he requested. Plaintiff does not and cannot allege that he was truthful in providing information for and executing the BANA Funds Transfer Request Authorizations he submitted. But Plaintiff contends his claims should survive the motion to dismiss because (1) Plaintiff alleged Defendants "knew or should have known" of the scam, and "but for" Defendants' conduct, the scammers could not have taken Plaintiff's money, and (2) Plaintiff sufficiently alleged Defendants "took" Plaintiff's property when it charged and retained wire transfer fees for wires that transferred the money to the scammers at Plaintiff's request. Plaintiff's claims fail. Had Plaintiff been honest and truthful with Defendants regarding the reasons for the requested wire transfers and his discussions he had with the scammers, he likely would not have fallen victim to the alleged scam and would not have

---

This Court is entitled to make its own determination based on the facts alleged and ultimately presented in this case.

REPLY MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS
3:21-CV-05405-JD

1    suffered the damages he now seeks from Defendants.  In the absence of any specific allegations

2    regarding Defendants' alleged interactions with Plaintiff or alleged knowledge of the alleged

3    specific scam, Plaintiff's claims must fail.

4           **A.**       **Plaintiff Fails to Allege Defendants "Assisted" the Wrongful Taking**

5           Plaintiff's claim for financial elder abuse based on Defendants' alleged "assistance" of the

6    scammers fails as a matter of law.  First and foremost, Plaintiff must adequately allege Defendants

7    "assisted" in the wrongful taking of his money.  He cannot.  A party does not "assist" in wrongful

8    conduct, merely because "but for" that party's conduct, the wrongful conduct could not have

9    occurred.  (See, Opp. 8:10-12.)  Applying Plaintiff's interpretation of "assist" to merely require a

10   "but for" analysis would implicate a number of unintended contributors.  For example, "but for"

11   the assistance of a spouse who may have driven the elderly person to the financial institution, the

12   wrongful conduct would not have occurred.  "But for" the assistance of a relative who may have

13   helped the elderly person read or fill out the forms, the wrongful conduct would not have occurred.

14   The legislature could not have intended such a far-reaching interpretation of "assist" as Plaintiff

15   suggests.

16          Black Law's Dictionary defines "assist" as "To help; aid, succor; lend countenance or

17   encouragement to; participate in as an auxiliary."  Consistent with this definition, *Das v. Bank of*

18   *America, N.A.*, 186 Cal.App.4th 727, 744 (2010), stated to "assist" means to "aid and abet," which

19   in turn requires the person to "(a) know *the other's* conduct constitutes a breach of duty and gives

20   substantial assistance or encouragement to *the other* to so act or (b) gives substantial assistance to

21   *the other* in accomplishing a tortious result and the person's own conduct, separately considered,

22   constitutes a breach of duty to the third person."  (Emphasis added).  If BANA assisted anyone,

23   BANA assisted Plaintiff, not the scammers.  Plaintiff requested the international banking services,

24   and BANA merely effectuated his specific requests.  The Complaint alleges no facts, nor does

25   Plaintiff contend any exist, which show Defendants knew of the scammers or their intentions to

26   defraud Plaintiff, or knew that Plaintiff was providing untruthful information on the Funds

27   Transfer Request Authorization forms he executed.  Rather, despite being told by the scammers

28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

they were calling from the Bank of America Fraud Prevention department, Plaintiff fails to allege he identified any such facts, or disclosed any other conversations he had with the scammers to Defendants. Nothing in the Complaint suggests Defendants "lent countenance or encouragement" to the scammers ("the others" in *Das*), where Plaintiff cannot even allege Defendants knew who they were. Nor did Defendants "succor" the scammers ("the others" *in Das*).

Plaintiff attempts to save his claim by arguing no "actual knowledge" is required. Plaintiff contends that following the amendment of Section 15610.30, *Das* is wholly inapplicable, and that a defendant can be liable for financial elder abuse if it "knew or should have known" it was assisting in financial elder abuse. Plaintiff contends in essence that his threadbare conclusory allegations sufficiently allege a claim against Defendants, because the legislature "intended to make it easier to prosecute financial abuse of the elderly." Plaintiff's arguments are unavailing.

First, Plaintiff assumes that if he alleges Defendants "knew or should have known" the transfers were likely to be harmful to Plaintiff, Plaintiff has sufficiently alleged Defendants are liable under Section 15610.30. But Plaintiff must still allege that Defendants "assisted" in the wrongful conduct, which necessarily requires Plaintiff to allege Defendants actually knew of the underlying tortious conduct. The 2008 amendment did not make any changes to the requirement that Plaintiff must allege Defendants "assisted" in the wrongful conduct. And as explained above, Plaintiff has not alleged any facts upon which the Court can conclude Defendants "assisted" in the wrongful taking of Plaintiff's property.

*Cork v. CC-Palo Alto, Inc.*, -- F.Supp.3d --, 2021 WL 1561644 (N.D. Cal. Apr. 21, 2021), is instructive. In *Cork*, the court relied on *Das* in its analysis of plaintiffs' allegations as to defendants who "assisted" in the taking of plaintiffs' property, even though the conduct arose post-amendment of the statute:

> The term 'assists' in this provision has been interpreted to mean aiding and abetting. *Das v. Bank of America, N.A.*, 186 Cal. App. 4th 727, 744-745, 112 Cal.Rptr.3d 439 (2010). Under California common law, liability may be imposed for aiding and abetting a tort when the person "(a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

6

third person." *Id.* at 744, 112 Cal.Rptr.3d 439 (internal quotation marks and citations omitted). **The "substantial assistance" requirement for aiding and abetting claims "necessarily requires a defendant to reach a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act."** *Diaz v. Intuit, Inc.*, 2018 WL 2215790, at \*8 (N.D. Cal. May 15, 2018).

*Id.* at \*8 (emphasis added). In *Cork*, residents of a senior residential community sued the entities that owned and managed the residential community, in connection with alleged misconduct relating to entrance fees charged by the owner of the community. Plaintiffs alleged CRMLP, an entity which provided the day-to-day management of the community and was in charge of its operations, and also was responsible for the financial management of the community, assisted in financial elder abuse of the owner entity – CC-PA. Plaintiffs further alleged CC-DG created CC-PA "for the purpose of inducing Plaintiffs and the Class to loan substantial Entrance Fees to CC-PA, which would then move upstream to CC-DG." The court found, based on these allegations, the plaintiff sufficiently alleged the defendant "assisted" in the financial abuse and knew or should have known that their conduct was likely to be harmful to Plaintiffs. *Id.*

Here, unlike *Cork*, Plaintiff alleges no facts which show Defendants had any involvement in the fraudulent scam to which Plaintiff fell victim, let alone "reach[ed] a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act." As Plaintiff concedes, he does not, and cannot, allege any facts to demonstrate any of the named Defendants consciously decided to *help* the scammers take Plaintiff's money. Moreover, Plaintiff does not and cannot allege that he shared any information about the scam with Defendants. Unlike *Cork*, Plaintiff alleges no affiliation or relationship between the named Defendants and the scammers. Plaintiff alleges no facts to demonstrate Defendants even knew the scammers. To the contrary, BANA simply followed Plaintiff's wire transfer instructions, which identified individual recipients of the wires who held accounts at other banks.

Second, Plaintiff's only allegation to support his conclusory claim that Defendants "knew or should have known" Plaintiff was likely to be harmed is that the wire transactions were "uncharacteristic" and that Defendants "knew of scams such as the 'tech support scam[.]'" (Opp. 11:20-21.) But Plaintiff alleges nothing which shows Defendants actually knew or should have

REPLY MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS
3:21-CV-05405-JD

known Plaintiff was being scammed – Plaintiff does not allege Defendants knew any of the recipients to be scammers, or spoke to the scammers, or heard from Plaintiff any facts from which Defendants could deduce Plaintiff was transferring moneys because he was being scammed. "Mere suspicious circumstances do not show elder abuse." *Williams v. National Western Life Insurance Company*, 65 Cal.App.5th 436, 279 Cal.Rptr.3d 620, 644 (2021) (citing *Das*).  Plaintiff alleges nothing more than "suspicious" circumstances – Plaintiff alleges the wires were "uncharacteristic," such that Defendants should have stopped them.  That is insufficient as a matter of law to allege Defendants "knew or should have known" Plaintiff was being harmed, particularly where Plaintiff alleges *no* facts to demonstrate he told any employee or agent of BANA his actual specific reasons for requesting the wire transfers, as opposed to the reasons he provided on the Funds Transfer Request Authorizations.

Plaintiff contends the legislative history of Section 15610.30 supports his claims.  It does not.  In 2000, the Legislature sought to impose liability as to persons who "assist" in the taking, secreting, appropriating, obtaining, or retaining of real or personal property of an elder in violation of Section 15610.30(a)(1).  (See, Fish Decl., Ex. 2.)  But nothing in the legislative history indicates the Legislature sought to impose strict liability on *anyone* that could have possibly been involved in the taking of the property, even those who have no actual knowledge of the underlying wrongful conduct.

And in 2008, the Legislature again amended the statute, so that "[a] person is deemed to have taken the property in bad faith if the person knew or should have known that the elder had a right to transfer or make the property available at the time of the taking."  (See, Fish Decl., Ex. 1 (emphasis added).)  But again, nowhere in the 2008 legislative history is there any indication of the Legislature's intent to impose strict liability on those who play any role in facilitating the taking of property of an elder by a bad actor, regardless of whether they had actual knowledge of such fraudulent conduct.  Nothing in either the 2000 or the 2008 amendment indicates the Legislature intended a banking institution to be strictly liable for financial elder abuse if all it did was facilitate the actual transfer of money, without any knowledge of the reason for the transfer or

REPLY MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS
3:21-CV-05405-JD

the fraudulent scheme, or of specific distress on the part of the elder making the requests.  Again, it is telling that Plaintiff fails to allege that he disclosed his communications with the scammers to any of the Defendants.  None of the scammers is alleged to have accompanied Plaintiff into the BANA financial center or to have had verbal communications with Defendants regarding the requested wires.  Further, the Legislature could have easily defined what it means to "assist" the taking of property in bad faith and expressly stated that a person "assists" in the taking of property where it plays any part in the transaction, whether it knew of the underlying tort or not.  The Legislature included no such definition.

Plaintiff has not stated any facts to support his claim that Defendants "assisted" in the wrongful taking of his property, or that Defendants "knew or should have known" complying with Plaintiff's wire transfer requests would likely be harmful to Plaintiff.  BANA was merely providing Plaintiff a service, and assisting *him*, in what it believed to be financial transactions Plaintiff desired.  These facts demonstrate Plaintiff cannot state a plausible claim for financial elder abuse under Section 15610.30(a)(2) as a matter of law.

**B.** **Plaintiff Fails to Allege Defendants "Took" Plaintiff's Money for a Wrongful Use or With Intent to Defraud.**

As a last resort, Plaintiff claims he has sufficiently alleged a claim for the "direct" taking of his money by Defendants, in the form of wire transfer fees totaling $1,575.  He has not. Plaintiff concedes by silence that BANA charged the fees in accordance with Plaintiff's agreement with BANA in providing the wire transfer services.  Plaintiff alleges *no* facts which demonstrate that at the time BANA charged the agreed wire fees, it knew or should have known charging the $30 to $45 wire transfer fees would likely be harmful to Plaintiff or was done "with an intent to defraud."  Plaintiff paid for a service, and BANA carried out that service.  There is no dispute that BANA carried out the wire transfers as directed by Plaintiff, and Plaintiff cannot allege any unlawful "direct" taking of money simply because Plaintiff realized the recipients of the wires were scammers.

Plaintiff further claims he is now entitled to a return of the wire transfer fees pursuant to

9

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1    Section 15657.6.  (Opp. 113:18-21.)  Plaintiff has not sufficiently alleged a claim under that

2    statute, which requires the plaintiff to not only be elderly, but "lack capacity pursuant to Section

3    812 of the Probate Code, or [be] of unsound mind, but not entirely without understanding,

4    pursuant to Section 39 of the Civil Code[.]"  Welf. & Inst. Code § 15657.6.  The only allegation in

5    the Complaint with respect to Plaintiff's mental capacity is that Plaintiff "is currently 85 years-old

6    and suffers from cognitive decline[.]"  (Compl. ¶ 4.)  Plaintiff has not alleged he lacked capacity

7    or that he was of unsound mind at the time of the wire transactions.  Notably, even the "cognitive

8    decline" allegation is not specific to or tethered to the dates of his wire transfer requests.  He has

9    not sufficiently alleged a claim under Section 15657.6.

10   **IV.     PLAINTIFF FAILS TO STATE A CLAIM UNDER THE UCL.**

11          Plaintiff maintains his UCL claim should survive the motion to dismiss because it is based

12   on his financial elder abuse claim.  For the reasons set forth above, and in the moving papers,

13   Plaintiff's UCL claim fails along with the financial elder abuse claim.

14          Plaintiff further relies on *Rosales v. Citibank*, 133 F.Supp.2d 1177, 1181-82 (N.D. Cal.

15   2001), claiming that Plaintiff can recover the moneys he wired to the scammers from the named

16   Defendants under a UCL claim.  In *Rosales*, the plaintiff sued Citibank for, among other things,

17   refusing to credit back approximately $2,000 back to plaintiff's account when plaintiff discovered

18   such amounts had been withdrawn from his account without his consent or approval.  But the

19   allegations in *Rosales* are critically different from those alleged here – "[t]he allegations in the

20   complaint may be fairly read that Citibank allowed an **unauthorized person** to withdraw money

21   from that account."  *Id.* at 1181 (emphasis added).  Here, Plaintiff admits he *authorized* the

22   transfers at issue.  The Funds Transfer Request Authorizations contain plain language warning

23   that monies will be transferred according to the instructions Plaintiff provided.  Plaintiff provides

24   no legal authority which allows him to recover money he himself authorized to be transferred out

25   of his account, or to recover fees he agreed to pay in exchange for such services at the time of the

26   transfer.

27

28

REPLY MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS
3:21-CV-05405-JD

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1 | **V.**     **THE COURT SHOULD NOT GRANT LEAVE TO AMEND**

2       The Court may deny leave to amend where the "proposed amendments would fail to cure

3 the pleading deficiencies and amendment would be futile." *Cervantes v. Countrywide Home*

4 *Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011). Plaintiff does not seek leave to amend in his

5 opposition. Nor does Plaintiff's opposition offer any additional facts upon which the Court can

6 conclude he can amend the complaint to state a claim against the Defendants. Plaintiff's claims

7 fail as a matter of law. Leave to amend would be futile. The Court should grant the motion to

8 dismiss without leave to amend.

9 | **VI.**     **CONCLUSION**

10       For the foregoing reasons, Defendants respectfully request that the Court dismiss the

11 Complaint with prejudice.

12

13 Dated: September 7, 2021

Douglas A. Thompson
Linda C. Hsu
Traci G. Choi
**BRYAN CAVE LEIGHTON PAISNER LLP**

By:     */s/Traci G. Choi*
       Traci G. Choi
Attorneys for Defendants
BANK OF AMERICA, N.A., BANK OF AMERICA
CORPORATION, and NANCY BECERRA

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS
3:21-CV-05405-JD