UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHAN-HIE KIM,

        Plaintiff,

    v.

WELLS FARGO, N.A., et al.,

        Defendants.

Case No. 21-cv-05405-JD

**ORDER RE REMAND**

Re: Dkt. No. 25

Plaintiff Chan-Hie Kim was the victim of a fraudulent scheme that took from him, at age 85, approximately $2 million in lifetime savings. Kim suffers from cognitive decline and was deceived by scammers into believing that his bank accounts had been hacked. Over a period of just a few weeks, he wired all of his savings to new accounts maintained by the scammers. Kim sued Wells Fargo, Bank of America, and individual bank employees, in the Superior Court for the City and County of San Francisco on a California state law claim of financial elder abuse under Welfare & Institutions Code Section 15610.30, and an attendant unfair competition claim under Business & Professions Code Section 17200 based on the same allegations. Dkt. No. 1-2. He alleges that the banks and their employees ignored obvious signs of elder abuse manifested by Kim's flurry of wire transfers in high dollar amounts, and compounded the injury by charging him substantial fees for the transfers. Kim seeks restitution and damages.

Bank of America filed a timely notice of removal on federal question grounds under 28 U.S.C. § 1441(a) and the Edge Act, 12 U.S.C. § 632, which created original jurisdiction over civil cases arising out of international or foreign banking transactions. Dkt. No. 1. The hook for the application of the Edge Act is that the wire transfers were sent to accounts in overseas banks. Kim has asked to remand the case to state court. Dkt. No. 25. Bank of America and Wells Fargo

1    separately opposed the request. Dkt. No. 31 (Bank of America); Dkt. No. 32 (Wells Fargo). The

2    parties' familiarity with the record is assumed, and the case is remanded to the Superior Court.

3         As the Edge Act provides in pertinent part:

> Notwithstanding any other provision of law, all suits of a civil nature at common law or in equity to which any corporation organized under the laws of the United States shall be a party, arising out of transactions involving international or foreign banking . . . or out of other international or foreign financial operations . . . shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such suits; and any defendant in any such suit may, at any time before the trial thereof, remove such suits from a State court into the district court of the United States for the proper district by following the procedure for the removal of causes otherwise provided by law.

12 U.S.C. § 632.

     The scope of this jurisdictional grant has not been clearly defined. As the Sixth Circuit noted in an unpublished decision, few courts have written on the issue, and the case law is "relatively sparse." *Sollitt v. Keycorp*, 463 Fed. App'x 471, 474 (6th Cir. 2012) (unpublished). A consensus has yet to emerge. *See Pham v. JPMorgan Chase Bank, N.A.*, No. 13-cv-04209, 2014 WL 231913, at *4 (N.D. Cal. Jan. 21, 2014) (noting split in courts between a broad and narrow construction of Edge Act jurisdiction). Our circuit has determined that a separate section of the Edge Act, which grants original jurisdiction in the district courts for cases involving a federal reserve bank, "is written in the broadest possible language" and signals Congress's "strong" and "unequivocal" intent to provide a federal forum for those entities. *See City & Cnty. of San Francisco v. Assessment Appeals Bd.*, 122 F.3d 1274, 1276 (9th Cir. 1997). But this section is specific to federal reserve banks, and does not contain the qualifier applicable here that the lawsuit must arise out of a transaction involving international or foreign banking. Consequently, the circuit's jurisdictional analysis is not binding in this case.

     The Court need not decide the scope of Section 632 to answer the remand question at hand. The parties agree, as they must, that defendants bear the burden of establishing federal jurisdiction for purposes of removal. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004). The parties also agree that a three-part test widely adopted by the courts governs the remand analysis. *See* Dkt. No. 25 at 4-5; Dkt. No. 31 at 5; Dkt. No. 32 at 4. The test is based on the plain language

of Section 632, and provides, in a formulation stated by the Second Circuit, that a case may be removed to federal court when: (1) the lawsuit is a civil action in law or equity; (2) a corporation organized under the laws of the United States is a party; and (3) the lawsuit arises out of transactions involving international or foreign banking. *American Int'l Grp., Inc., v. Bank of America Corp.*, 712 F.3d 775, 780 (2d Cir. 2013); *see also Retailers Nat'l Bank v. Harding*, No. C 03-4190 CW, 2006 WL 618282, at *2 (N.D. Cal. June 30, 2006) (same elements). The first and second elements are readily met, and none of the parties suggest otherwise. The propriety of the removal depends entirely on the third element, namely whether the claims in the complaint arose out of international banking transactions.

They did not. The gravamen of the complaint is that the banks facilitated financial elder abuse by ignoring the warning signs of a cognitively impaired and elderly customer suddenly transferring millions of dollars out of his accounts in a short period of time, after a lifetime of frugal banking habits. *See* Dkt. No. 1-2 ¶ 18. The banks are said to have been on notice of suspicious conduct because Kim went to bank branches in person for the transfers, and a teller and manager had to approve them in face-to-face interactions with him. *Id*. ¶ 20. All of the transfers required a transaction report because they exceeded a $10,000 reporting threshold. *Id*. at ¶ 26. Kim also alleges that financial elder abuse causes billions of dollars of losses to seniors each year, a circumstance known to the banks through industry studies and communications. *Id*. ¶ 30.

What is striking about these allegations for present purposes is the utter absence of any connection to an international banking transaction. The complaint makes no mention of international transactions at all. Bank of America says that it does in Paragraphs 13, 19, 20, 26 and 40, *see* Dkt. No. 1 at ¶ 15 (Notice of Removal), but that is wrong. Those paragraphs say nothing of the sort, and the complaint as a whole never mentions an overseas banking transaction. This rather glaring mischaracterization of the complaint has given the Court some pause about the credibility of Bank of America and its attorneys at Bryan Cave Leighton Paisner LLP. Contrary to Bank of America's misleading statements, the complaint discusses only events that occurred in California between a California plaintiff and defendants' California bank branches, in a manner that is said to have violated California state law.

Overall, nothing in the complaint even hints at an international banking transaction, let alone indicates that the California state law claims arose out of one.  Defendants removed under Section 632 solely on the basis of Kim's transfer records, which are said to show that the money taken from him wound up in accounts in Thailand and Dubai.  *See* Dkt. No. 31-1 (Jordan Decl.) ¶¶ 6-7; Dkt. No. 33 (Nelson Decl.) ¶¶ 6-17.  Even so, those records do not demonstrate that Kim's elder abuse claims fall within the purview of the Edge Act.  The abuse claims originate and flow from defendants' involvement in Kim's conduct in California vis-à-vis the elder abuse provisions in California Welfare & Institutions Code Section 15610.30.  Where Kim's money ended up as a result is not the genesis or gravamen of the claim.  In this respect, Kim's lawsuit is akin to the cases that declined removal under Section 632 for claims of wrongful termination or malicious prosecution.  *See, e.g.*, *Sollitt*, 463 Fed App'x at 474 (citing *Diaz v. Pan American Fed. Savings and Loan Assoc.*, 635 F.2d 30 (1st Cir. 1980)).  Such claims, like the elder abuse claims here, cannot reasonably be said to have arisen out of international banking transactions.

Consequently, the case is remanded to the Superior Court for the City and County of San Francisco.  All other pending motions are terminated without prejudice.

**IT IS SO ORDERED.**

Dated:  December 20, 2021

JAMES DONATO
United States District Judge